EXHIBIT A

**Fill in this information to identify the case:**

Debtor 1 HMH Construction, LLC

Debtor 2 (Spouse, if filing) ____________________

United States Bankruptcy Court for the: District of Idaho

Case number 23-00191

# Official Form 410

# Proof of Claim

**04/22**

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

## Part 1: Identify the Claim

1. **Who is the current creditor?**

   Komatsu Financial Limited Partnership
   Name of the current creditor (the person or entity to be paid for this claim)

   Other names the creditor used with the debtor ____________________

2. **Has this claim been acquired from someone else?**

   ☑ No
   ☐ Yes. From whom? ____________________

3. **Where should notices and payments to the creditor be sent?**

   Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
|---|---|
| Name: Mitchell D. Cohen, Vedder Price P.C. | Name: |
| Number Street: 1633 Broadway, 31st Floor | Number Street: |
| City: New York State: NY ZIP Code: 10019 | City State ZIP Code |
| Contact phone (212) 407-6980 | Contact phone |
| Contact email mcohen@vedderprice.com | Contact email |

   Uniform claim identifier for electronic payments in chapter 13 (if you use one):
   __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __ __

4. **Does this claim amend one already filed?**

   ☑ No
   ☐ Yes. Claim number on court claims registry (if known) ______ Filed on ______ MM / DD / YYYY

5. **Do you know if anyone else has filed a proof of claim for this claim?**

   ☑ No
   ☐ Yes. Who made the earlier filing? ____________________

## Part 2: Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**

☑ No
☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$ 1,548,812.02. **Does this amount include interest or other charges?**

☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned - See Attached

**9. Is all or part of the claim secured?**

☐ No
☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☑ Other. Describe: Equipment - See Attached

**Basis for perfection:** UCC Financing Statements - See Attached

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property**: $ Unknown

**Amount of the claim that is secured:** $ Unknown

**Amount of the claim that is unsecured:** $ Unknown (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $____________________

**Annual Interest Rate** (when case was filed)_______%

☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**

☑ No
☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $____________________

**11. Is this claim subject to a right of setoff?**

☑ No
☐ Yes. Identify the property: ____________________

**12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. *Check one:*

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ |
| ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ |
| ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ |
| ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $ |

* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date Jul 19, 2023
MM / DD / YYYY

DocuSigned by:
Scott O'Shea
E24C1C9E6CD74C3...
Signature

**Print the name of the person who is completing and signing this claim:**

Name: Scott O'Shea (First name / Middle name / Last name)

Title: Operations Manager

Company: Komatsu Financial Limited Partnership
Identify the corporate servicer as the company if the authorized agent is a servicer.

Address: 8770 W Bryn Mawr Ave (Number Street)
Chicago (City) IL (State) 60631 (ZIP Code)

Contact phone: 847-437-3580

Email: scott.oshea@global.komatsu

Print | Save As... | Add Attachment | Reset

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF IDAHO**

| In re:<br><br>HMH CONSTRUCTION, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 23-00191 |
|---|---|

**ADDENDUM TO PROOF OF CLAIM OF**
**KOMATSU FINANCIAL LIMITED PARTNERSHIP**

Komatsu Financial Limited Partnership ("Claimant") asserts this proof of claim (this "Proof of Claim") against HMH Construction, LLC ("Debtor") pursuant to the following seven (7) Security Agreement – Conditional Sales Contracts (collectively, as amended, restated, supplemented or otherwise modified, the "Contracts"), pursuant to which Debtor granted to Komatsu a purchase money, first-priority lien on and security interest in the equipment described therein and below, together with all present attachments, accessories, replacement parts, additions and all proceeds thereof (collectively, the "Equipment"), and agreed to pay Komatsu the amounts set forth therein:

| Contract No. | Equipment |
|---|---|
| 003 | • One (1) Komatsu GD655-6 Motor Grader (S/N 60250) (EQ 666793) |
| 005 | • One (1) Komatsu D51PXI-24 Crawler Dozer (S/N 10973) (EQ 1119290)<br>• One (1) Topcon Hyper V w/ Base & Rover Station (S/Ns 19959; 20047) (EQ 1245915) |
| 006 | • One (1) Komatsu WA380-8 Wheel Loader w/ Rockland Bucket and Forks (S/N A75677) (EQ 1181552) |
| 007 | • One (1) Komatsu WA380-8 Wheel Loader w/ Rockland Bucket and PSM Forks (S/N A75794) (EQ 1247531) |
| 008 | • One (1) Komatsu D61PX-24 Crawler Dozer (S/N B60875) (EQ 722863) |
| 009 | • One (1) Komatsu PC138USLC-11 Hydraulic Excavator w/ 36" and 60" Buckets and Plate Compactor (S/N 60480) (EQ 1355073) |
| 010 | • One (1) Komatsu GD655-7 Motor Grader (S/N 65092) (EQ 1165034) |

Pursuant to the Contracts, Debtor granted Claimant a purchase money, first priority lien on and security interest in the Equipment. True and correct copies of the seven (7) Contracts and corresponding UCC Financing Statements regarding the Equipment are attached hereto as **Exhibits 1-7**.

Pursuant to the Cross Collateral Security Agreement executed by Debtor, Debtor agreed that (i) each unit of the Equipment shall secure Debtor's payment and performance under each of the Contracts, and (ii) a default by Debtor under any one or more of the Contracts shall constitute a default by Debtor under each of the Contracts.  A true and correct copy of the Cross Collateral Security Agreement is attached hereto as **Exhibit 8**.

## AMOUNT OF CLAIM

The amount due to Claimant as of April 20, 2023 (the "Petition Date") is no less than **$1,548,812.02** (as detailed in the chart below), plus all accrued and accruing taxes, fees, costs and all other amounts due and owing under the Contracts, including, but not limited to accruing attorneys' fees and costs.

| Contract No. | Amount Due |
|---|---|
| 003 | $159,403.09 |
| 005 | $212,298.85 |
| 006 | $224,678.08 |
| 007 | $273,474.60 |
| 008 | $151,108.14 |
| 009 | $217,469.82 |
| 010 | $310,379.44 |
| **Total:** | **$1,548,812.02** |

Claimant reserves the right to amend, update and/or supplement this Proof of Claim at any time and in any respect and to assert any and all other claims of whatever kind or nature that it has, or it may have, against Debtor.  The filing of this Proof of Claim shall not be deemed (i) a waiver or release of any claims or rights of Claimant, (ii) an election of remedy, (iii) a waiver of any past, present or future defaults or events of default, and/or (iv) a waiver or release of any setoff rights.  Further, nothing contained herein shall be deemed or construed as a waiver of any administrative expense claims that Claimant has or may have against Debtor and Claimant retains the right to assert such claims.  This Proof of Claim is filed without prejudice to the filing by Claimant or any other applicable party of additional proofs of claim with respect to any other liability or indebtedness.

Case 23-00191-JMM Claim 9-1 Part 2 Filed 07/19/23 Desc Exhibit 1 to Proof of Claim Page 1 of 59

# EXHIBIT 1

KOMATSU

# SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

Subject to the Terms and Conditions herein contained, the Seller hereby agrees to sell, and the Buyer having been quoted and offered both a cash sale price, payable immediately or within a limited number of days, and a contract time price which permits the Buyer to purchase the property now but pay in installments over an extended period of time, hereby agrees to buy, the following described property ("property") on a contract time price basis set forth below. The Contract time price is more than the cash sale price because it includes charges by the Seller to compensate the Seller for having to wait a period of time before collecting its full purchase price and for taking a risk in waiting such period of time. The property is to be used only for commercial or business purposes, includes all accessories and attachments, and shall, except as permitted by Paragraph 7 on page 4 hereof, be located at Buyer's Address set forth immediately below.

**Seller's Information** MODERN MACHINERY CO., INC.
P.O. BOX 16660
MISSOULA, MT 59808

**Quote No. 136830**

**Buyer's Information**
HMH CONSTRUCTION, LLC
PO Box 337
NAMPA, ID 83653

Physical Location: PO Box 337
NAMPA, ID 83653

County: CANYON
Telephone: 8334642667

County: CANYON
State Charter Number: 0000624752
State of Registration: ID
Tax ID: [redacted]

Property Description

| Make | Model | Type | Description | Serial No. | Price |
|---|---|---|---|---|---|
| Komatsu | GD655-6 | Motor Grader | EQ 666793 | 60250 | $348,475.00 |

Trade-In Description

| Year | Make | Model | Type | Description | Serial No. | Allowance | Amt. Owed | Net Trade |
|---|---|---|---|---|---|---|---|---|

**Schedule of Payments**

BUYER AGREES TO PAY SELLER, OR IF THIS CONTRACT IS ASSIGNED,TO ASSIGNEE OF SELLER, THE 'TOTAL OF PAYMENTS' (ITEM 10) IN ACCORDANCE WITH THE FOLLOWING SCHEDULE. PAYMENTS IN NUMBER AND AMOUNT ARE DUE EACH SUCCESSIVE MONTH ON THE SAME DAY AS THE STARTING DATE, OR AS INDICATED BELOW.

| Payments | Start Date | End Date | Payment | Total |
|---|---|---|---|---|
| 47 | 02/11/2021 | 12/11/2024 | $6,156.28 | $289,345.16 |
| 1 | 01/11/2025 | 01/11/2025 | $6,156.34 | $6,156.34 |
| 48 | | | | $295,501.50 |

**Statement of Transaction**

| Item | | |
|---|---|---|
| 1. Sales Price | | $348,475.00 |
| 2. Delivery, Installation, Repair (or other Service Charges) | $0.00 | |
| 3. Sales Tax | $16,726.50 | |
| 4. Cash Price (1+2+3) | | $365,201.50 |
| 5. a. Cash Down Payment | $70,200.00 | |
| b. Net Trade In | $0.00 | |
| c. Less Insurance | $0.00 | |
| Total Down Payment (5a+5b-5c) | | $70,200.00 |
| 6. Net Cash Price (4-5) | | $295,001.50 |
| 7. a. Lien & Filing Fees | $0.00 | |
| b. Other Fees | $500.00 | |
| Total Other Charges | | $500.00 |
| 8. Amount Financed (6 + 7) | | $295,501.50 |
| 9. Finance Charge (0.00%) | | $0.00 |
| 10. Total of Payments (8 + 9) | | $295,501.50 |
| 11. Total Time Price (4 + 7 + 9) | | $365,701.50 |

Date finance charge begins to accrue (if different than contract date)



# SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

| Insurance Coverage | Buyer Place of Business and Other Buyer Information |
|---|---|
| LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS AGREEMENT. | IF BUYER'S ACTUAL CHIEF PLACE OF BUSINESS (CHIEF EXECUTIVE OFFICE IF MORE THAN ONE PLACE OF BUSINESS) IS IN A STATE OTHER THAN STATE WHERE THE PROPERTY IS LOCATED (AS SET FORTH ON PAGE 1), SPECIFY ACTUAL CHIEF PLACE OF BUSINESS. |
| Physical Damage Insurance Covering The Property Is Required. | Physical Location: |
| BUYER HAS OBTAINED INSURANCE THROUGH THE INSURANCE AGENCY LISTED BELOW OR ON FORM KF543R, SUBMITTED WITH THIS CONTRACT. | |
| Insurance Agency | BUYER DOES NOT HAVE PLACES OF BUSINESS IN MORE THAN ONE COUNTY IN THE STATE WHERE PROPERTY IS LOCATED. |
| | THIS SALE IS CONTINGENT UPON FINANCING ON TERMS WHICH ARE SATISFACTORY TO THE PARTIES. |
| Contact:<br>Phone# | IF DATE OF DELIVERY IS DIFFERENT THAN EFFECTIVE DATE SHOWN BELOW, SHOW ACTUAL DELIVERY DATE: |

**Partner Names and Addresses (If applicable)**

| Name | Address | Tax ID |
|---|---|---|

**Delinquency Charge:** After maturity, each installment shall bear charges at the highest rate permitted by law, but not to exceed 1.5% per month. Buyer also agrees to pay all expenses, including reasonable attorneys' fees, incurred in the collection and enforcement, by suit or otherwise, of any amount payable under this contract.

**Security Interest:** In order to secure payment of the indebtedness contained herein or incurred hereunder, Seller hereby retains, and Buyer hereby grants, a purchase money security interest under the Uniform Commercial Code in and to the above described property sold hereunder, together with all replacements, substitutions, additions, attachments, repairs, accessions and proceeds, including amounts payable under any insurance policies with respect thereto. Buyer hereby authorizes Seller to file one or more financing statements and/or a carbon or reproduction of this contract as a financing statement. Buyer hereby authorizes Seller or its agent or assigns to sign and execute on its behalf any and all necessary UCC-1 forms to perfect the security interest herein granted to Seller.

**Location of Property:** Buyer and Seller agree that regardless of the manner of affixation, the property shall remain personal property and not become part of the real estate. Except as permitted by Paragraph 7, Buyer agrees to keep the property at the location set forth herein, and will notify Seller promptly in writing of any change in the location of the property within such State, but will not remove the property from such State without the prior written consent of Seller (except that in the State of Pennsylvania, the property will not be moved from the above location without such prior written consent).

**ENTIRE AGREEMENT:** BUYER agrees that this contract including the ADDITIONAL TERMS AND CONDITIONS PRINTED ON Page 3-5 hereof, which he has read and to which he agrees, contains the entire agreement relating to the conditional sale of the property and supersedes all previous contracts and agreements between Buyer and Seller relating to the order or sale of the property. This contract is not binding upon Seller, unless signed by the manager of Seller or owner.

**NOTICE TO BUYER: 1. Do not sign this contract before you read it or if it contains blank spaces. 2. You are entitled to an exact and completely filled-in copy of the contract you sign. 3. Under law, you have the following rights, among others: (a) to pay off in advance the full amount due and obtain a partial refund of any unearned finance charge; (b) to redeem the property if repossessed for a default; and (c) to require, under certain conditions, a resale of the property if repossessed. 4. If you desire to pay off in advance the full amount due, the amount of the refund you are entitled to, if any, will be furnished upon request. 5. Keep this contract to protect your legal rights.**

**BUYER ACKNOWLEDGES RECEIPT OF AN EXACT COPY OF THIS CONTRACT SIGNED BY SELLER**

| Buyer: HMH CONSTRUCTION, LLC | | Effective Contract Date: 12/31/2020 |
|---|---|---|
| By: [signature] | Title | Salesman's Signature: Ryan Rowbury |
| Co-Signer: | | Signature For Seller Approval: [signature] |
| By: | Title: | |



# SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

**Conditional Terms and Conditions:**

**1. Assignment by Seller; Waiver of Defenses Against Assignee Holder:**

Seller may hold this contract or it may assign it for value to Komatsu Financial Limited Partnership (hereinafter referred to as "KF"). If Seller does in fact assign this contract to KF then after such assignment: a) KF as assignee, shall have all the rights and remedies of Seller hereunder and all of Buyer's agreements, representations and warranties shall be deemed to have been made to KF with the same force and effect as if KF were an original party hereto; b) Seller shall not be KF's agent for any purposes; c) Seller shall not have any power or authority to change or modify this contract or any related document or instrument in any way (except any relevant warranty or service agreement which is exclusively between Seller and Buyer and shall not bind KF or affect any of Buyer's or KF's rights or obligations under this contract); d) Buyer will settle all claims, defenses, set-offs and counterclaims of any nature, it may have against Seller, including but not limited to delivery of property, defects in the property and the like, directly with Seller, and not set up any such claim, defense, set-off or counterclaim against KF. Seller hereby agreeing to remain responsible therefor.

**2. Waiver of Defenses Acknowledgment; Place of Payment:**

Buyer acknowledges that: KF has no knowledge or information as to the condition or suitability for Buyer's purposes of the property, and KF's decision to purchase this contract from Seller, if so offered, will be made in reliance on Buyer's warranties, agreements and covenants herein, including Buyer's express agreement not to assert against KF any claims, defenses, set-offs or counterclaims it may now or in the future have against Seller named on page 1 hereof. If this contract is assigned to KF then after assignment to KF, Buyer will make all payments directly to KF at such places as KF may from time to time designate in writing to Buyer.

**3. Buyer's Warranties and Representations:**

Buyer warrants, represents and covenants; a) that Buyer is justly indebted to Seller for the full amount of the foregoing indebtedness; b) that except for the security interest granted hereby the property is free from and will be kept free from all liens, claims, security interests and encumbrances; c) that no financing statement covering the property or any proceeds is on file in favor of anyone other than Seller but if such other financing statement is on file, it will be terminated or subordinated; d) that all information supplied and statements made by Buyer in any financial, credit or accounting statement or application for credit prior to, contemporaneously with or subsequent to the execution of this contract with respect to this transaction are and shall be true, correct, valid and genuine; e) Buyer has full authority to enter into this contract and in so doing it is not violating any law or regulation or agreement with third parties, and it has taken all such action as may be necessary or appropriate to make this contract binding upon it; f) No director, officer or employee of the Company is or has been identified on any of the following documents: (i) the United States Department of Treasury, Office of Foreign Assets Control ("OFAC") list of "Specially Designated Nationals and Blocked Persons" ("SDNs"); (ii) the United States Department of Commerce, Bureau of Industry and Security of "Denied Persons List". "Entity List" or "Unverified List"; (iii) the Directorate of Defense Trade Controls of the United States Department of State "List of Statutorily Debarred Parties" or "List of Administratively Debarred Parties"; (iv) the United Kingdom's "Consolidated List of Financial Sanctions Targets" as maintained by HM Treasury; (v) Canada's "Listed Entities" pursuant to the Anti-Terrorism Act, 2001; (vi) the Australian Department of Foreign Affairs and Trade "Consolidated List" (pursuant to the Charter of the United Nations Act 1945 and Charter of the United Nations Terrorism and Dealings with Assets) Regulations 2002, as amended; (vii) the United Nations Security Council "Consolidated List" established and maintained by the 1267 Committee; or (viii) European Union Commission "Consolidated list of persons, groups and entities subject to EU financial sanctions". The Company is not and has not been involved in business arrangements or transactions with or involving countries subject to economic or trade sanctions imposed by the United States Government, or with or involving SDNs, in violation of the regulations maintained by OFAC.

**4. Events of Default; Acceleration:**

A very important element of this contract is that Buyer make all its payments promptly as agreed upon. Also essential is that the property continue to be in good condition and adequate security for the indebtedness. The following are events of default under this contract which will allow Seller to take such action under this Paragraph and under Paragraph 5 as it deems necessary:

(a) any of Buyer's obligations to Seller under any agreement with Seller is not paid promptly when due:
(b) Buyer breaches any warranty or provision hereof, or of any other instrument or agreement delivered by Buyer to Seller in connection with this or any other transaction;
(c) Buyer dies, becomes insolvent or ceases to do business as a going concern;
(d) it is determined Buyer has given Seller false information of a substantial nature regarding its financial condition;
(e) any of the property is lost or destroyed;
(f) a petition in bankruptcy or for arrangement or reorganization be filed by or against Buyer or Buyer admits its inability to pay its debts as they mature;
(g) property of Buyer be attached or a receiver be appointed for Buyer;
(h) whenever Seller in good faith believes the prospect of payment or performance is impaired or in good faith believes the property is insecure;
(i) any guarantor, surety or endorser for Buyer defaults in any obligation or liability to Seller or any guaranty obtained in connection with this transaction is terminated or breached.

**If Buyer shall be in default hereunder, the indebtedness herein described and all other debts then owing by Buyer to Seller under this or any other present or future agreement shall, if Seller shall so elect, become immediately due and payable.**

This acceleration of all indebtedness, if elected by Seller, shall be subject to all applicable laws, including laws as to rebates and refunds of unearned charges.

Buyer's Initials



## SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO. ________

**5. Seller's Remedies After Default; Consent to Enter Premises:**

So long as any obligations are owed by Buyer to Seller hereunder, Seller shall have all the rights and remedies provided by this contract and provided a secured party under the Uniform Commercial Code and any other applicable law. After default by Buyer, Seller's rights and remedies include but are not limited to a number of choices. Buyer acknowledges that if it defaults Seller is justly entitled to do whatever the law allows to avoid loss to itself and also to obtain for itself the benefit of the bargain under this contract.

Consequently, Buyer agrees that Seller, among its other rights and remedies, may itself or through its agent enter the premises or upon the land where the property is located and without removing the property render any equipment which is part of the property unusable and/or take possession of the property without notice to anyone or without judicial process of any kind, provided such self-help is done without breach of the peace (meaning actual or threatened violence to a person at the time of repossession). In order to afford itself of these and related remedies, Seller must be able to enter the premises or land in or upon which the property is located.

**Buyer therefore agrees that Seller by itself or through its agent may without notice to any person and without judicial process of any kind, enter into any premises or upon any land (including access roads and rights of way) owned, leased or otherwise under the real or apparent control of Buyer or any agent of Buyer where the property may be or where Seller believes the property may be, and using any reasonable force with respect to the property and any property connected to the property, disassemble, render unusable, disconnect and separate all property from any other property and/or repossess and remove all or any item of the property.**

Buyer will not hinder or delay Seller or its agent in any way and will, if requested, assist Seller or its agent in disassembling and/or removing the property. Seller may require Buyer to assemble the property and return it to Seller at a place to be designated by Seller which is reasonably convenient to both parties. Buyer expressly waives all further rights to possession of the property after default and all claims for damages related to such removal, disassembling, entering and/or repossession. The security interest granted hereby shall continue effective irrespective of any retaking and redelivery of the property to Buyer until all amounts secured hereby are fully paid in money.

Unless Buyer otherwise agrees in writing after default and unless the property is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Seller will give Buyer reasonable notice of the time and place of any public sale of the property or reasonable notice of the time after which any private sale or other intended disposition thereof is to be made. Unless otherwise provided by law, the requirement of reasonable notice shall be met if such notice is mailed, postage prepaid, to the address of Buyer shown herein at least ten days before the time of the sale or disposition. Expenses of retaking, holding, preparing for sale, selling and the like shall include reasonable attorneys' fees and other legal expenses. Buyer understands that Seller's rights are cumulative and not alternative and that Buyer will remain fully liable for any deficiency remaining after disposition of the property.

**6. Waiver of Defaults; Exclusive Agreement:**

Seller may in its sole discretion waive a default or cure a default at Buyer's expense. Any such waiver in a particular instance or of a particular default shall not be a waiver of other defaults or the same kind of default at another time. No modification or change in this contract shall bind Seller (after assignment, "Seller", as stated above means "KF") unless in writing signed by Seller. No oral agreement shall be binding.

**7. Buyer's Agreements:**

Buyer agrees; a) to defend at Buyer's own cost any action, proceeding or claim affecting the property; b) to pay reasonable attorneys' fees and other expenses incurred by Seller in enforcing its rights after Buyer's default: c) to pay promptly all taxes, assessments, license fees and other public or private charges when levied or assessed against the property or this contract and this obligation shall survive the termination of this contract; d) that if a certificate of title be required or permitted by law, Buyer shall obtain such certificate with respect to the property, showing the security interest of Seller thereon, and in any event do everything necessary or expedient to preserve or perfect the security interest of Seller; e) that Buyer will not misuse, fail to keep in good repair, secrete, or, except as provided in the remaining sentences of this Paragraph 7, without the prior written consent of Seller, and notwithstanding Seller's claim to proceeds, sell, rent, lend, encumber or transfer any of the property; f) that Seller may enter upon Buyer's premises or wherever the property may be located at any reasonable time to inspect the property. Buyer may lease the property in the ordinary course of Buyer's business and, in each instance, only on an arms-length basis upon the terms hereinafter set forth. In the event that Buyer leases the property to an affiliate of Buyer, the lease agreement between Buyer and such affiliate shall provide that such lease agreement is subordinate to this Contract.

To further secure payment of the indebtedness contained herein or incurred thereinafter, Buyer agrees to assign and hereby pledges, assigns and grants to Seller a security interest in the following collateral (collectively called "Additional Collateral"); all leases of the Property ("Leases"), other chattel paper, accounts, contract rights, documents, instruments and general intangibles, including all guaranties thereof, now existing or hereafter arising with respect to the Property (collectively with the Leases called the "Documents"); all rental payments and other amounts due or to become due under the Documents and all other cash and non-cash proceeds of the Property and the Documents (collectively called "Revenues"); all rights under and benefits of the terms, covenants and provisions of the Documents; and all legal and other remedies available for enforcement of the terms, covenants and provisions of the Documents. No Lease shall relieve Buyer of any of its obligations to Seller under Contract, and the aforesaid assignment of and security interest granted in the Documents and other Additional Collateral shall not be construed as authorizing Buyer to do anything with the Property other than to lease the same in accordance with the terms of this Contract. Buyer agrees that Seller does not, by this Contract or otherwise, assume any of the obligations of Buyer under any Lease or other Documents. Buyer agrees, upon the request of Seller, from time to time (a) to deliver to Seller any or all Documents and (b) to execute and deliver to Seller any and all further instruments and documents, including, without limitation, separate assignments and financing statements, which Seller deems necessary or desirable to obtain the full benefits of the assignment, rights, interests and powers herein granted.

Buyer hereby grants to Seller the right (in Buyer's name or otherwise, and without affecting Buyer's obligations to Seller) during the continuance of an event of default under Paragraph 4: to demand, receive, compromise, extend the time of payment of, or give discharge for, any and all Revenues; to endorse any checks or other instruments or orders in connection with the Revenues; and to file any claims or take such actions or institute such proceedings as Seller may deem necessary or advisable to protect Seller's interest. Buyer shall have no authority during the continuance of an event of default under Paragraph 4 to, and will not, during such period of time without Seller's prior written consent, accept collections, repossess, substitute or consent to the return of the Property or modify the terms or provisions of the Documents.



# SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

Buyer agrees, upon the request of Seller, during the continuance of an event of default under Paragraph 4 (i) to notify all obligors under the Documents of the interest of Seller or its assigns, and (ii) to direct all obligors under the Documents to pay all Revenues directly to Seller. Buyer further agrees, upon request of Seller, to forward promptly to Seller all notices received by Buyer from any of the obligors under the Documents. Buyer agrees and warrants that: if required by Seller, all Leases shall provide that obligors under the Documents shall waive all rights to any defenses, set-offs and counterclaims as against Seller; if required by Seller, each lessee shall acknowledge and agree (or the Lease shall provide) that lessee's rights to the Property are subject and subordinate to all of the terms of this Contract, including, without limitation, Seller's right to possession of the property after the occurrence of an event of default under this Contract; there are and will be no purchase option or rights of third persons in or to the property or the Additional Collateral, except as approved by Seller in writing; the property is and will remain personal property; and the property and the Additional Collateral are and will be free from all liens and encumbrances other than Seller's. Buyer further agrees that it will notify Seller upon learning of any material damage to or destruction of any of the property. Buyer will not remove the property or permit any lessee of the property to remove the property from those states where Seller has agreed in writing the property may be located. Buyer's chief executive office and principal place of business are at Buyer's address as set forth on pages 1 and/or 2 of this Contract unless otherwise set forth herein, and Buyer agrees to notify Seller promptly of any change of such address(es). Buyer shall cause each lessee of property to permit Seller to visit and inspect the property on such lessee's premises or on any other premises where such lessee has control. Buyer warrants, represents and covenants that (i) Buyer's true and correct legal name is as set forth on page 1 of this Contract and (ii) Buyer will not do any of the following without prior written notice to Seller: change its legal name, merge or consolidate with or into any other entity, change its type of business organization or change the jurisdiction of its organization.

**8. Insurance and Risk of Loss: Liability insurance coverage for bodily and property damage caused to others is NOT included herein.**

All risk of loss of, damage to or destruction of the property shall at all times be on Buyer. Buyer will procure forthwith and maintain fire and theft insurance with extended or combined additional coverage on the property for the full insurable value thereof for the life of this contract plus such other insurance as Seller may specify, and promptly deliver each policy to Seller with a standard long form endorsement attached showing loss payable to Seller or assigns as respective interests may appear. Seller's acceptance of policies in lesser amounts of risks shall not be a waiver of Buyer's foregoing obligation. In the event that the property damage insurance required hereby shall be issued through the Agency as provided in the Insurance Coverage section on the second page of this Contract (such insurance obtained through the Agency, the "Insurance") and any portion of the cash down payment and trade-in equipment allowance set forth in the Trade-In Equipment Description section of the second page of this Contract shall be allocated to the payment of the premium for the Insurance indicated in section 5c of the first page of this Contract. Seller agrees that the portion of the Cash and Trade-In allowance to be allocated to the payment of the premium on the Insurance shall constitute monies to be paid by Seller on behalf of Buyer to pay such premium. Buyer directs that such portion of such cash down payment and allowance be used by Seller to promptly pay on behalf of Buyer the premium on the Insurance. Buyer acknowledges that (i) Buyer has the option of furnishing the insurance required by this Section 8 through an agent or insurer of Buyer's choice and (ii) Seller merely informed Buyer of an insurance agent which dealt with insurance of the type required by this Contract and aided Buyer in completing the application form for the Insurance. Buyer agrees that Seller may from time to time communicate directly with the Agency and the insurer with respect to the Insurance. As additional security for the payment of the indebtedness owing by Buyer under this Contract, Buyer hereby grants to Seller a first priority security interest in the Insurance and all rights of Buyer with respect to the Insurance (including, without limitation, the right to cancel the Insurance and all rights to Buyer relating to unearned premiums and dividends which may be payable on or in respect of the Insurance).

Buyer represents, warrants and agrees that it has not heretofore assigned or transferred and will not assign or transfer any or all of its interest in the Insurance, except in favor of Seller. In addition to any and all other rights and remedies available to Seller under this Contract, applicable law or otherwise, upon and after the occurrence of an event of default under this Contract, Buyer agrees that Seller may cancel the Insurance and receive on behalf of Buyer the unearned insurance premium and dividends thereon. Such unearned insurance premium and dividends shall be applied by Seller to the payment of the amounts owing by Buyer to Seller under this Contract (and Buyer so directs that Seller make such application). Buyer hereby constitutes and appoints Seller as Buyer's attorney-in-fact with full authority upon and after the occurrence of an event of default under this Contract to cancel the Insurance, to receive (and give receipt for) monies payable with respect to the Insurance as a result of such cancellation and to endorse Buyer's name on any check, draft, or other form of payment for all monies that may become due from the Insurer with respect to any such cancellation.

The foregoing power of attorney, being coupled with an interest, is irrevocable until all obligations of Buyer under this Contract have been paid in full. Buyer hereby releases Seller of any liabilities, claims, demands, obligations, costs and expenses now or hereafter incurred by Buyer in any way relating to the Insurance, except for the failure of Seller to make the payment on the insurance premium with respect to the Insurance as provided above and except for the gross negligence or willful misconduct of Seller. Seller assumes no liability as an insurer. Buyer acknowledges and agrees that the insurer and the Agency may conclusively rely on the agreements made by the Buyer in this Contract (including, without limitation, the direction of Buyer for Seller to pay on behalf of Buyer all or a portion of the insurance premium on the Insurance, the right of Seller to communicate from time to time directly with the Agency and insurer and the power of attorney herein provided in favor of Seller in order to cancel the Insurance) and shall have no liability to Buyer for relying on this Contract (including, without limitation, with respect to such power of attorney). Buyer acknowledges that neither the insurer nor the Agency shall be required to determine whether an event of default exists under this Contract in order to honor such power of attorney and the insurer and the Agency may conclusively rely on any statement given by Seller with respect to any such cancellation.

**9. Miscellaneous:**

Buyer waives all exemptions. Seller may correct patent errors herein and fill in such blanks as serial numbers, date of first payment and the like. Any provisions hereof contrary to, prohibited by, or invalid under applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining provisions hereof. Buyer acknowledges receipt of a true copy and waives acceptance hereof. "Buyer" and "Seller" as used in this contract also mean "debtor" and "secured party" respectively and include heirs, executors, or administrators, successors or assigns to those parties. If more than one Buyer executes this contract, their obligations under this contract shall be joint and several. Buyer acknowledges and agrees that the original contract shall not be returned to Buyer upon payment in full of all amounts owing under this contract, except as required by applicable law or as agreed to by Seller in its discretion.

Buyer's Initials X

Case 23-00191-JMM Doc 94-1 Filed 07/19/23 Entered 07/19/23 13:50:27 Desc Proof of Claim Page 73 of 95

**KOMATSU** SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

TO: KOMATSU FINANCIAL LIMITED PARTNERSHIP

Re: Security Agreement/Contract between HMH CONSTRUCTION, LLC ("Buyer") and undersigned ("Assignor"), dated 12/31/2020 having a present unpaid balance of $295,501.50 covering GD655-6 S/N 60250 (hereinafter referred to as "Agreement").

For value received Assignor hereby sells and assigns to Komatsu Financial Limited Partnership, its successors and assigns ("Assignee"), the Agreement, together with all of Assignor's right, title and interest in the property covered by and described in the Agreement ("Property"), and all of Assignor's rights and remedies thereunder and under any guaranty or endorsement thereof, including the right to collect any and all installments due and to become due on the Agreement and to take, in Assignor's or Assignee's name, any and all proceedings Assignor might otherwise take.

Assignor agrees that Assignee may audit its books and records relating to all paper assigned to Assignee and may in Assignor's name endorse all accompanying notes and all remittances received, and Assignor gives express permission to Assignee to release, on terms satisfactory to Assignee, by operation of law or otherwise, or to compromise or adjust any and all rights against and grant extensions of time of payment to the Buyer or any other persons obligated on the Agreement or on any accompanying note or guaranty, without notice to Assignor and without affecting Assignor's liability hereunder. Assignor waives presentment and demand for payment, protest and notice of non-payment and protest as to all paper heretofore, now or hereafter endorsed or assigned to Assignee and Assignor subordinates to any rights Assignee may now or hereafter have against the Buyer any rights Assignor may now or hereafter have.

Assignor shall have no authority to, and will not, without Assignee's prior written consent, accept collections, repossess or consent to the return of the Property described in the Agreement or modify the terms of the agreement or of any accompanying note or guaranty. Assignee's knowledge at any time of any breach of or noncompliance with any of the foregoing shall not constitute any waiver by Assignee. Assignor waives notice of acceptance hereof.

As part of the foregoing instrument, the Assignor's obligations in addition to those stated in the preceding paragraphs are governed by paragraph 1, 2, 3 or 4 as indicated by the box marked X below.

[X] **1. WITHOUT RECOURSE**
Assignor further agrees to assign the Agreement without recourse as to the financial ability of the Buyer to pay.

[ ] **2. WITH RECOURSE**
Subject to the terms and provisions of any applicable underlying agreement between Assignor and Assignee, Assignor further agrees to guaranty the payment promptly when due of the amount of each and every installment payable under the Agreement and the payment on demand of the entire unpaid balance at the date of default in the event of any default by Buyer under the Agreement, without first requiring Assignee to proceed against Buyer or any other person or any security.

[ ] **3. LIMITED REPURCHASE AGREEMENT**
Assignor further agrees that if the Buyer fails to pay the first installments of his obligation within 15 days of scheduled maturity as set forth in the Agreement hereby assigned and if any of said installments are not paid within the 15 days and Assignee repossesses the Property described in said Agreement, Assignor will purchase from Assignee the Property for the then unpaid balance in its then condition and location.

[ ] **4. PARTIAL REPURCHASE AGREEMENT**
Assignor further agrees that if Assignee repossesses the Property described in said Agreement the undersigned upon demand will pay to Assignee NaN or purchase the Property from Assignee for the then unpaid balance in its then condition and location.

MODERN MACHINERY CO., INC.
(Assignor)

Sign: [signature]
12/31/2020
(executed)

**Name: Kyle Viste**

**Title: Controller**

The above assignment is made subject to the terms and conditions of the financing agreement presently in effect between Assignor and the Assignee, which specifically sets forth all of the rights and obligations of the Assignor and the Assignee with respect to retail contracts, and incorporates without limitation, the representations and warranties made by Assignor to Assignee with respect to retail contracts, any accompanying notes, guaranty or other documents relating thereto. Assignor represents to Assignee that (i) the present unpaid balance under the Agreement is correct and (ii) Assignor will comply with all its obligations under the Agreement.

20210003839

**STATE OF IDAHO**

*Office of the secretary of state, Lawerence Denney*

**UCC1 FINANCING STATEMENT**

Idaho Secretary of State
PO Box 83720
Boise, ID 83720-0080
(208) 334-2301
Filing Fee - $3 submitted online, $6 print & mail or $12 if 3 or more pages.
Make checks payable to Secretary of State.

Contact at Filer:

| | |
|---|---|
| Contact Name | WOLTERS KLUWER LIEN SOLUTIONS |
| Contact Phone | 800-331-3282 |
| Contact Email | uccfilingreturn@wolterskluwer.com |

Send acknowledgment to:

| | |
|---|---|
| Name | LIEN SOLUTIONS |
| Address | P O BOX 29071<br>GLENDALE, CA 91209-9071 |

Debtors:

| DEBTOR'S NAME | MAILING ADDRESS |
|---|---|
| HMH CONSTRUCTION, LLC | PO BOX 337<br>NAMPA, ID 83653 |

Secured Parties:

| SECURED PARTY'S NAME | MAILING ADDRESS |
|---|---|
| KOMATSU FINANCIAL LIMITED PARTNERSHIP | 8770 W BRYN MAWR AVE SUITE 100<br>CHICAGO, IL 60631 |

Collateral:

| | |
|---|---|
| The financing statement covers the following collateral: | ONE (1) Komatsu GD655-6 Motor Grader, S/N# 60250, EQ 666793. COMPLETE WITH ALL PRESENT ATTACHMENTS, ACCESSORIES, REPLACEMENT PARTS, ADDITIONS AND ALL PROCEEDS THEREOF. |
| The collateral is: | |

Designations:

| | |
|---|---|
| Select a designation which describes this financing statement: | Not Applicable |
| Select an additional designation which describes this financing statement: | Not Applicable |

Alternative Designations:

| | |
|---|---|
| Select the alternative designation which describes this financing statement: | Not Applicable |

Optional Filer Reference Data:

ID-0-78372509-60454202

B0565-2854 01/04/2021 3:48 PM Received by ID Secretary of State Lawerence Denney

# EXHIBIT 2

DocuSign Envelope ID: 871A722B-CE56-4082-9CEF-5B113F48E475

KOMATSU

# SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

Subject to the Terms and Conditions herein contained, the Seller hereby agrees to sell, and the Buyer having been quoted and offered both a cash sale price, payable immediately or within a limited number of days, and a contract time price which permits the Buyer to purchase the property now but pay in installments over an extended period of time, hereby agrees to buy, the following described property ("property") on a contract time price basis set forth below. The Contract time price is more than the cash sale price because it includes charges by the Seller to compensate the Seller for having to wait a period of time before collecting its full purchase price and for taking a risk in waiting such period of time. The property is to be used only for commercial or business purposes, includes all accessories and attachments, and shall, except as permitted by Paragraph 7 on page 4 hereof, be located at Buyer's Address set forth immediately below.

**Seller's Information** MODERN MACHINERY CO., INC.
P.O. BOX 16660
MISSOULA, MT 59808

**Quote No. 145485**

**Buyer's Information**
HMH CONSTRUCTION, LLC
PO Box 337
NAMPA, ID 83653

County CANYON
Telephone: 8334642667

Physical Location PO Box 337
NAMPA, ID 83653

County: CANYON
State Charter Number: 0000624752
State of Registration: ID
Tax ID: [redacted]

Property Description

| Make | Model | Type | Description | Serial No. | Price |
|---|---|---|---|---|---|
| Komatsu | D51PXI-24 | Crawler Dozer | EQ 1119290 w/ Extended warranty | 10973 | $271,437.00 |
| Topcon | HYPER V | Other | EQ 1245915 Base & Rover Station | 19959/20047 | $30,000.00 |

Trade-In Description

| Year | Make | Model | Type | Description | Serial No. | Allowance | Amt. Owed | Net Trade |
|---|---|---|---|---|---|---|---|---|
| 2018 | Caterpillar | D5K2XL | Dozer | SN: CAT00D5KHKW205425 | KW205425 | $95,000.00 | $67,844.19 | $27,155.81 |

**Schedule of Payments**

BUYER AGREES TO PAY SELLER, OR IF THIS CONTRACT IS ASSIGNED,TO ASSIGNEE OF SELLER, THE 'TOTAL OF PAYMENTS' (ITEM 10) IN ACCORDANCE WITH THE FOLLOWING SCHEDULE. PAYMENTS IN NUMBER AND AMOUNT ARE DUE EACH SUCCESSIVE MONTH ON THE SAME DAY AS THE STARTING DATE, OR AS INDICATED BELOW.

| Payments | Start Date | End Date | Payment | Total |
|---|---|---|---|---|
| 48 | 10/13/2021 | 09/13/2025 | $6,210.51 | $298,104.48 |
| 48 | | | | $298,104.48 |

**Statement of Transaction**

| | | |
|---|---|---|
| 1. Sales Price | | $301,437.00 |
| 2. Delivery, Installation, Repair (or other Service Charges) | $0.00 | |
| 3. Sales Tax | $11,193.90 | |
| 4. Cash Price (1+2+3) | | $312,630.90 |
| 5. a. Cash Down Payment | $0.00 | |
| b. Net Trade In | $27,155.81 | |
| c. Less Insurance | $0.00 | |
| Total Down Payment (5a+5b-5c) | | $27,155.81 |
| 6. Net Cash Price (4-5) | | $285,475.09 |
| 7. a. Lien & Filing Fees | $0.00 | |
| b. Other Fees | $500.00 | |
| Total Other Charges | | $500.00 |
| 8. Amount Financed (6 + 7) | | $285,975.09 |
| 9. Finance Charge (2.05%) | | $12,129.39 |
| 10. Total of Payments (8 + 9) | | $298,104.48 |
| 11. Total Time Price (4 + 7 + 9) | | $325,260.29 |

Date finance charge begins to accrue (if different than contract date)

DocuSign Envelope ID: 871A722B-CE56-4082-9CEF-5B113F485AFD

KOMATSU

# SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

| Insurance Coverage | Buyer Place of Business and Other Buyer Information |
|---|---|
| **LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS AGREEMENT.** | IF BUYER'S ACTUAL CHIEF PLACE OF BUSINESS (CHIEF EXECUTIVE OFFICE IF MORE THAN ONE PLACE OF BUSINESS) IS IN A STATE OTHER THAN STATE WHERE THE PROPERTY IS LOCATED (AS SET FORTH ON PAGE 1), SPECIFY ACTUAL CHIEF PLACE OF BUSINESS. |
| Physical Damage Insurance Covering The Property Is Required. | Physical Location: |
| BUYER HAS OBTAINED INSURANCE THROUGH THE INSURANCE AGENCY LISTED BELOW OR ON FORM KF543R, SUBMITTED WITH THIS CONTRACT. | |
| Insurance Agency | BUYER DOES NOT HAVE PLACES OF BUSINESS IN MORE THAN ONE COUNTY IN THE STATE WHERE PROPERTY IS LOCATED. |
| | THIS SALE IS CONTINGENT UPON FINANCING ON TERMS WHICH ARE SATISFACTORY TO THE PARTIES. |
| Contact:<br>Phone# | IF DATE OF DELIVERY IS DIFFERENT THAN EFFECTIVE DATE SHOWN BELOW, SHOW ACTUAL DELIVERY DATE: |

**Partner Names and Addresses (If applicable)**

| Name | Address | Tax ID |
|---|---|---|

**Delinquency Charge:** After maturity, each installment shall bear charges at the highest rate permitted by law, but not to exceed 1.5% per month. Buyer also agrees to pay all expenses, including reasonable attorneys' fees, incurred in the collection and enforcement, by suit or otherwise, of any amount payable under this contract.

**Security Interest:** In order to secure payment of the indebtedness contained herein or incurred hereunder, Seller hereby retains, and Buyer hereby grants, a purchase money security interest under the Uniform Commercial Code in and to the above described property sold hereunder, together with all replacements, substitutions, additions, attachments, repairs, accessions and proceeds, including amounts payable under any insurance policies with respect thereto. Buyer hereby authorizes Seller to file one or more financing statements and/or a carbon or reproduction of this contract as a financing statement. Buyer hereby authorizes Seller or its agent or assigns to sign and execute on its behalf any and all necessary UCC-1 forms to perfect the security interest herein granted to Seller.

**Location of Property:** Buyer and Seller agree that regardless of the manner of affixation, the property shall remain personal property and not become part of the real estate. Except as permitted by Paragraph 7, Buyer agrees to keep the property at the location set forth herein, and will notify Seller promptly in writing of any change in the location of the property within such State, but will not remove the property from such State without the prior written consent of Seller (except that in the State of Pennsylvania, the property will not be moved from the above location without such prior written consent).

**ENTIRE AGREEMENT:** BUYER agrees that this contract including the ADDITIONAL TERMS AND CONDITIONS PRINTED ON Page 3-5 hereof, which he has read and to which he agrees, contains the entire agreement relating to the conditional sale of the property and supersedes all previous contracts and agreements between Buyer and Seller relating to the order or sale of the property. This contract is not binding upon Seller, unless signed by the manager of Seller or owner.

**NOTICE TO BUYER: 1. Do not sign this contract before you read it or if it contains blank spaces. 2. You are entitled to an exact and completely filled-in copy of the contract you sign. 3. Under law, you have the following rights, among others: (a) to pay off in advance the full amount due and obtain a partial refund of any unearned finance charge; (b) to redeem the property if repossessed for a default; and (c) to require, under certain conditions, a resale of the property if repossessed. 4. If you desire to pay off in advance the full amount due, the amount of the refund you are entitled to, if any, will be furnished upon request. 5. Keep this contract to protect your legal rights.**

**BUYER ACKNOWLEDGES RECEIPT OF AN EXACT COPY OF THIS CONTRACT SIGNED BY SELLER**

| | |
|---|---|
| **Buyer:** HMH CONSTRUCTION, LLC | **Effective Contract Date:** 08/31/2021 |
| **By:** [signature] **Title** [signature] | **Salesman's Signature:** Ryan Rowbury |
| **Co-Signer:** | **Signature For Seller Approval:** |
| **By:** **Title:** | Kyle Viste |

DocuSign Envelope ID: 871A722B-CE56-4082-9CEF-5B113F48E47B

# SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

**Conditional Terms and Conditions:**

**1. Assignment by Seller; Waiver of Defenses Against Assignee Holder:**

Seller may hold this contract or it may assign it for value to Komatsu Financial Limited Partnership (hereinafter referred to as "KF"). If Seller does in fact assign this contract to KF then after such assignment: a) KF as assignee, shall have all the rights and remedies of Seller hereunder and all of Buyer's agreements, representations and warranties shall be deemed to have been made to KF with the same force and effect as if KF were an original party hereto; b) Seller shall not be KF's agent for any purposes; c) Seller shall not have any power or authority to change or modify this contract or any related document or instrument in any way (except any relevant warranty or service agreement which is exclusively between Seller and Buyer and shall not bind KF or affect any of Buyer's or KF's rights or obligations under this contract); d) Buyer will settle all claims, defenses, set-offs and counterclaims of any nature, it may have against Seller, including but not limited to delivery of property, defects in the property and the like, directly with Seller, and not set up any such claim, defense, set-off or counterclaim against KF. Seller hereby agreeing to remain responsible therefor.

**2. Waiver of Defenses Acknowledgment; Place of Payment:**

Buyer acknowledges that: KF has no knowledge or information as to the condition or suitability for Buyer's purposes of the property, and KF's decision to purchase this contract from Seller, if so offered, will be made in reliance on Buyer's warranties, agreements and covenants herein, including Buyer's express agreement not to assert against KF any claims, defenses, set-offs or counterclaims it may now or in the future have against Seller named on page 1 hereof. If this contract is assigned to KF then after assignment to KF, Buyer will make all payments directly to KF at such places as KF may from time to time designate in writing to Buyer.

**3. Buyer's Warranties and Representations:**

Buyer warrants, represents and covenants; a) that Buyer is justly indebted to Seller for the full amount of the foregoing indebtedness; b) that except for the security interest granted hereby the property is free from and will be kept free from all liens, claims, security interests and encumbrances; c) that no financing statement covering the property or any proceeds is on file in favor of anyone other than Seller but if such other financing statement is on file, it will be terminated or subordinated; d) that all information supplied and statements made by Buyer in any financial, credit or accounting statement or application for credit prior to, contemporaneously with or subsequent to the execution of this contract with respect to this transaction are and shall be true, correct, valid and genuine; e) Buyer has full authority to enter into this contract and in so doing it is not violating any law or regulation or agreement with third parties, and it has taken all such action as may be necessary or appropriate to make this contract binding upon it: f) No director, officer or employee of the Company is or has been identified on any of the following documents: (i) the United States Department of Treasury, Office of Foreign Assets Control ("OFAC") list of "Specially Designated Nationals and Blocked Persons" ("SDNs"); (ii) the United States Department of Commerce, Bureau of Industry and Security of "Denied Persons List", "Entity List" or "Unverified List"; (iii) the Directorate of Defense Trade Controls of the United States Department of State "List of Statutorily Debarred Parties" or "List of Administratively Debarred Parties"; (iv) the United Kingdom's "Consolidated List of Financial Sanctions Targets" as maintained by HM Treasury; (v) Canada's "Listed Entities" pursuant to the Anti-Terrorism Act, 2001; (vi) the Australian Department of Foreign Affairs and Trade "Consolidated List" (pursuant to the Charter of the United Nations Act 1945 and Charter of the United Nations Terrorism and Dealings with Assets) Regulations 2002, as amended; (vii) the United Nations Security Council "Consolidated List" established and maintained by the 1267 Committee; or (viii) European Union Commission "Consolidated list of persons, groups and entities subject to EU financial sanctions". The Company is not and has not been involved in business arrangements or transactions with or involving countries subject to economic or trade sanctions imposed by the United States Government, or with or involving SDNs, in violation of the regulations maintained by OFAC.

**4. Events of Default; Acceleration:**

A very important element of this contract is that Buyer make all its payments promptly as agreed upon. Also essential is that the property continue to be in good condition and adequate security for the indebtedness. The following are events of default under this contract which will allow Seller to take such action under this Paragraph and under Paragraph 5 as it deems necessary:

(a) any of Buyer's obligations to Seller under any agreement with Seller is not paid promptly when due:
(b) Buyer breaches any warranty or provision hereof, or of any other instrument or agreement delivered by Buyer to Seller in connection with this or any other transaction;
(c) Buyer dies, becomes insolvent or ceases to do business as a going concern;
(d) it is determined Buyer has given Seller false information of a substantial nature regarding its financial condition;
(e) any of the property is lost or destroyed;
(f) a petition in bankruptcy or for arrangement or reorganization be filed by or against Buyer or Buyer admits its inability to pay its debts as they mature;
(g) property of Buyer be attached or a receiver be appointed for Buyer;
(h) whenever Seller in good faith believes the prospect of payment or performance is impaired or in good faith believes the property is insecure;
(i) any guarantor, surety or endorser for Buyer defaults in any obligation or liability to Seller or any guaranty obtained in connection with this transaction is terminated or breached.

**If Buyer shall be in default hereunder, the indebtedness herein described and all other debts then owing by Buyer to Seller under this or any other present or future agreement shall, if Seller shall so elect, become immediately due and payable.**

This acceleration of all indebtedness, if elected by Seller, shall be subject to all applicable laws, including laws as to rebates and refunds of unearned charges.

Page 3 of 5 KF524R ORIGINAL FOR SELLER (IF ASSIGNED, FOR KOMATSU FINANCIAL LIMITED PARTNERSHIP) Buyer's Initials X



# SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

**5. Seller's Remedies After Default; Consent to Enter Premises:**

So long as any obligations are owed by Buyer to Seller hereunder, Seller shall have all the rights and remedies provided by this contract and provided a secured party under the Uniform Commercial Code and any other applicable law. After default by Buyer, Seller's rights and remedies include but are not limited to a number of choices. Buyer acknowledges that if it defaults Seller is justly entitled to do whatever the law allows to avoid loss to itself and also to obtain for itself the benefit of the bargain under this contract.

Consequently, Buyer agrees that Seller, among its other rights and remedies, may itself or through its agent enter the premises or upon the land where the property is located and without removing the property render any equipment which is part of the property unusable and/or take possession of the property without notice to anyone or without judicial process of any kind, provided such self-help is done without breach of the peace (meaning actual or threatened violence to a person at the time of repossession). In order to afford itself of these and related remedies, Seller must be able to enter the premises or land in or upon which the property is located.

**Buyer therefore agrees that Seller by itself or through its agent may without notice to any person and without judicial process of any kind, enter into any premises or upon any land (including access roads and rights of way) owned, leased or otherwise under the real or apparent control of Buyer or any agent of Buyer where the property may be or where Seller believes the property may be, and using any reasonable force with respect to the property and any property connected to the property, disassemble, render unusable, disconnect and separate all property from any other property and/or repossess and remove all or any item of the property.**

Buyer will not hinder or delay Seller or its agent in any way and will, if requested, assist Seller or its agent in disassembling and/or removing the property. Seller may require Buyer to assemble the property and return it to Seller at a place to be designated by Seller which is reasonably convenient to both parties. Buyer expressly waives all further rights to possession of the property after default and all claims for damages related to such removal, disassembling, entering and/or repossession. The security interest granted hereby shall continue effective irrespective of any retaking and redelivery of the property to Buyer until all amounts secured hereby are fully paid in money.

Unless Buyer otherwise agrees in writing after default and unless the property is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Seller will give Buyer reasonable notice of the time and place of any public sale of the property or reasonable notice of the time after which any private sale or other intended disposition thereof is to be made. Unless otherwise provided by law, the requirement of reasonable notice shall be met if such notice is mailed, postage prepaid, to the address of Buyer shown herein at least ten days before the time of the sale or disposition. Expenses of retaking, holding, preparing for sale, selling and the like shall include reasonable attorneys' fees and other legal expenses. Buyer understands that Seller's rights are cumulative and not alternative and that Buyer will remain fully liable for any deficiency remaining after disposition of the property.

**6. Waiver of Defaults; Exclusive Agreement:**

Seller may in its sole discretion waive a default or cure a default at Buyer's expense. Any such waiver in a particular instance or of a particular default shall not be a waiver of other defaults or the same kind of default at another time. No modification or change in this contract shall bind Seller (after assignment, "Seller", as stated above means "KF") unless in writing signed by Seller. No oral agreement shall be binding.

**7. Buyer's Agreements:**

Buyer agrees; a) to defend at Buyer's own cost any action, proceeding or claim affecting the property; b) to pay reasonable attorneys' fees and other expenses incurred by Seller in enforcing its rights after Buyer's default: c) to pay promptly all taxes, assessments, license fees and other public or private charges when levied or assessed against the property or this contract and this obligation shall survive the termination of this contract; d) that if a certificate of title be required or permitted by law, Buyer shall obtain such certificate with respect to the property, showing the security interest of Seller thereon, and in any event do everything necessary or expedient to preserve or perfect the security interest of Seller; e) that Buyer will not misuse, fail to keep in good repair, secrete, or, except as provided in the remaining sentences of this Paragraph 7, without the prior written consent of Seller, and notwithstanding Seller's claim to proceeds, sell, rent, lend, encumber or transfer any of the property; f) that Seller may enter upon Buyer's premises or wherever the property may be located at any reasonable time to inspect the property. Buyer may lease the property in the ordinary course of Buyer's business and, in each instance, only on an arms-length basis upon the terms hereinafter set forth. In the event that Buyer leases the property to an affiliate of Buyer, the lease agreement between Buyer and such affiliate shall provide that such lease agreement is subordinate to this Contract.

To further secure payment of the indebtedness contained herein or incurred thereinafter, Buyer agrees to assign and hereby pledges, assigns and grants to Seller a security interest in the following collateral (collectively called "Additional Collateral"); all leases of the Property ("Leases"), other chattel paper, accounts, contract rights, documents, instruments and general intangibles, including all guaranties thereof, now existing or hereafter arising with respect to the Property (collectively with the Leases called the "Documents"); all rental payments and other amounts due or to become due under the Documents and all other cash and non-cash proceeds of the Property and the Documents (collectively called "Revenues"); all rights under and benefits of the terms, covenants and provisions of the Documents; and all legal and other remedies available for enforcement of the terms, covenants and provisions of the Documents. No Lease shall relieve Buyer of any of its obligations to Seller under Contract, and the aforesaid assignment of and security interest granted in the Documents and other Additional Collateral shall not be construed as authorizing Buyer to do anything with the Property other than to lease the same in accordance with the terms of this Contract. Buyer agrees that Seller does not, by this Contract or otherwise, assume any of the obligations of Buyer under any Lease or other Documents. Buyer agrees, upon the request of Seller, from time to time (a) to deliver to Seller any or all Documents and (b) to execute and deliver to Seller any and all further instruments and documents, including, without limitation, separate assignments and financing statements, which Seller deems necessary or desirable to obtain the full benefits of the assignment, rights, interests and powers herein granted.

Buyer hereby grants to Seller the right (in Buyer's name or otherwise, and without affecting Buyer's obligations to Seller) during the continuance of an event of default under Paragraph 4: to demand, receive, compromise, extend the time of payment of, or give discharge for, any and all Revenues; to endorse any checks or other instruments or orders in connection with the Revenues; and to file any claims or take such actions or institute such proceedings as Seller may deem necessary or advisable to protect Seller's interest. Buyer shall have no authority during the continuance of an event of default under Paragraph 4 to, and will not, during such period of time without Seller's prior written consent, accept collections, repossess, substitute or consent to the return of the Property or modify the terms or provisions of the Documents.

KOMATSU

# SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

Buyer agrees, upon the request of Seller, during the continuance of an event of default under Paragraph 4 (i) to notify all obligors under the Documents of the interest of Seller or its assigns, and (ii) to direct all obligors under the Documents to pay all Revenues directly to Seller. Buyer further agrees, upon request of Seller, to forward promptly to Seller all notices received by Buyer from any of the obligors under the Documents. Buyer agrees and warrants that: if required by Seller, all Leases shall provide that obligors under the Documents shall waive all rights to any defenses, set-offs and counterclaims as against Seller; if required by Seller, each lessee shall acknowledge and agree (or the Lease shall provide) that lessee's rights to the Property are subject and subordinate to all of the terms of this Contract, including, without limitation, Seller's right to possession of the property after the occurrence of an event of default under this Contract; there are and will be no purchase option or rights of third persons in or to the property or the Additional Collateral, except as approved by Seller in writing; the property is and will remain personal property; and the property and the Additional Collateral are and will be free from all liens and encumbrances other than Seller's. Buyer further agrees that it will notify Seller upon learning of any material damage to or destruction of any of the property. Buyer will not remove the property or permit any lessee of the property to remove the property from those states where Seller has agreed in writing the property may be located. Buyer's chief executive office and principal place of business are at Buyer's address as set forth on pages 1 and/or 2 of this Contract unless otherwise set forth herein, and Buyer agrees to notify Seller promptly of any change of such address(es). Buyer shall cause each lessee of property to permit Seller to visit and inspect the property on such lessee's premises or on any other premises where such lessee has control. Buyer warrants, represents and covenants that (i) Buyer's true and correct legal name is as set forth on page 1 of this Contract and (ii) Buyer will not do any of the following without prior written notice to Seller: change its legal name, merge or consolidate with or into any other entity, change its type of business organization or change the jurisdiction of its organization.

**8. Insurance and Risk of Loss: Liability insurance coverage for bodily and property damage caused to others is NOT included herein.**

All risk of loss of, damage to or destruction of the property shall at all times be on Buyer. Buyer will procure forthwith and maintain fire and theft insurance with extended or combined additional coverage on the property for the full insurable value thereof for the life of this contract plus such other insurance as Seller may specify, and promptly deliver each policy to Seller with a standard long form endorsement attached showing loss payable to Seller or assigns as respective interests may appear. Seller's acceptance of policies in lesser amounts of risks shall not be a waiver of Buyer's foregoing obligation. In the event that the property damage insurance required hereby shall be issued through the Agency as provided in the Insurance Coverage section on the second page of this Contract (such insurance obtained through the Agency, the "Insurance") and any portion of the cash down payment and trade-in equipment allowance set forth in the Trade-In Equipment Description section of the second page of this Contract shall be allocated to the payment of the premium for the Insurance indicated in section 5c of the first page of this Contract. Seller agrees that the portion of the Cash and Trade-In allowance to be allocated to the payment of the premium on the Insurance shall constitute monies to be paid by Seller on behalf of Buyer to pay such premium. Buyer directs that such portion of such cash down payment and allowance be used by Seller to promptly pay on behalf of Buyer the premium on the Insurance. Buyer acknowledges that (i) Buyer has the option of furnishing the insurance required by this Section 8 through an agent or insurer of Buyer's choice and (ii) Seller merely informed Buyer of an insurance agent which dealt with insurance of the type required by this Contract and aided Buyer in completing the application form for the Insurance. Buyer agrees that Seller may from time to time communicate directly with the Agency and the insurer with respect to the Insurance. As additional security for the payment of the indebtedness owing by Buyer under this Contract, Buyer hereby grants to Seller a first priority security interest in the Insurance and all rights of Buyer with respect to the Insurance (including, without limitation, the right to cancel the Insurance and all rights to Buyer relating to unearned premiums and dividends which may be payable on or in respect of the Insurance).

Buyer represents, warrants and agrees that it has not heretofore assigned or transferred and will not assign or transfer any or all of its interest in the Insurance, except in favor of Seller. In addition to any and all other rights and remedies available to Seller under this Contract, applicable law or otherwise, upon and after the occurrence of an event of default under this Contract, Buyer agrees that Seller may cancel the Insurance and receive on behalf of Buyer the unearned insurance premium and dividends thereon. Such unearned insurance premium and dividends shall be applied by Seller to the payment of the amounts owing by Buyer to Seller under this Contract (and Buyer so directs that Seller make such application). Buyer hereby constitutes and appoints Seller as Buyer's attorney-in-fact with full authority upon and after the occurrence of an event of default under this Contract to cancel the Insurance, to receive (and give receipt for) monies payable with respect to the Insurance as a result of such cancellation and to endorse Buyer's name on any check, draft, or other form of payment for all monies that may become due from the insurer with respect to any such cancellation.

The foregoing power of attorney, being coupled with an interest, is irrevocable until all obligations of Buyer under this Contract have been paid in full. Buyer hereby releases Seller of any liabilities, claims, demands, obligations, costs and expenses now or hereafter incurred by Buyer in any way relating to the Insurance, except for the failure of Seller to make the payment on the Insurance premium with respect to the Insurance as provided above and except for the gross negligence or willful misconduct of Seller. Seller assumes no liability as an insurer. Buyer acknowledges and agrees that the insurer and the Agency may conclusively rely on the agreements made by the Buyer in this Contract (including, without limitation, the direction of Buyer for Seller to pay on behalf of Buyer all or a portion of the insurance premium on the Insurance, the right of Seller to communicate from time to time directly with the Agency and insurer and the power of attorney herein provided in favor of Seller in order to cancel the Insurance) and shall have no liability to Buyer for relying on this Contract (including, without limitation, with respect to such power of attorney). Buyer acknowledges that neither the insurer nor the Agency shall be required to determine whether an event of default exists under this Contract in order to honor such power of attorney and the insurer and the Agency may conclusively rely on any statement given by Seller with respect to any such cancellation.

**9. Miscellaneous:**

Buyer waives all exemptions. Seller may correct patent errors herein and fill in such blanks as serial numbers, date of first payment and the like. Any provisions hereof contrary to, prohibited by, or invalid under applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining provisions hereof. Buyer acknowledges receipt of a true copy and waives acceptance hereof. "Buyer" and "Seller" as used in this contract also mean "debtor" and "secured party" respectively and include heirs, executors, or administrators, successors or assigns to those parties. If more than one Buyer executes this contract, their obligations under this contract shall be joint and several. Buyer acknowledges and agrees that the original contract shall not be returned to Buyer upon payment in full of all amounts owing under this contract, except as required by applicable law or as agreed to by Seller in its discretion.

Buyer's Initials

KOMATSU **SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT**

ACCOUNT NO.

TO: KOMATSU FINANCIAL LIMITED PARTNERSHIP

Re: Security Agreement/Contract between HMH CONSTRUCTION, LLC ("Buyer") and undersigned ("Assignor"), dated 08/31/2021 having a present unpaid balance of $298,104.48 covering D51PXi-24 S/N 10973 HYPER V S/N 19959/20047 (hereinafter referred to as "Agreement").

For value received Assignor hereby sells and assigns to Komatsu Financial Limited Partnership, its successors and assigns ("Assignee"), the Agreement, together with all of Assignor's right, title and interest in the property covered by and described in the Agreement ("Property"), and all of Assignor's rights and remedies thereunder and under any guaranty or endorsement thereof, including the right to collect any and all installments due and to become due on the Agreement and to take, in Assignor's or Assignee's name, any and all proceedings Assignor might otherwise take.

Assignor agrees that Assignee may audit its books and records relating to all paper assigned to Assignee and may in Assignor's name endorse all accompanying notes and all remittances received, and Assignor gives express permission to Assignee to release, on terms satisfactory to Assignee, by operation of law or otherwise, or to compromise or adjust any and all rights against and grant extensions of time of payment to the Buyer or any other persons obligated on the Agreement or on any accompanying note or guaranty, without notice to Assignor and without affecting Assignor's liability hereunder. Assignor waives presentment and demand for payment, protest and notice of non-payment and protest as to all paper heretofore, now or hereafter endorsed or assigned to Assignee and Assignor subordinates to any rights Assignee may now or hereafter have against the Buyer any rights Assignor may now or hereafter have.

Assignor shall have no authority to, and will not, without Assignee's prior written consent, accept collections, repossess or consent to the return of the Property described in the Agreement or modify the terms of the agreement or of any accompanying note or guaranty. Assignee's knowledge at any time of any breach of or noncompliance with any of the foregoing shall not constitute any waiver by Assignee. Assignor waives notice of acceptance hereof.

As part of the foregoing instrument, the Assignor's obligations in addition to those stated in the preceding paragraphs are governed by paragraph 1, 2, 3 or 4 as indicated by the box marked X below.

[X] **1. WITHOUT RECOURSE**
Assignor further agrees to assign the Agreement without recourse as to the financial ability of the Buyer to pay.

[ ] **2. WITH RECOURSE**
Subject to the terms and provisions of any applicable underlying agreement between Assignor and Assignee, Assignor further agrees to guaranty the payment promptly when due of the amount of each and every installment payable under the Agreement and the payment on demand of the entire unpaid balance at the date of default in the event of any default by Buyer under the Agreement, without first requiring Assignee to proceed against Buyer or any other person or any security.

[ ] **3. LIMITED REPURCHASE AGREEMENT**
Assignor further agrees that if the Buyer fails to pay the first installments of his obligation within 15 days of scheduled maturity as set forth in the Agreement hereby assigned and if any of said installments are not paid within the 15 days and Assignee repossesses the Property described in said Agreement, Assignor will purchase from Assignee the Property for the then unpaid balance in its then condition and location.

[ ] **4. PARTIAL REPURCHASE AGREEMENT**
Assignor further agrees that if Assignee repossesses the Property described in said Agreement the undersigned upon demand will pay to Assignee NaN or purchase the Property from Assignee for the then unpaid balance in its then condition and location.

MODERN MACHINERY CO., INC.
(Assignor)

**Sign:** Kyle Viste

08/31/2021
(executed)

**Name: Kyle Viste**

**Title: Controller**

The above assignment is made subject to the terms and conditions of the financing agreement presently in effect between Assignor and the Assignee, which specifically sets forth all of the rights and obligations of the Assignor and the Assignee with respect to retail contracts, and incorporates without limitation, the representations and warranties made by Assignor to Assignee with respect to retail contracts, any accompanying notes, guaranty or other documents relating thereto. Assignor represents to Assignee that (i) the present unpaid balance under the Agreement is correct and (ii) Assignor will comply with all its obligations under the Agreement.



20211545667

B0642-0933 08/31/2021 9:33 AM Received by ID Secretary of State Lawerence Denney

**STATE OF IDAHO**

*Office of the secretary of state, Lawerence Denney*

**UCC1 FINANCING STATEMENT**

Idaho Secretary of State
PO Box 83720
Boise, ID 83720-0080
(208) 334-2301
Filing Fee - $3 submitted online, $6 print & mail or $12 if 3 or more pages.
Make checks payable to Secretary of State.

Contact at Filer:

| | |
|---|---|
| Contact Name | WOLTERS KLUWER LIEN SOLUTIONS |
| Contact Phone | 800-331-3282 |
| Contact Email | uccfilingreturn@wolterskluwer.com |

Send acknowledgment to:

| | |
|---|---|
| Name | LIEN SOLUTIONS |
| Address | P O BOX 29071<br>GLENDALE, CA 91209-9071 |

Debtors:

| DEBTOR'S NAME | MAILING ADDRESS |
|---|---|
| HMH CONSTRUCTION, LLC | PO BOX 337<br>NAMPA, ID 83653 |

Secured Parties:

| SECURED PARTY'S NAME | MAILING ADDRESS |
|---|---|
| KOMATSU FINANCIAL LIMITED PARTNERSHIP | 8770 W BRYN MAWR AVE SUITE 100<br>CHICAGO, IL 60631 |

Collateral:

| | |
|---|---|
| The financing statement covers the following collateral: | ONE (1) Komatsu D51PXi-24 Crawler Dozer, S/N# 10973, EQ 1119290 w/ Extended warranty. ONE (1) Topcon HYPER V Base & Rover Station, S/N# 19959/20047, EQ 1245915. COMPLETE WITH ALL PRESENT ATTACHMENTS, ACCESSORIES, REPLACEMENT PARTS, ADDITIONS AND ALL PROCEEDS THEREOF. |
| The collateral is: | |

Designations:

| | |
|---|---|
| Select a designation which describes this financing statement: | Not Applicable |
| Select an additional designation which describes this financing statement: | Not Applicable |

Alternative Designations:

| | |
|---|---|
| Select the alternative designation which describes this financing statement: | Not Applicable |

Optional Filer Reference Data:

ID-0-82216720-62081704

# EXHIBIT 3

Case 23-00191-JMM Claim 94-1 Part 2 Filed 07/20/23 Entered 07/20/23 13:50:23 Desc Exhibit A Page 24 of 55
DocuSign Envelope ID: 871A722B-CE56-4082-9CEF-5B113F485470

KOMATSU

# SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

Subject to the Terms and Conditions herein contained, the Seller hereby agrees to sell, and the Buyer having been quoted and offered both a cash sale price, payable immediately or within a limited number of days, and a contract time price which permits the Buyer to purchase the property now but pay in installments over an extended period of time, hereby agrees to buy, the following described property ("property") on a contract time price basis set forth below. The Contract time price is more than the cash sale price because it includes charges by the Seller to compensate the Seller for having to wait a period of time before collecting its full purchase price and for taking a risk in waiting such period of time. The property is to be used only for commercial or business purposes, includes all accessories and attachments, and shall, except as permitted by Paragraph 7 on page 4 hereof, be located at Buyer's Address set forth immediately below.

**Seller's Information** MODERN MACHINERY CO., INC.
P.O. BOX 16660
MISSOULA, MT 59808

**Quote No. 145490**

**Buyer's Information**
HMH CONSTRUCTION, LLC
PO Box 337
NAMPA, ID 83653

Physical Location: PO Box 337
NAMPA, ID 83653

County CANYON
Telephone: 8334642667

County: CANYON
State Charter Number: 0000624752
State of Registration: ID
Tax ID: [redacted]

Property Description

| Make | Model | Type | Description | Serial No. | Price |
|---|---|---|---|---|---|
| Komatsu | WA380-8 | Wheel Loader | EQ 1181552 w/ Rockland bucket and forks<br>Includes Extended warranty | A75677 | $295,468.00 |

Trade-In Description

| Year | Make | Model | Type | Description | Serial No. | Allowance | Amt. Owed | Net Trade |
|---|---|---|---|---|---|---|---|---|
| 2018 | Caterpillar | 950M | Wheel Loader | CAT0950MJ1S01705 | J1S01705 | $173,182.29 | $173,182.29 | $0.00 |

**Schedule of Payments**

BUYER AGREES TO PAY SELLER, OR IF THIS CONTRACT IS ASSIGNED, TO ASSIGNEE OF SELLER, THE 'TOTAL OF PAYMENTS' (ITEM 10) IN ACCORDANCE WITH THE FOLLOWING SCHEDULE. PAYMENTS IN NUMBER AND AMOUNT ARE DUE EACH SUCCESSIVE MONTH ON THE SAME DAY AS THE STARTING DATE, OR AS INDICATED BELOW.

| Payments | Start Date | End Date | Payment | Total |
|---|---|---|---|---|
| 48 | 10/13/2021 | 09/13/2025 | $6,572.65 | $315,487.20 |
| 48 | | | | $315,487.20 |

**Statement of Transaction**

| | | |
|---|---|---|
| 1. Sales Price | | $295,468.00 |
| 2. Delivery, Installation, Repair (or other Service Charges) | $0.00 | |
| 3. Sales Tax | $5,468.92 | |
| 4. Cash Price (1+2+3) | | $300,936.92 |
| 5. a. Cash Down Payment | $0.00 | |
| b. Net Trade In | $0.00 | |
| c. Less Insurance | $0.00 | |
| Total Down Payment (5a+5b-5c) | | $0.00 |
| 6. Net Cash Price (4-5) | | $300,936.92 |
| 7. a. Lien & Filing Fees | $0.00 | |
| b. Other Fees | $500.00 | |
| Total Other Charges | | $500.00 |
| 8. Amount Financed (6 + 7) | | $301,436.92 |
| 9. Finance Charge (2.25%) | | $14,050.28 |
| 10. Total of Payments (8 + 9) | | $315,487.20 |
| 11. Total Time Price (4 + 7 + 9) | | $315,487.20 |

Date finance charge begins to accrue (if different than contract date)

Page 1 of 5 KF524R ORIGINAL FOR SELLER (IF ASSIGNED, FOR KOMATSU FINANCIAL LIMITED PARTNERSHIP) Buyer's Initials

KOMATSU

# SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

**Insurance Coverage**

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS AGREEMENT.**

Physical Damage Insurance Covering The Property Is Required.

BUYER HAS OBTAINED INSURANCE THROUGH THE INSURANCE AGENCY LISTED BELOW OR ON FORM KF543R, SUBMITTED WITH THIS CONTRACT.

Insurance Agency

Contact:
Phone#

**Buyer Place of Business and Other Buyer Information**

IF BUYER'S ACTUAL CHIEF PLACE OF BUSINESS (CHIEF EXECUTIVE OFFICE IF MORE THAN ONE PLACE OF BUSINESS) IS IN A STATE OTHER THAN STATE WHERE THE PROPERTY IS LOCATED (AS SET FORTH ON PAGE 1), SPECIFY ACTUAL CHIEF PLACE OF BUSINESS.

Physical Location:

BUYER DOES NOT HAVE PLACES OF BUSINESS IN MORE THAN ONE COUNTY IN THE STATE WHERE PROPERTY IS LOCATED.

THIS SALE IS CONTINGENT UPON FINANCING ON TERMS WHICH ARE SATISFACTORY TO THE PARTIES.

IF DATE OF DELIVERY IS DIFFERENT THAN EFFECTIVE DATE SHOWN BELOW, SHOW ACTUAL DELIVERY DATE:

**Partner Names and Addresses (If applicable)**

| Name | Address | Tax ID |
|---|---|---|

**Delinquency Charge:** After maturity, each installment shall bear charges at the highest rate permitted by law, but not to exceed 1.5% per month. Buyer also agrees to pay all expenses, including reasonable attorneys' fees, incurred in the collection and enforcement, by suit or otherwise, of any amount payable under this contract.
**Security Interest:** In order to secure payment of the indebtedness contained herein or incurred hereunder, Seller hereby retains, and Buyer hereby grants, a purchase money security interest under the Uniform Commercial Code in and to the above described property sold hereunder, together with all replacements, substitutions, additions, attachments, repairs, accessions and proceeds, including amounts payable under any insurance policies with respect thereto. Buyer hereby authorizes Seller to file one or more financing statements and/or a carbon or reproduction of this contract as a financing statement. Buyer hereby authorizes Seller or its agent or assigns to sign and execute on its behalf any and all necessary UCC-1 forms to perfect the security interest herein granted to Seller.
**Location of Property:** Buyer and Seller agree that regardless of the manner of affixation, the property shall remain personal property and not become part of the real estate. Except as permitted by Paragraph 7, Buyer agrees to keep the property at the location set forth herein, and will notify Seller promptly in writing of any change in the location of the property within such State, but will not remove the property from such State without the prior written consent of Seller (except that in the State of Pennsylvania, the property will not be moved from the above location without such prior written consent).
**ENTIRE AGREEMENT:** BUYER agrees that this contract including the ADDITIONAL TERMS AND CONDITIONS PRINTED ON Page 3-5 hereof, which he has read and to which he agrees, contains the entire agreement relating to the conditional sale of the property and supersedes all previous contracts and agreements between Buyer and Seller relating to the order or sale of the property. This contract is not binding upon Seller, unless signed by the manager of Seller or owner.
**NOTICE TO BUYER: 1. Do not sign this contract before you read it or if it contains blank spaces. 2. You are entitled to an exact and completely filled-in copy of the contract you sign. 3. Under law, you have the following rights, among others: (a) to pay off in advance the full amount due and obtain a partial refund of any unearned finance charge; (b) to redeem the property if repossessed for a default; and (c) to require, under certain conditions, a resale of the property if repossessed. 4. If you desire to pay off in advance the full amount due, the amount of the refund you are entitled to, if any, will be furnished upon request. 5. Keep this contract to protect your legal rights.**

**BUYER ACKNOWLEDGES RECEIPT OF AN EXACT COPY OF THIS CONTRACT SIGNED BY SELLER**

| | |
|---|---|
| **Buyer:** HMH CONSTRUCTION, LLC | **Effective Contract Date:** 08/31/2021 |
| **By:** [signature] **Title** [signature] | **Salesman's Signature:** Ryan Rowbury |
| **Co-Signer:** | **Signature For Seller Approval:** Kyle Viste |
| **By:** **Title:** | |

Case 23-00191-JMM Claim 94-1 Part 2 Filed 07/20/23 Entered 07/20/23 13:50:23 Desc Proof Exhibit A Page 26 of 65
DocuSign Envelope ID: 871A722B-CE56-4082-9CEF-5B113F485470

# SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

**Conditional Terms and Conditions:**

**1. Assignment by Seller; Waiver of Defenses Against Assignee Holder:**

Seller may hold this contract or it may assign it for value to Komatsu Financial Limited Partnership (hereinafter referred to as "KF"). If Seller does in fact assign this contract to KF then after such assignment: a) KF as assignee, shall have all the rights and remedies of Seller hereunder and all of Buyer's agreements, representations and warranties shall be deemed to have been made to KF with the same force and effect as if KF were an original party hereto; b) Seller shall not be KF's agent for any purposes; c) Seller shall not have any power or authority to change or modify this contract or any related document or instrument in any way (except any relevant warranty or service agreement which is exclusively between Seller and Buyer and shall not bind KF or affect any of Buyer's or KF's rights or obligations under this contract); d) Buyer will settle all claims, defenses, set-offs and counterclaims of any nature, it may have against Seller, including but not limited to delivery of property, defects in the property and the like, directly with Seller, and not set up any such claim, defense, set-off or counterclaim against KF. Seller hereby agreeing to remain responsible therefor.

**2. Waiver of Defenses Acknowledgment; Place of Payment:**

Buyer acknowledges that: KF has no knowledge or information as to the condition or suitability for Buyer's purposes of the property, and KF's decision to purchase this contract from Seller, if so offered, will be made in reliance on Buyer's warranties, agreements and covenants herein, including Buyer's express agreement not to assert against KF any claims, defenses, set-offs or counterclaims it may now or in the future have against Seller named on page 1 hereof. If this contract is assigned to KF then after assignment to KF, Buyer will make all payments directly to KF at such places as KF may from time to time designate in writing to Buyer.

**3. Buyer's Warranties and Representations:**

Buyer warrants, represents and covenants; a) that Buyer is justly indebted to Seller for the full amount of the foregoing indebtedness; b) that except for the security interest granted hereby the property is free from and will be kept free from all liens, claims, security interests and encumbrances; c) that no financing statement covering the property or any proceeds is on file in favor of anyone other than Seller but if such other financing statement is on file, it will be terminated or subordinated; d) that all information supplied and statements made by Buyer in any financial, credit or accounting statement or application for credit prior to, contemporaneously with or subsequent to the execution of this contract with respect to this transaction are and shall be true, correct, valid and genuine; e) Buyer has full authority to enter into this contract and in so doing it is not violating any law or regulation or agreement with third parties, and it has taken all such action as may be necessary or appropriate to make this contract binding upon it: f) No director, officer or employee of the Company is or has been identified on any of the following documents: (i) the United States Department of Treasury, Office of Foreign Assets Control ("OFAC") list of "Specially Designated Nationals and Blocked Persons" ("SDNs"); (ii) the United States Department of Commerce, Bureau of Industry and Security of "Denied Persons List", "Entity List" or "Unverified List"; (iii) the Directorate of Defense Trade Controls of the United States Department of State "List of Statutorily Debarred Parties" or "List of Administratively Debarred Parties"; (iv) the United Kingdom's "Consolidated List of Financial Sanctions Targets" as maintained by HM Treasury; (v) Canada's "Listed Entities" pursuant to the Anti-Terrorism Act, 2001; (vi) the Australian Department of Foreign Affairs and Trade "Consolidated List" (pursuant to the Charter of the United Nations Act 1945 and Charter of the United Nations Terrorism and Dealings with Assets) Regulations 2002, as amended; (vii) the United Nations Security Council "Consolidated List" established and maintained by the 1267 Committee; or (viii) European Union Commission "Consolidated list of persons, groups and entities subject to EU financial sanctions". The Company is not and has not been involved in business arrangements or transactions with or involving countries subject to economic or trade sanctions imposed by the United States Government, or with or involving SDNs, in violation of the regulations maintained by OFAC.

**4. Events of Default; Acceleration:**

A very important element of this contract is that Buyer make all its payments promptly as agreed upon. Also essential is that the property continue to be in good condition and adequate security for the indebtedness. The following are events of default under this contract which will allow Seller to take such action under this Paragraph and under Paragraph 5 as it deems necessary:

(a) any of Buyer's obligations to Seller under any agreement with Seller is not paid promptly when due:
(b) Buyer breaches any warranty or provision hereof, or of any other instrument or agreement delivered by Buyer to Seller in connection with this or any other transaction;
(c) Buyer dies, becomes insolvent or ceases to do business as a going concern;
(d) it is determined Buyer has given Seller false information of a substantial nature regarding its financial condition;
(e) any of the property is lost or destroyed;
(f) a petition in bankruptcy or for arrangement or reorganization be filed by or against Buyer or Buyer admits its inability to pay its debts as they mature;
(g) property of Buyer be attached or a receiver be appointed for Buyer;
(h) whenever Seller in good faith believes the prospect of payment or performance is impaired or in good faith believes the property is insecure;
(i) any guarantor, surety or endorser for Buyer defaults in any obligation or liability to Seller or any guaranty obtained in connection with this transaction is terminated or breached.

**If Buyer shall be in default hereunder, the indebtedness herein described and all other debts then owing by Buyer to Seller under this or any other present or future agreement shall, if Seller shall so elect, become immediately due and payable.**

This acceleration of all indebtedness, if elected by Seller, shall be subject to all applicable laws, including laws as to rebates and refunds of unearned charges.

Page 3 of 5 KF524R ORIGINAL FOR SELLER (IF ASSIGNED, FOR KOMATSU FINANCIAL LIMITED PARTNERSHIP) Buyer's Initials

DocuSign Envelope ID: 871A722B-CE56-4082-9CEF-5B113F48EA7E

# SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

**5. Seller's Remedies After Default; Consent to Enter Premises:**

So long as any obligations are owed by Buyer to Seller hereunder, Seller shall have all the rights and remedies provided by this contract and provided a secured party under the Uniform Commercial Code and any other applicable law. After default by Buyer, Seller's rights and remedies include but are not limited to a number of choices. Buyer acknowledges that if it defaults Seller is justly entitled to do whatever the law allows to avoid loss to itself and also to obtain for itself the benefit of the bargain under this contract.

Consequently, Buyer agrees that Seller, among its other rights and remedies, may itself or through its agent enter the premises or upon the land where the property is located and without removing the property render any equipment which is part of the property unusable and/or take possession of the property without notice to anyone or without judicial process of any kind, provided such self-help is done without breach of the peace (meaning actual or threatened violence to a person at the time of repossession). In order to afford itself of these and related remedies, Seller must be able to enter the premises or land in or upon which the property is located.

**Buyer therefore agrees that Seller by itself or through its agent may without notice to any person and without judicial process of any kind, enter into any premises or upon any land (including access roads and rights of way) owned, leased or otherwise under the real or apparent control of Buyer or any agent of Buyer where the property may be or where Seller believes the property may be, and using any reasonable force with respect to the property and any property connected to the property, disassemble, render unusable, disconnect and separate all property from any other property and/or repossess and remove all or any item of the property.**

Buyer will not hinder or delay Seller or its agent in any way and will, if requested, assist Seller or its agent in disassembling and/or removing the property. Seller may require Buyer to assemble the property and return it to Seller at a place to be designated by Seller which is reasonably convenient to both parties. Buyer expressly waives all further rights to possession of the property after default and all claims for damages related to such removal, disassembling, entering and/or repossession. The security interest granted hereby shall continue effective irrespective of any retaking and redelivery of the property to Buyer until all amounts secured hereby are fully paid in money.

Unless Buyer otherwise agrees in writing after default and unless the property is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Seller will give Buyer reasonable notice of the time and place of any public sale of the property or reasonable notice of the time after which any private sale or other intended disposition thereof is to be made. Unless otherwise provided by law, the requirement of reasonable notice shall be met if such notice is mailed, postage prepaid, to the address of Buyer shown herein at least ten days before the time of the sale or disposition. Expenses of retaking, holding, preparing for sale, selling and the like shall include reasonable attorneys' fees and other legal expenses. Buyer understands that Seller's rights are cumulative and not alternative and that Buyer will remain fully liable for any deficiency remaining after disposition of the property.

**6. Waiver of Defaults; Exclusive Agreement:**

Seller may in its sole discretion waive a default or cure a default at Buyer's expense. Any such waiver in a particular instance or of a particular default shall not be a waiver of other defaults or the same kind of default at another time. No modification or change in this contract shall bind Seller (after assignment, "Seller", as stated above means "KF") unless in writing signed by Seller. No oral agreement shall be binding.

**7. Buyer's Agreements:**

Buyer agrees; a) to defend at Buyer's own cost any action, proceeding or claim affecting the property; b) to pay reasonable attorneys' fees and other expenses incurred by Seller in enforcing its rights after Buyer's default: c) to pay promptly all taxes, assessments, license fees and other public or private charges when levied or assessed against the property or this contract and this obligation shall survive the termination of this contract; d) that if a certificate of title be required or permitted by law, Buyer shall obtain such certificate with respect to the property, showing the security interest of Seller thereon, and in any event do everything necessary or expedient to preserve or perfect the security interest of Seller; e) that Buyer will not misuse, fail to keep in good repair, secrete, or, except as provided in the remaining sentences of this Paragraph 7, without the prior written consent of Seller, and notwithstanding Seller's claim to proceeds, sell, rent, lend, encumber or transfer any of the property; f) that Seller may enter upon Buyer's premises or wherever the property may be located at any reasonable time to inspect the property. Buyer may lease the property in the ordinary course of Buyer's business and, in each instance, only on an arms-length basis upon the terms hereinafter set forth. In the event that Buyer leases the property to an affiliate of Buyer, the lease agreement between Buyer and such affiliate shall provide that such lease agreement is subordinate to this Contract.

To further secure payment of the indebtedness contained herein or incurred thereinafter, Buyer agrees to assign and hereby pledges, assigns and grants to Seller a security interest in the following collateral (collectively called "Additional Collateral"); all leases of the Property ("Leases"), other chattel paper, accounts, contract rights, documents, instruments and general intangibles, including all guaranties thereof, now existing or hereafter arising with respect to the Property (collectively with the Leases called the "Documents"); all rental payments and other amounts due or to become due under the Documents and all other cash and non-cash proceeds of the Property and the Documents (collectively called "Revenues"); all rights under and benefits of the terms, covenants and provisions of the Documents; and all legal and other remedies available for enforcement of the terms, covenants and provisions of the Documents. No Lease shall relieve Buyer of any of its obligations to Seller under Contract, and the aforesaid assignment of and security interest granted in the Documents and other Additional Collateral shall not be construed as authorizing Buyer to do anything with the Property other than to lease the same in accordance with the terms of this Contract. Buyer agrees that Seller does not, by this Contract or otherwise, assume any of the obligations of Buyer under any Lease or other Documents. Buyer agrees, upon the request of Seller, from time to time (a) to deliver to Seller any or all Documents and (b) to execute and deliver to Seller any and all further instruments and documents, including, without limitation, separate assignments and financing statements, which Seller deems necessary or desirable to obtain the full benefits of the assignment, rights, interests and powers herein granted.

Buyer hereby grants to Seller the right (in Buyer's name or otherwise, and without affecting Buyer's obligations to Seller) during the continuance of an event of default under Paragraph 4: to demand, receive, compromise, extend the time of payment of, or give discharge for, any and all Revenues; to endorse any checks or other instruments or orders in connection with the Revenues; and to file any claims or take such actions or institute such proceedings as Seller may deem necessary or advisable to protect Seller's interest. Buyer shall have no authority during the continuance of an event of default under Paragraph 4 to, and will not, during such period of time without Seller's prior written consent, accept collections, repossess, substitute or consent to the return of the Property or modify the terms or provisions of the Documents.

Page 4 of 5 KF524R ORIGINAL FOR SELLER (IF ASSIGNED, FOR KOMATSU FINANCIAL LIMITED PARTNERSHIP) Buyer's Initials

## SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

Buyer agrees, upon the request of Seller, during the continuance of an event of default under Paragraph 4 (i) to notify all obligors under the Documents of the interest of Seller or its assigns, and (ii) to direct all obligors under the Documents to pay all Revenues directly to Seller. Buyer further agrees, upon request of Seller, to forward promptly to Seller all notices received by Buyer from any of the obligors under the Documents. Buyer agrees and warrants that: if required by Seller, all Leases shall provide that obligors under the Documents shall waive all rights to any defenses, set-offs and counterclaims as against Seller; if required by Seller, each lessee shall acknowledge and agree (or the Lease shall provide) that lessee's rights to the Property are subject and subordinate to all of the terms of this Contract, including, without limitation, Seller's right to possession of the property after the occurrence of an event of default under this Contract; there are and will be no purchase option or rights of third persons in or to the property or the Additional Collateral, except as approved by Seller in writing; the property is and will remain personal property; and the property and the Additional Collateral are and will be free from all liens and encumbrances other than Seller's. Buyer further agrees that it will notify Seller upon learning of any material damage to or destruction of any of the property. Buyer will not remove the property or permit any lessee of the property to remove the property from those states where Seller has agreed in writing the property may be located. Buyer's chief executive office and principal place of business are at Buyer's address as set forth on pages 1 and/or 2 of this Contract unless otherwise set forth herein, and Buyer agrees to notify Seller promptly of any change of such address(es). Buyer shall cause each lessee of property to permit Seller to visit and inspect the property on such lessee's premises or on any other premises where such lessee has control. Buyer warrants, represents and covenants that (i) Buyer's true and correct legal name is as set forth on page 1 of this Contract and (ii) Buyer will not do any of the following without prior written notice to Seller: change its legal name, merge or consolidate with or into any other entity, change its type of business organization or change the jurisdiction of its organization.

**8. Insurance and Risk of Loss: Liability insurance coverage for bodily and property damage caused to others is NOT included herein.**

All risk of loss of, damage to or destruction of the property shall at all times be on Buyer. Buyer will procure forthwith and maintain fire and theft insurance with extended or combined additional coverage on the property for the full insurable value thereof for the life of this contract plus such other insurance as Seller may specify, and promptly deliver each policy to Seller with a standard long form endorsement attached showing loss payable to Seller or assigns as respective interests may appear. Seller's acceptance of policies in lesser amounts of risks shall not be a waiver of Buyer's foregoing obligation. In the event that the property damage insurance required hereby shall be issued through the Agency as provided in the Insurance Coverage section on the second page of this Contract (such insurance obtained through the Agency, the "Insurance") and any portion of the cash down payment and trade-in equipment allowance set forth in the Trade-In Equipment Description section of the second page of this Contract shall be allocated to the payment of the premium for the Insurance indicated in section 5c of the first page of this Contract. Seller agrees that the portion of the Cash and Trade-In allowance to be allocated to the payment of the premium on the Insurance shall constitute monies to be paid by Seller on behalf of Buyer to pay such premium. Buyer directs that such portion of such cash down payment and allowance be used by Seller to promptly pay on behalf of Buyer the premium on the Insurance. Buyer acknowledges that (i) Buyer has the option of furnishing the insurance required by this Section 8 through an agent or insurer of Buyer's choice and (ii) Seller merely informed Buyer of an insurance agent which dealt with insurance of the type required by this Contract and aided Buyer in completing the application form for the Insurance. Buyer agrees that Seller may from time to time communicate directly with the Agency and the insurer with respect to the Insurance. As additional security for the payment of the indebtedness owing by Buyer under this Contract, Buyer hereby grants to Seller a first priority security interest in the Insurance and all rights of Buyer with respect to the Insurance (including, without limitation, the right to cancel the Insurance and all rights to Buyer relating to unearned premiums and dividends which may be payable on or in respect of the Insurance).

Buyer represents, warrants and agrees that it has not heretofore assigned or transferred and will not assign or transfer any or all of its interest in the Insurance, except in favor of Seller. In addition to any and all other rights and remedies available to Seller under this Contract, applicable law or otherwise, upon and after the occurrence of an event of default under this Contract, Buyer agrees that Seller may cancel the Insurance and receive on behalf of Buyer the unearned insurance premium and dividends thereon. Such unearned insurance premium and dividends shall be applied by Seller to the payment of the amounts owing by Buyer to Seller under this Contract (and Buyer so directs that Seller make such application). Buyer hereby constitutes and appoints Seller as Buyer's attorney-in-fact with full authority upon and after the occurrence of an event of default under this Contract to cancel the Insurance, to receive (and give receipt for) monies payable with respect to the Insurance as a result of such cancellation and to endorse Buyer's name on any check, draft, or other form of payment for all monies that may become due from the insurer with respect to any such cancellation.

The foregoing power of attorney, being coupled with an interest, is irrevocable until all obligations of Buyer under this Contract have been paid in full. Buyer hereby releases Seller of any liabilities, claims, demands, obligations, costs and expenses now or hereafter incurred by Buyer in any way relating to the Insurance, except for the failure of Seller to make the payment on the Insurance premium with respect to the Insurance as provided above and except for the gross negligence or willful misconduct of Seller. Seller assumes no liability as an insurer. Buyer acknowledges and agrees that the insurer and the Agency may conclusively rely on the agreements made by the Buyer in this Contract (including, without limitation, the direction of Buyer for Seller to pay on behalf of Buyer all or a portion of the insurance premium on the Insurance, the right of Seller to communicate from time to time directly with the Agency and insurer and the power of attorney herein provided in favor of Seller in order to cancel the Insurance) and shall have no liability to Buyer for relying on this Contract (including, without limitation, with respect to such power of attorney). Buyer acknowledges that neither the insurer nor the Agency shall be required to determine whether an event of default exists under this Contract in order to honor such power of attorney and the insurer and the Agency may conclusively rely on any statement given by Seller with respect to any such cancellation.

**9. Miscellaneous:**

Buyer waives all exemptions. Seller may correct patent errors herein and fill in such blanks as serial numbers, date of first payment and the like. Any provisions hereof contrary to, prohibited by, or invalid under applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining provisions hereof. Buyer acknowledges receipt of a true copy and waives acceptance hereof. "Buyer" and "Seller" as used in this contract also mean "debtor" and "secured party" respectively and include heirs, executors, or administrators, successors or assigns to those parties. If more than one Buyer executes this contract, their obligations under this contract shall be joint and several. Buyer acknowledges and agrees that the original contract shall not be returned to Buyer upon payment in full of all amounts owing under this contract, except as required by applicable law or as agreed to by Seller in its discretion.

DocuSign Envelope ID: 871A722B-CE56-4082-9CEF-5B113F48

# KOMATSU SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

TO: KOMATSU FINANCIAL LIMITED PARTNERSHIP

Re: Security Agreement/Contract between HMH CONSTRUCTION, LLC ("Buyer") and undersigned ("Assignor"), dated 08/31/2021 having a present unpaid balance of $315,487.20 covering WA380-8 S/N A75677 (hereinafter referred to as "Agreement").

For value received Assignor hereby sells and assigns to Komatsu Financial Limited Partnership, its successors and assigns ("Assignee"), the Agreement, together with all of Assignor's right, title and interest in the property covered by and described in the Agreement ("Property"), and all of Assignor's rights and remedies thereunder and under any guaranty or endorsement thereof, including the right to collect any and all installments due and to become due on the Agreement and to take, in Assignor's or Assignee's name, any and all proceedings Assignor might otherwise take.

Assignor agrees that Assignee may audit its books and records relating to all paper assigned to Assignee and may in Assignor's name endorse all accompanying notes and all remittances received, and Assignor gives express permission to Assignee to release, on terms satisfactory to Assignee, by operation of law or otherwise, or to compromise or adjust any and all rights against and grant extensions of time of payment to the Buyer or any other persons obligated on the Agreement or on any accompanying note or guaranty, without notice to Assignor and without affecting Assignor's liability hereunder. Assignor waives presentment and demand for payment, protest and notice of non-payment and protest as to all paper heretofore, now or hereafter endorsed or assigned to Assignee and Assignor subordinates to any rights Assignee may now or hereafter have against the Buyer any rights Assignor may now or hereafter have.

Assignor shall have no authority to, and will not, without Assignee's prior written consent, accept collections, repossess or consent to the return of the Property described in the Agreement or modify the terms of the agreement or of any accompanying note or guaranty. Assignee's knowledge at any time of any breach of or noncompliance with any of the foregoing shall not constitute any waiver by Assignee. Assignor waives notice of acceptance hereof.

As part of the foregoing instrument, the Assignor's obligations in addition to those stated in the preceding paragraphs are governed by paragraph 1, 2, 3 or 4 as indicated by the box marked X below.

[X] **1. WITHOUT RECOURSE**
Assignor further agrees to assign the Agreement without recourse as to the financial ability of the Buyer to pay.

[ ] **2. WITH RECOURSE**
Subject to the terms and provisions of any applicable underlying agreement between Assignor and Assignee, Assignor further agrees to guaranty the payment promptly when due of the amount of each and every installment payable under the Agreement and the payment on demand of the entire unpaid balance at the date of default in the event of any default by Buyer under the Agreement, without first requiring Assignee to proceed against Buyer or any other person or any security.

[ ] **3. LIMITED REPURCHASE AGREEMENT**
Assignor further agrees that if the Buyer fails to pay the first installments of his obligation within 15 days of scheduled maturity as set forth in the Agreement hereby assigned and if any of said installments are not paid within the 15 days and Assignee repossesses the Property described in said Agreement, Assignor will purchase from Assignee the Property for the then unpaid balance in its then condition and location.

[ ] **4. PARTIAL REPURCHASE AGREEMENT**
Assignor further agrees that if Assignee repossesses the Property described in said Agreement the undersigned upon demand will pay to Assignee NaN or purchase the Property from Assignee for the then unpaid balance in its then condition and location.

MODERN MACHINERY CO., INC.
(Assignor)

**Sign:** Kyle Viste

08/31/2021
(executed)

**Name: Kyle Viste**

**Title: Controller**

The above assignment is made subject to the terms and conditions of the financing agreement presently in effect between Assignor and the Assignee, which specifically sets forth all of the rights and obligations of the Assignor and the Assignee with respect to retail contracts, and incorporates without limitation, the representations and warranties made by Assignor to Assignee with respect to retail contracts, any accompanying notes, guaranty or other documents relating thereto. Assignor represents to Assignee that (i) the present unpaid balance under the Agreement is correct and (ii) Assignor will comply with all its obligations under the Agreement.




20211545685

**STATE OF IDAHO**

*Office of the secretary of state, Lawerence Denney*

**UCC1 FINANCING STATEMENT**

Idaho Secretary of State
PO Box 83720
Boise, ID 83720-0080
(208) 334-2301
Filing Fee - $3 submitted online, $6 print & mail or $12 if 3 or more pages.
Make checks payable to Secretary of State.

Contact at Filer:

| | |
|---|---|
| Contact Name | WOLTERS KLUWER LIEN SOLUTIONS |
| Contact Phone | 800-331-3282 |
| Contact Email | uccfilingreturn@wolterskluwer.com |

Send acknowledgment to:

| | |
|---|---|
| Name | LIEN SOLUTIONS |
| Address | P O BOX 29071<br>GLENDALE, CA 91209-9071 |

Debtors:

| DEBTOR'S NAME | MAILING ADDRESS |
|---|---|
| HMH CONSTRUCTION, LLC | PO BOX 337<br>NAMPA, ID 83653 |

Secured Parties:

| SECURED PARTY'S NAME | MAILING ADDRESS |
|---|---|
| KOMATSU FINANCIAL LIMITED PARTNERSHIP | 8770 W BRYN MAWR AVE SUITE 100<br>CHICAGO, IL 60631 |

Collateral:

| | |
|---|---|
| The financing statement covers the following collateral: | ONE (1) Komatsu WA380-8 Wheel Loader, S/N# A75677, EQ 1181552 w/ Rockland bucket and forks. Includes Extended warranty. COMPLETE WITH ALL PRESENT ATTACHMENTS, ACCESSORIES, REPLACEMENT PARTS, ADDITIONS AND ALL PROCEEDS THEREOF. |
| The collateral is: | |

Designations:

| | |
|---|---|
| Select a designation which describes this financing statement: | Not Applicable |
| Select an additional designation which describes this financing statement: | Not Applicable |

Alternative Designations:

| | |
|---|---|
| Select the alternative designation which describes this financing statement: | Not Applicable |

Optional Filer Reference Data:

ID-0-82216740-62081705

B0642-0942 08/31/2021 9:36 AM Received by ID Secretary of State Lawerence Denney

Case 23-00191-JMM Claim 3-1 Part 2 Filed 07/20/23 Desc Exhibit 1 to Proof of Claim Page 25 of 59

# EXHIBIT 4

DocuSign Envelope ID: A7E6330E-166B-4D58-99F4-E64842C06290

**KOMATSU**

# SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO. ________

Subject to the Terms and Conditions herein contained, the Seller hereby agrees to sell, and the Buyer having been quoted and offered both a cash sale price, payable immediately or within a limited number of days, and a contract time price which permits the Buyer to purchase the property now but pay in installments over an extended period of time, hereby agrees to buy, the following described property ("property") on a contract time price basis set forth below. The Contract time price is more than the cash sale price because it includes charges by the Seller to compensate the Seller for having to wait a period of time before collecting its full purchase price and for taking a risk in waiting such period of time. The property is to be used only for commercial or business purposes, includes all accessories and attachments, and shall, except as permitted by Paragraph 7 on page 4 hereof, be located at Buyer's Address set forth immediately below.

**Seller's Information** MODERN MACHINERY CO., INC.
P.O. BOX 16660
MISSOULA, MT 59808

**Quote No. 154228**

**Buyer's Information**
HMH CONSTRUCTION, LLC
2501 E State Ave Suite #110
MERIDIAN, ID 83642

Physical Location: 2501 E State Ave Suite #110
MERIDIAN, ID 83642

County: CANYON
Telephone: 8334642667

County:
State Charter Number: 0000624752
State of Registration: ID
Tax ID: [redacted]

Property Description

| Make | Model | Type | Description | Serial No. | Price |
|---|---|---|---|---|---|
| Komatsu | WA380-8 | Wheel Loader | EQ 1247531 w/ Rockland bucket and PSM forks includes Extended warranty $31,637 | A75794 | $295,468.00 |

Trade-In Description

| Year | Make | Model | Type | Description | Serial No. | Allowance | Amt. Owed | Net Trade |
|---|---|---|---|---|---|---|---|---|

**Schedule of Payments**

BUYER AGREES TO PAY SELLER, OR IF THIS CONTRACT IS ASSIGNED, TO ASSIGNEE OF SELLER, THE 'TOTAL OF PAYMENTS' (ITEM 10) IN ACCORDANCE WITH THE FOLLOWING SCHEDULE. PAYMENTS IN NUMBER AND AMOUNT ARE DUE EACH SUCCESSIVE MONTH ON THE SAME DAY AS THE STARTING DATE, OR AS INDICATED BELOW.

| Payments | Start Date | End Date | Payment | Total |
|---|---|---|---|---|
| 48 | 05/24/2022 | 04/24/2026 | $6,628.57 | $318,171.36 |
| 48 | | | | $318,171.36 |

**Statement of Transaction**

| | | |
|---|---|---|
| 1. Sales Price | | $295,468.00 |
| 2. Delivery, Installation, Repair (or other Service Charges) | $0.00 | |
| 3. Sales Tax | $15,859.86 | |
| 4. Cash Price (1+2+3) | | $311,327.86 |
| 5. a. Cash Down Payment | $0.00 | |
| b. Net Trade In | $0.00 | |
| c. Less Insurance | $0.00 | |
| Total Down Payment (5a+5b-5c) | | $0.00 |
| 6. Net Cash Price (4-5) | | $311,327.86 |
| 7. a. Lien & Filing Fees | $0.00 | |
| b. Other Fees | $500.00 | |
| Total Other Charges | | $500.00 |
| 8. Amount Financed (6 + 7) | | $311,827.86 |
| 9. Finance Charge (0.99%) | | $6,343.50 |
| 10. Total of Payments (8 + 9) | | $318,171.36 |
| 11. Total Time Price (4 + 7 + 9) | | $318,171.36 |

Date finance charge begins to accrue (if different than contract date)

DocuSign Envelope ID: A7E6330E-166B-4D58-99F4-E64842C0



# SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

**Insurance Coverage**

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS AGREEMENT.**

Physical Damage Insurance Covering The Property Is Required.

BUYER HAS OBTAINED INSURANCE THROUGH THE INSURANCE AGENCY LISTED BELOW OR ON FORM KF543R, SUBMITTED WITH THIS CONTRACT.

Insurance Agency

Contact:
Phone#

**Buyer Place of Business and Other Buyer Information**

IF BUYER'S ACTUAL CHIEF PLACE OF BUSINESS (CHIEF EXECUTIVE OFFICE IF MORE THAN ONE PLACE OF BUSINESS) IS IN A STATE OTHER THAN STATE WHERE THE PROPERTY IS LOCATED (AS SET FORTH ON PAGE 1), SPECIFY ACTUAL CHIEF PLACE OF BUSINESS.

Physical Location:

BUYER DOES NOT HAVE PLACES OF BUSINESS IN MORE THAN ONE COUNTY IN THE STATE WHERE PROPERTY IS LOCATED.

THIS SALE IS CONTINGENT UPON FINANCING ON TERMS WHICH ARE SATISFACTORY TO THE PARTIES.

IF DATE OF DELIVERY IS DIFFERENT THAN EFFECTIVE DATE SHOWN BELOW, SHOW ACTUAL DELIVERY DATE:

**Partner Names and Addresses (if applicable)**

| Name | Address | Tax ID |
|---|---|---|

**Delinquency Charge:** After maturity, each installment shall bear charges at the highest rate permitted by law, but not to exceed 1.5% per month. Buyer also agrees to pay all expenses, including reasonable attorneys' fees, incurred in the collection and enforcement, by suit or otherwise, of any amount payable under this contract.

**Security Interest:** In order to secure payment of the indebtedness contained herein or incurred hereunder, Seller hereby retains, and Buyer hereby grants, a purchase money security interest under the Uniform Commercial Code in and to the above described property sold hereunder, together with all replacements, substitutions, additions, attachments, repairs, accessions and proceeds, including amounts payable under any insurance policies with respect thereto. Buyer hereby authorizes Seller to file one or more financing statements and/or a carbon or reproduction of this contract as a financing statement. Buyer hereby authorizes Seller or its agent or assigns to sign and execute on its behalf any and all necessary UCC-1 forms to perfect the security interest herein granted to Seller.

**Location of Property:** Buyer and Seller agree that regardless of the manner of affixation, the property shall remain personal property and not become part of the real estate. Except as permitted by Paragraph 7, Buyer agrees to keep the property at the location set forth herein, and will notify Seller promptly in writing of any change in the location of the property within such State, but will not remove the property from such State without the prior written consent of Seller (except that in the State of Pennsylvania, the property will not be moved from the above location without such prior written consent).

**ENTIRE AGREEMENT:** BUYER agrees that this contract including the ADDITIONAL TERMS AND CONDITIONS PRINTED ON Page 3-5 hereof, which he has read and to which he agrees, contains the entire agreement relating to the conditional sale of the property and supersedes all previous contracts and agreements between Buyer and Seller relating to the order or sale of the property. This contract is not binding upon Seller, unless signed by the manager of Seller or owner.

**NOTICE TO BUYER: 1. Do not sign this contract before you read it or if it contains blank spaces. 2. You are entitled to an exact and completely filled-in copy of the contract you sign. 3. Under law, you have the following rights, among others: (a) to pay off in advance the full amount due and obtain a partial refund of any unearned finance charge; (b) to redeem the property if repossessed for a default; and (c) to require, under certain conditions, a resale of the property if repossessed. 4. If you desire to pay off in advance the full amount due, the amount of the refund you are entitled to, if any, will be furnished upon request. 5. Keep this contract to protect your legal rights.**

**BUYER ACKNOWLEDGES RECEIPT OF AN EXACT COPY OF THIS CONTRACT SIGNED BY SELLER**

| | |
|---|---|
| **Buyer:** HMH CONSTRUCTION, LLC | **Effective Contract Date:** 04/13/2022 |
| **By:** [signature] **Title** [signature] | **Salesman's Signature:** Ryan Rowbury |
| **Co-Signer:** | **Signature For Seller Approval:** |
| **By:** **Title:** | Matthew Bucklin |



## SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

**Conditional Terms and Conditions:**

**1. Assignment by Seller; Waiver of Defenses Against Assignee Holder:**

Seller may hold this contract or it may assign it for value to Komatsu Financial Limited Partnership (hereinafter referred to as "KF"). If Seller does in fact assign this contract to KF then after such assignment: a) KF as assignee, shall have all the rights and remedies of Seller hereunder and all of Buyer's agreements, representations and warranties shall be deemed to have been made to KF with the same force and effect as if KF were an original party hereto; b) Seller shall not be KF's agent for any purposes; c) Seller shall not have any power or authority to change or modify this contract or any related document or instrument in any way (except any relevant warranty or service agreement which is exclusively between Seller and Buyer and shall not bind KF or affect any of Buyer's or KF's rights or obligations under this contract); d) Buyer will settle all claims, defenses, set-offs and counterclaims of any nature, it may have against Seller, including but not limited to delivery of property, defects in the property and the like, directly with Seller, and not set up any such claim, defense, set-off or counterclaim against KF. Seller hereby agreeing to remain responsible therefor.

**2. Waiver of Defenses Acknowledgment; Place of Payment:**

Buyer acknowledges that: KF has no knowledge or information as to the condition or suitability for Buyer's purposes of the property, and KF's decision to purchase this contract from Seller, if so offered, will be made in reliance on Buyer's warranties, agreements and covenants herein, including Buyer's express agreement not to assert against KF any claims, defenses, set-offs or counterclaims it may now or in the future have against Seller named on page 1 hereof. If this contract is assigned to KF then after assignment to KF, Buyer will make all payments directly to KF at such places as KF may from time to time designate in writing to Buyer.

**3. Buyer's Warranties and Representations:**

Buyer warrants, represents and covenants; a) that Buyer is justly indebted to Seller for the full amount of the foregoing indebtedness; b) that except for the security interest granted hereby the property is free from and will be kept free from all liens, claims, security interests and encumbrances; c) that no financing statement covering the property or any proceeds is on file in favor of anyone other than Seller but if such other financing statement is on file, it will be terminated or subordinated; d) that all information supplied and statements made by Buyer in any financial, credit or accounting statement or application for credit prior to, contemporaneously with or subsequent to the execution of this contract with respect to this transaction are and shall be true, correct, valid and genuine; e) Buyer has full authority to enter into this contract and in so doing it is not violating any law or regulation or agreement with third parties, and it has taken all such action as may be necessary or appropriate to make this contract binding upon it: f) No director, officer or employee of the Company is or has been identified on any of the following documents: (i) the United States Department of Treasury, Office of Foreign Assets Control ("OFAC") list of "Specially Designated Nationals and Blocked Persons" ("SDNs"); (ii) the United States Department of Commerce, Bureau of Industry and Security of "Denied Persons List". "Entity List" or "Unverified List"; (iii) the Directorate of Defense Trade Controls of the United States Department of State "List of Statutorily Debarred Parties" or "List of Administratively Debarred Parties"; (iv) the United Kingdom's "Consolidated List of Financial Sanctions Targets" as maintained by HM Treasury; (v) Canada's "Listed Entities" pursuant to the Anti-Terrorism Act, 2001; (vi) the Australian Department of Foreign Affairs and Trade "Consolidated List" (pursuant to the Charter of the United Nations Act 1945 and Charter of the United Nations Terrorism and Dealings with Assets) Regulations 2002, as amended; (vii) the United Nations Security Council "Consolidated List" established and maintained by the 1267 Committee; or (viii) European Union Commission "Consolidated list of persons, groups and entities subject to EU financial sanctions". The Company is not and has not been involved in business arrangements or transactions with or involving countries subject to economic or trade sanctions imposed by the United States Government, or with or involving SDNs, in violation of the regulations maintained by OFAC.

**4. Events of Default; Acceleration:**

A very important element of this contract is that Buyer make all its payments promptly as agreed upon. Also essential is that the property continue to be in good condition and adequate security for the indebtedness. The following are events of default under this contract which will allow Seller to take such action under this Paragraph and under Paragraph 5 as it deems necessary:

(a) any of Buyer's obligations to Seller under any agreement with Seller is not paid promptly when due:
(b) Buyer breaches any warranty or provision hereof, or of any other instrument or agreement delivered by Buyer to Seller in connection with this or any other transaction;
(c) Buyer dies, becomes insolvent or ceases to do business as a going concern;
(d) it is determined Buyer has given Seller false information of a substantial nature regarding its financial condition;
(e) any of the property is lost or destroyed;
(f) a petition in bankruptcy or for arrangement or reorganization be filed by or against Buyer or Buyer admits its inability to pay its debts as they mature;
(g) property of Buyer be attached or a receiver be appointed for Buyer;
(h) whenever Seller in good faith believes the prospect of payment or performance is impaired or in good faith believes the property is insecure;
(i) any guarantor, surety or endorser for Buyer defaults in any obligation or liability to Seller or any guaranty obtained in connection with this transaction is terminated or breached.

**If Buyer shall be in default hereunder, the indebtedness herein described and all other debts then owing by Buyer to Seller under this or any other present or future agreement shall, if Seller shall so elect, become immediately due and payable.**

This acceleration of all indebtedness, if elected by Seller, shall be subject to all applicable laws, including laws as to rebates and refunds of unearned charges.



# SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO. ______

**5. Seller's Remedies After Default; Consent to Enter Premises:**

So long as any obligations are owed by Buyer to Seller hereunder, Seller shall have all the rights and remedies provided by this contract and provided a secured party under the Uniform Commercial Code and any other applicable law. After default by Buyer, Seller's rights and remedies include but are not limited to a number of choices. Buyer acknowledges that if it defaults Seller is justly entitled to do whatever the law allows to avoid loss to itself and also to obtain for itself the benefit of the bargain under this contract.

Consequently, Buyer agrees that Seller, among its other rights and remedies, may itself or through its agent enter the premises or upon the land where the property is located and without removing the property render any equipment which is part of the property unusable and/or take possession of the property without notice to anyone or without judicial process of any kind, provided such self-help is done without breach of the peace (meaning actual or threatened violence to a person at the time of repossession). In order to afford itself of these and related remedies, Seller must be able to enter the premises or land in or upon which the property is located.

**Buyer therefore agrees that Seller by itself or through its agent may without notice to any person and without judicial process of any kind, enter into any premises or upon any land (including access roads and rights of way) owned, leased or otherwise under the real or apparent control of Buyer or any agent of Buyer where the property may be or where Seller believes the property may be, and using any reasonable force with respect to the property and any property connected to the property, disassemble, render unusable, disconnect and separate all property from any other property and/or repossess and remove all or any item of the property.**

Buyer will not hinder or delay Seller or its agent in any way and will, if requested, assist Seller or its agent in disassembling and/or removing the property. Seller may require Buyer to assemble the property and return it to Seller at a place to be designated by Seller which is reasonably convenient to both parties. Buyer expressly waives all further rights to possession of the property after default and all claims for damages related to such removal, disassembling, entering and/or repossession. The security interest granted hereby shall continue effective irrespective of any retaking and redelivery of the property to Buyer until all amounts secured hereby are fully paid in money.

Unless Buyer otherwise agrees in writing after default and unless the property is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Seller will give Buyer reasonable notice of the time and place of any public sale of the property or reasonable notice of the time after which any private sale or other intended disposition thereof is to be made. Unless otherwise provided by law, the requirement of reasonable notice shall be met if such notice is mailed, postage prepaid, to the address of Buyer shown herein at least ten days before the time of the sale or disposition. Expenses of retaking, holding, preparing for sale, selling and the like shall include reasonable attorneys' fees and other legal expenses. Buyer understands that Seller's rights are cumulative and not alternative and that Buyer will remain fully liable for any deficiency remaining after disposition of the property.

**6. Waiver of Defaults; Exclusive Agreement:**

Seller may in its sole discretion waive a default or cure a default at Buyer's expense. Any such waiver in a particular instance or of a particular default shall not be a waiver of other defaults or the same kind of default at another time. No modification or change in this contract shall bind Seller (after assignment, "Seller", as stated above means "KF") unless in writing signed by Seller. No oral agreement shall be binding.

**7. Buyer's Agreements:**

Buyer agrees; a) to defend at Buyer's own cost any action, proceeding or claim affecting the property; b) to pay reasonable attorneys' fees and other expenses incurred by Seller in enforcing its rights after Buyer's default: c) to pay promptly all taxes, assessments, license fees and other public or private charges when levied or assessed against the property or this contract and this obligation shall survive the termination of this contract; d) that if a certificate of title be required or permitted by law, Buyer shall obtain such certificate with respect to the property, showing the security interest of Seller thereon, and in any event do everything necessary or expedient to preserve or perfect the security interest of Seller; e) that Buyer will not misuse, fail to keep in good repair, secrete, or, except as provided in the remaining sentences of this Paragraph 7, without the prior written consent of Seller, and notwithstanding Seller's claim to proceeds, sell, rent, lend, encumber or transfer any of the property; f) that Seller may enter upon Buyer's premises or wherever the property may be located at any reasonable time to inspect the property. Buyer may lease the property in the ordinary course of Buyer's business and, in each instance, only on an arms-length basis upon the terms hereinafter set forth. In the event that Buyer leases the property to an affiliate of Buyer, the lease agreement between Buyer and such affiliate shall provide that such lease agreement is subordinate to this Contract.

To further secure payment of the indebtedness contained herein or incurred thereinafter, Buyer agrees to assign and hereby pledges, assigns and grants to Seller a security interest in the following collateral (collectively called "Additional Collateral"); all leases of the Property ("Leases"), other chattel paper, accounts, contract rights, documents, instruments and general intangibles, including all guaranties thereof, now existing or hereafter arising with respect to the Property (collectively with the Leases called the "Documents"); all rental payments and other amounts due or to become due under the Documents and all other cash and non-cash proceeds of the Property and the Documents (collectively called "Revenues"); all rights under and benefits of the terms, covenants and provisions of the Documents; and all legal and other remedies available for enforcement of the terms, covenants and provisions of the Documents. No Lease shall relieve Buyer of any of its obligations to Seller under Contract, and the aforesaid assignment of and security interest granted in the Documents and other Additional Collateral shall not be construed as authorizing Buyer to do anything with the Property other than to lease the same in accordance with the terms of this Contract. Buyer agrees that Seller does not, by this Contract or otherwise, assume any of the obligations of Buyer under any Lease or other Documents. Buyer agrees, upon the request of Seller, from time to time (a) to deliver to Seller any or all Documents and (b) to execute and deliver to Seller any and all further instruments and documents, including, without limitation, separate assignments and financing statements, which Seller deems necessary or desirable to obtain the full benefits of the assignment, rights, interests and powers herein granted.

Buyer hereby grants to Seller the right (in Buyer's name or otherwise, and without affecting Buyer's obligations to Seller) during the continuance of an event of default under Paragraph 4: to demand, receive, compromise, extend the time of payment of, or give discharge for, any and all Revenues; to endorse any checks or other instruments or orders in connection with the Revenues; and to file any claims or take such actions or institute such proceedings as Seller may deem necessary or advisable to protect Seller's interest. Buyer shall have no authority during the continuance of an event of default under Paragraph 4 to, and will not, during such period of time without Seller's prior written consent, accept collections, repossess, substitute or consent to the return of the Property or modify the terms or provisions of the Documents.

# SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

Buyer agrees, upon the request of Seller, during the continuance of an event of default under Paragraph 4 (i) to notify all obligors under the Documents of the interest of Seller or its assigns, and (ii) to direct all obligors under the Documents to pay all Revenues directly to Seller. Buyer further agrees, upon request of Seller, to forward promptly to Seller all notices received by Buyer from any of the obligors under the Documents. Buyer agrees and warrants that: if required by Seller, all Leases shall provide that obligors under the Documents shall waive all rights to any defenses, set-offs and counterclaims as against Seller; if required by Seller, each lessee shall acknowledge and agree (or the Lease shall provide) that lessee's rights to the Property are subject and subordinate to all of the terms of this Contract, including, without limitation, Seller's right to possession of the property after the occurrence of an event of default under this Contract; there are and will be no purchase option or rights of third persons in or to the property or the Additional Collateral, except as approved by Seller in writing; the property is and will remain personal property; and the property and the Additional Collateral are and will be free from all liens and encumbrances other than Seller's. Buyer further agrees that it will notify Seller upon learning of any material damage to or destruction of any of the property. Buyer will not remove the property or permit any lessee of the property to remove the property from those states where Seller has agreed in writing the property may be located. Buyer's chief executive office and principal place of business are at Buyer's address as set forth on pages 1 and/or 2 of this Contract unless otherwise set forth herein, and Buyer agrees to notify Seller promptly of any change of such address(es). Buyer shall cause each lessee of property to permit Seller to visit and inspect the property on such lessee's premises or on any other premises where such lessee has control. Buyer warrants, represents and covenants that (i) Buyer's true and correct legal name is as set forth on page 1 of this Contract and (ii) Buyer will not do any of the following without prior written notice to Seller: change its legal name, merge or consolidate with or into any other entity, change its type of business organization or change the jurisdiction of its organization.

**8. Insurance and Risk of Loss: Liability insurance coverage for bodily and property damage caused to others is NOT included herein.**

All risk of loss of, damage to or destruction of the property shall at all times be on Buyer. Buyer will procure forthwith and maintain fire and theft insurance with extended or combined additional coverage on the property for the full insurable value thereof for the life of this contract plus such other insurance as Seller may specify, and promptly deliver each policy to Seller with a standard long form endorsement attached showing loss payable to Seller or assigns as respective interests may appear. Seller's acceptance of policies in lesser amounts of risks shall not be a waiver of Buyer's foregoing obligation. In the event that the property damage insurance required hereby shall be issued through the Agency as provided in the Insurance Coverage section on the second page of this Contract (such insurance obtained through the Agency, the "Insurance") and any portion of the cash down payment and trade-in equipment allowance set forth in the Trade-In Equipment Description section of the second page of this Contract shall be allocated to the payment of the premium for the Insurance indicated in section 5c of the first page of this Contract. Seller agrees that the portion of the Cash and Trade-In allowance to be allocated to the payment of the premium on the Insurance shall constitute monies to be paid by Seller on behalf of Buyer to pay such premium. Buyer directs that such portion of such cash down payment and allowance be used by Seller to promptly pay on behalf of Buyer the premium on the Insurance. Buyer acknowledges that (i) Buyer has the option of furnishing the Insurance required by this Section 8 through an agent or insurer of Buyer's choice and (ii) Seller merely informed Buyer of an insurance agent which dealt with insurance of the type required by this Contract and aided Buyer in completing the application form for the Insurance. Buyer agrees that Seller may from time to time communicate directly with the Agency and the insurer with respect to the Insurance. As additional security for the payment of the indebtedness owing by Buyer under this Contract, Buyer hereby grants to Seller a first priority security interest in the Insurance and all rights of Buyer with respect to the Insurance (including, without limitation, the right to cancel the Insurance and all rights to Buyer relating to unearned premiums and dividends which may be payable on or in respect of the Insurance).

Buyer represents, warrants and agrees that it has not heretofore assigned or transferred and will not assign or transfer any or all of its interest in the Insurance, except in favor of Seller. In addition to any and all other rights and remedies available to Seller under this Contract, applicable law or otherwise, upon and after the occurrence of an event of default under this Contract, Buyer agrees that Seller may cancel the Insurance and receive on behalf of Buyer the unearned insurance premium and dividends thereon. Such unearned insurance premium and dividends shall be applied by Seller to the payment of the amounts owing by Buyer to Seller under this Contract (and Buyer so directs that Seller make such application). Buyer hereby constitutes and appoints Seller as Buyer's attorney-in-fact with full authority upon and after the occurrence of an event of default under this Contract to cancel the Insurance, to receive (and give receipt for) monies payable with respect to the Insurance as a result of such cancellation and to endorse Buyer's name on any check, draft, or other form of payment for all monies that may become due from the insurer with respect to any such cancellation.

The foregoing power of attorney, being coupled with an interest, is irrevocable until all obligations of Buyer under this Contract have been paid in full. Buyer hereby releases Seller of any liabilities, claims, demands, obligations, costs and expenses now or hereafter incurred by Buyer in any way relating to the Insurance, except for the failure of Seller to make the payment on the insurance premium with respect to the Insurance as provided above and except for the gross negligence or willful misconduct of Seller. Seller assumes no liability as an insurer. Buyer acknowledges and agrees that the insurer and the Agency may conclusively rely on the agreements made by the Buyer in this Contract (including, without limitation, the direction of Buyer for Seller to pay on behalf of Buyer all or a portion of the insurance premium on the Insurance, the right of Seller to communicate from time to time directly with the Agency and insurer and the power of attorney herein provided in favor of Seller in order to cancel the Insurance) and shall have no liability to Buyer for relying on this Contract (including, without limitation, with respect to such power of attorney). Buyer acknowledges that neither the insurer nor the Agency shall be required to determine whether an event of default exists under this Contract in order to honor such power of attorney and the insurer and the Agency may conclusively rely on any statement given by Seller with respect to any such cancellation.

**9. Miscellaneous:**

Buyer waives all exemptions. Seller may correct patent errors herein and fill in such blanks as serial numbers, date of first payment and the like. Any provisions hereof contrary to, prohibited by, or invalid under applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining provisions hereof. Buyer acknowledges receipt of a true copy and waives acceptance hereof. "Buyer" and "Seller" as used in this contract also mean "debtor" and "secured party" respectively and include heirs, executors, or administrators, successors or assigns to those parties. If more than one Buyer executes this contract, their obligations under this contract shall be joint and several. Buyer acknowledges and agrees that the original contract shall not be returned to Buyer upon payment in full of all amounts owing under this contract, except as required by applicable law or as agreed to by Seller in its discretion.

DocuSign Envelope ID: A7E6330E-166B-4D58-99F4-E64842C0...

**KOMATSU** SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

TO: KOMATSU FINANCIAL LIMITED PARTNERSHIP

Re: Security Agreement/Contract between HMH CONSTRUCTION, LLC ("Buyer") and undersigned ("Assignor"), dated 04/13/2022 having a present unpaid balance of $318,171.36 covering WA380-8 S/N A75794 (hereinafter referred to as "Agreement").

For value received Assignor hereby sells and assigns to Komatsu Financial Limited Partnership, its successors and assigns ("Assignee"), the Agreement, together with all of Assignor's right, title and interest in the property covered by and described in the Agreement ("Property"), and all of Assignor's rights and remedies thereunder and under any guaranty or endorsement thereof, including the right to collect any and all installments due and to become due on the Agreement and to take, in Assignor's or Assignee's name, any and all proceedings Assignor might otherwise take.

Assignor agrees that Assignee may audit its books and records relating to all paper assigned to Assignee and may in Assignor's name endorse all accompanying notes and all remittances received, and Assignor gives express permission to Assignee to release, on terms satisfactory to Assignee, by operation of law or otherwise, or to compromise or adjust any and all rights against and grant extensions of time of payment to the Buyer or any other persons obligated on the Agreement or on any accompanying note or guaranty, without notice to Assignor and without affecting Assignor's liability hereunder. Assignor waives presentment and demand for payment, protest and notice of non-payment and protest as to all paper heretofore, now or hereafter endorsed or assigned to Assignee and Assignor subordinates to any rights Assignee may now or hereafter have against the Buyer any rights Assignor may now or hereafter have.

Assignor shall have no authority to, and will not, without Assignee's prior written consent, accept collections, repossess or consent to the return of the Property described in the Agreement or modify the terms of the agreement or of any accompanying note or guaranty. Assignee's knowledge at any time of any breach of or noncompliance with any of the foregoing shall not constitute any waiver by Assignee. Assignor waives notice of acceptance hereof.

As part of the foregoing instrument, the Assignor's obligations in addition to those stated in the preceding paragraphs are governed by paragraph 1, 2, 3 or 4 as indicated by the box marked X below.

[X] **1. WITHOUT RECOURSE**
Assignor further agrees to assign the Agreement without recourse as to the financial ability of the Buyer to pay.

[ ] **2. WITH RECOURSE**
Subject to the terms and provisions of any applicable underlying agreement between Assignor and Assignee, Assignor further agrees to guaranty the payment promptly when due of the amount of each and every installment payable under the Agreement and the payment on demand of the entire unpaid balance at the date of default in the event of any default by Buyer under the Agreement, without first requiring Assignee to proceed against Buyer or any other person or any security.

[ ] **3. LIMITED REPURCHASE AGREEMENT**
Assignor further agrees that if the Buyer fails to pay the first installments of his obligation within 15 days of scheduled maturity as set forth in the Agreement hereby assigned and if any of said installments are not paid within the 15 days and Assignee repossesses the Property described in said Agreement, Assignor will purchase from Assignee the Property for the then unpaid balance in its then condition and location.

[ ] **4. PARTIAL REPURCHASE AGREEMENT**
Assignor further agrees that if Assignee repossesses the Property described in said Agreement the undersigned upon demand will pay to Assignee NaN or purchase the Property from Assignee for the then unpaid balance in its then condition and location.

MODERN MACHINERY CO., INC.
(Assignor)

Sign: Matthew Bucklin
04/13/2022
(executed)

**Name: Mathew A. Bucklin**

**Title: CFO**

The above assignment is made subject to the terms and conditions of the financing agreement presently in effect between Assignor and the Assignee, which specifically sets forth all of the rights and obligations of the Assignor and the Assignee with respect to retail contracts, and incorporates without limitation, the representations and warranties made by Assignor to Assignee with respect to retail contracts, any accompanying notes, guaranty or other documents relating thereto. Assignor represents to Assignee that (i) the present unpaid balance under the Agreement is correct and (ii) Assignor will comply with all its obligations under the Agreement.



20220650626

**STATE OF IDAHO**

*Office of the secretary of state, Lawerence Denney*

**UCC1 FINANCING STATEMENT**

Idaho Secretary of State
PO Box 83720
Boise, ID 83720-0080
(208) 334-2301
Filing Fee - $3 submitted online, $6 print & mail or $12 if 3 or more pages. Make checks payable to Secretary of State.

Contact at Filer:

| | |
|---|---|
| Contact Name | WOLTERS KLUWER LIEN SOLUTIONS |
| Contact Phone | 800-331-3282 |
| Contact Email | uccfilingreturn@wolterskluwer.com |

Send acknowledgment to:

| | |
|---|---|
| Name | JOHN JAMES |
| Address | 2929 ALLEN PKWY STE 3300<br>HOUSTON, TX 77019 |

Debtors:

| DEBTOR'S NAME | MAILING ADDRESS |
|---|---|
| HMH CONSTRUCTION, LLC | 2501 E STATE AVE SUITE #110<br>MERIDIAN, ID 83642 |

Secured Parties:

| SECURED PARTY'S NAME | MAILING ADDRESS |
|---|---|
| KOMATSU FINANCIAL LIMITED PARTNERSHIP | 8770 W BRYN MAWR AVE SUITE 100<br>CHICAGO, IL 60631 |

Collateral:

| | |
|---|---|
| The financing statement covers the following collateral: | ONE (1) Komatsu WA380-8 Wheel Loader, S/N# A75794, EQ 1247531 w/ Rockland bucket and PSM forks, Includes Extended warranty $31,637. COMPLETE WITH ALL PRESENT ATTACHMENTS, ACCESSORIES, REPLACEMENT PARTS, ADDITIONS AND ALL PROCEEDS THEREOF. |
| The collateral is: | |

Designations:

| | |
|---|---|
| Select a designation which describes this financing statement: | Not Applicable |
| Select an additional designation which describes this financing statement: | Not Applicable |

Alternative Designations:

| | |
|---|---|
| Select the alternative designation which describes this financing statement: | Not Applicable |

Optional Filer Reference Data:

ID-0-85935762-63583973

B0700-6350 04/12/2022 4:00 PM Received by ID Secretary of State Lawerence Denney

Case 23-00119-JMM Doc 48-1 Filed 07/19/23 Entered 07/19/23 13:50:27 Desc Exhibit A Page 33 of 59

# EXHIBIT 5

# SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO. ____

Subject to the Terms and Conditions herein contained, the Seller hereby agrees to sell, and the Buyer having been quoted and offered both a cash sale price, payable immediately or within a limited number of days, and a contract time price which permits the Buyer to purchase the property now but pay in installments over an extended period of time, hereby agrees to buy, the following described property ("property") on a contract time price basis set forth below. The Contract time price is more than the cash sale price because it includes charges by the Seller to compensate the Seller for having to wait a period of time before collecting its full purchase price and for taking a risk in waiting such period of time. The property is to be used only for commercial or business purposes, includes all accessories and attachments, and shall, except as permitted by Paragraph 7 on page 4 hereof, be located at Buyer's Address set forth immediately below.

**Seller's Information** MODERN MACHINERY CO., INC.
P.O. BOX 16660
MISSOULA, MT 59808

**Quote No. 154233**

**Buyer's Information**
HMH CONSTRUCTION, LLC
2501 E State Ave Suite #110
MERIDIAN, ID 83642

Physical Location 2501 E State Ave Suite #110
MERIDIAN, ID 83642

County CANYON
Telephone: 8334642667

County:
State Charter Number: 0000624752
State of Registration: ID
Tax ID: [redacted]

Property Description

| Make | Model | Type | Description | Serial No. | Price |
|---|---|---|---|---|---|
| Komatsu | D61PX-24 | Crawler Dozer | EQ 722863 Includes Extended warranty $14,034 | B60875 | $298,524.00 |

Trade-In Description

| Year | Make | Model | Type | Description | Serial No. | Allowance | Amt. Owed | Net Trade |
|---|---|---|---|---|---|---|---|---|

**Schedule of Payments**

BUYER AGREES TO PAY SELLER, OR IF THIS CONTRACT IS ASSIGNED,TO ASSIGNEE OF SELLER, THE 'TOTAL OF PAYMENTS' (ITEM 10) IN ACCORDANCE WITH THE FOLLOWING SCHEDULE. PAYMENTS IN NUMBER AND AMOUNT ARE DUE EACH SUCCESSIVE MONTH ON THE SAME DAY AS THE STARTING DATE, OR AS INDICATED BELOW.

| Payments | Start Date | End Date | Payment | Total |
|---|---|---|---|---|
| 48 | 05/24/2022 | 04/24/2026 | $3,662.61 | $175,805.28 |
| 48 | | | | $175,805.28 |

**Statement of Transaction**

| | | |
|---|---|---|
| 1. Sales Price | | $298,524.00 |
| 2. Delivery, Installation, Repair (or other Service Charges) | $0.00 | |
| 3. Sales Tax | $8,387.40 | |
| 4. Cash Price (1+2+3) | | $306,911.40 |
| 5. a. Cash Down Payment | $135,111.00 | |
| b. Net Trade In | $0.00 | |
| c. Less Insurance | $0.00 | |
| Total Down Payment (5a+5b-5c) | | $135,111.00 |
| 6. Net Cash Price (4-5) | | $171,800.40 |
| 7. a. Lien & Filing Fees | $0.00 | |
| b. Other Fees | $500.00 | |
| Total Other Charges | | $500.00 |
| 8. Amount Financed (6 + 7) | | $172,300.40 |
| 9. Finance Charge (0.99%) | | $3,504.88 |
| 10. Total of Payments (8 + 9) | | $175,805.28 |
| 11. Total Time Price (4 + 7 + 9) | | $310,916.28 |

Date finance charge begins to accrue (if different than contract date)

DocuSign Envelope ID: 7B97F5B0-4762-466F-9F81-2DF5DFA43FAA

KOMATSU

# SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

**Insurance Coverage**

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS AGREEMENT.**

Physical Damage Insurance Covering The Property Is Required.

BUYER HAS OBTAINED INSURANCE THROUGH THE INSURANCE AGENCY LISTED BELOW OR ON FORM KF543R, SUBMITTED WITH THIS CONTRACT.

Insurance Agency

Contact:
Phone#

**Buyer Place of Business and Other Buyer Information**

IF BUYER'S ACTUAL CHIEF PLACE OF BUSINESS (CHIEF EXECUTIVE OFFICE IF MORE THAN ONE PLACE OF BUSINESS) IS IN A STATE OTHER THAN STATE WHERE THE PROPERTY IS LOCATED (AS SET FORTH ON PAGE 1), SPECIFY ACTUAL CHIEF PLACE OF BUSINESS.

Physical Location:

BUYER DOES NOT HAVE PLACES OF BUSINESS IN MORE THAN ONE COUNTY IN THE STATE WHERE PROPERTY IS LOCATED.

THIS SALE IS CONTINGENT UPON FINANCING ON TERMS WHICH ARE SATISFACTORY TO THE PARTIES.

IF DATE OF DELIVERY IS DIFFERENT THAN EFFECTIVE DATE SHOWN BELOW, SHOW ACTUAL DELIVERY DATE:

**Partner Names and Addresses (if applicable)**

| Name | Address | Tax ID |
|---|---|---|

**Delinquency Charge:** After maturity, each installment shall bear charges at the highest rate permitted by law, but not to exceed 1.5% per month. Buyer also agrees to pay all expenses, including reasonable attorneys' fees, incurred in the collection and enforcement, by suit or otherwise, of any amount payable under this contract.
**Security Interest:** In order to secure payment of the indebtedness contained herein or incurred hereunder, Seller hereby retains, and Buyer hereby grants, a purchase money security interest under the Uniform Commercial Code in and to the above described property sold hereunder, together with all replacements, substitutions, additions, attachments, repairs, accessions and proceeds, including amounts payable under any insurance policies with respect thereto. Buyer hereby authorizes Seller to file one or more financing statements and/or a carbon or reproduction of this contract as a financing statement. Buyer hereby authorizes Seller or its agent or assigns to sign and execute on its behalf any and all necessary UCC-1 forms to perfect the security interest herein granted to Seller.
**Location of Property:** Buyer and Seller agree that regardless of the manner of affixation, the property shall remain personal property and not become part of the real estate. Except as permitted by Paragraph 7, Buyer agrees to keep the property at the location set forth herein, and will notify Seller promptly in writing of any change in the location of the property within such State, but will not remove the property from such State without the prior written consent of Seller (except that in the State of Pennsylvania, the property will not be moved from the above location without such prior written consent).
**ENTIRE AGREEMENT:** BUYER agrees that this contract including the ADDITIONAL TERMS AND CONDITIONS PRINTED ON Page 3-5 hereof, which he has read and to which he agrees, contains the entire agreement relating to the conditional sale of the property and supersedes all previous contracts and agreements between Buyer and Seller relating to the order or sale of the property. This contract is not binding upon Seller, unless signed by the manager of Seller or owner.
**NOTICE TO BUYER: 1. Do not sign this contract before you read it or if it contains blank spaces. 2. You are entitled to an exact and completely filled-in copy of the contract you sign. 3. Under law, you have the following rights, among others: (a) to pay off in advance the full amount due and obtain a partial refund of any unearned finance charge; (b) to redeem the property if repossessed for a default; and (c) to require, under certain conditions, a resale of the property if repossessed. 4. If you desire to pay off in advance the full amount due, the amount of the refund you are entitled to, if any, will be furnished upon request. 5. Keep this contract to protect your legal rights.**

**BUYER ACKNOWLEDGES RECEIPT OF AN EXACT COPY OF THIS CONTRACT SIGNED BY SELLER**

| | |
|---|---|
| **Buyer:** HMH CONSTRUCTION, LLC | **Effective Contract Date:** 04/13/2022 |
| **By:** [signature] **Title** [signature] | **Salesman's Signature:** Ryan Rowbury |
| **Co-Signer:** | **Signature For Seller Approval:** |
| **By:** **Title:** | Matthew Bucklin |

DocuSign Envelope ID: 7B97F5B0-4762-466F-9F81-2DF5DFAA0FA0

## SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO. ____________

**Conditional Terms and Conditions:**

**1. Assignment by Seller; Waiver of Defenses Against Assignee Holder:**

Seller may hold this contract or it may assign it for value to Komatsu Financial Limited Partnership (hereinafter referred to as "KF"). If Seller does in fact assign this contract to KF then after such assignment: a) KF as assignee, shall have all the rights and remedies of Seller hereunder and all of Buyer's agreements, representations and warranties shall be deemed to have been made to KF with the same force and effect as if KF were an original party hereto; b) Seller shall not be KF's agent for any purposes; c) Seller shall not have any power or authority to change or modify this contract or any related document or instrument in any way (except any relevant warranty or service agreement which is exclusively between Seller and Buyer and shall not bind KF or affect any of Buyer's or KF's rights or obligations under this contract); d) Buyer will settle all claims, defenses, set-offs and counterclaims of any nature, it may have against Seller, including but not limited to delivery of property, defects in the property and the like, directly with Seller, and not set up any such claim, defense, set-off or counterclaim against KF. Seller hereby agreeing to remain responsible therefor.

**2. Waiver of Defenses Acknowledgment; Place of Payment:**

Buyer acknowledges that: KF has no knowledge or information as to the condition or suitability for Buyer's purposes of the property, and KF's decision to purchase this contract from Seller, if so offered, will be made in reliance on Buyer's warranties, agreements and covenants herein, including Buyer's express agreement not to assert against KF any claims, defenses, set-offs or counterclaims it may now or in the future have against Seller named on page 1 hereof. If this contract is assigned to KF then after assignment to KF, Buyer will make all payments directly to KF at such places as KF may from time to time designate in writing to Buyer.

**3. Buyer's Warranties and Representations:**

Buyer warrants, represents and covenants; a) that Buyer is justly indebted to Seller for the full amount of the foregoing indebtedness; b) that except for the security interest granted hereby the property is free from and will be kept free from all liens, claims, security interests and encumbrances; c) that no financing statement covering the property or any proceeds is on file in favor of anyone other than Seller but if such other financing statement is on file, it will be terminated or subordinated; d) that all information supplied and statements made by Buyer in any financial, credit or accounting statement or application for credit prior to, contemporaneously with or subsequent to the execution of this contract with respect to this transaction are and shall be true, correct, valid and genuine; e) Buyer has full authority to enter into this contract and in so doing it is not violating any law or regulation or agreement with third parties, and it has taken all such action as may be necessary or appropriate to make this contract binding upon it: f) No director, officer or employee of the Company is or has been identified on any of the following documents: (i) the United States Department of Treasury, Office of Foreign Assets Control ("OFAC") list of "Specially Designated Nationals and Blocked Persons" ("SDNs"); (ii) the United States Department of Commerce, Bureau of Industry and Security of "Denied Persons List". "Entity List" or "Unverified List"; (iii) the Directorate of Defense Trade Controls of the United States Department of State "List of Statutorily Debarred Parties" or "List of Administratively Debarred Parties"; (iv) the United Kingdom's "Consolidated List of Financial Sanctions Targets" as maintained by HM Treasury; (v) Canada's "Listed Entities" pursuant to the Anti-Terrorism Act, 2001; (vi) the Australian Department of Foreign Affairs and Trade "Consolidated List" (pursuant to the Charter of the United Nations Act 1945 and Charter of the United Nations Terrorism and Dealings with Assets) Regulations 2002, as amended; (vii) the United Nations Security Council "Consolidated List" established and maintained by the 1267 Committee; or (viii) European Union Commission "Consolidated list of persons, groups and entities subject to EU financial sanctions". The Company is not and has not been involved in business arrangements or transactions with or involving countries subject to economic or trade sanctions imposed by the United States Government, or with or involving SDNs, in violation of the regulations maintained by OFAC.

**4. Events of Default; Acceleration:**

A very important element of this contract is that Buyer make all its payments promptly as agreed upon. Also essential is that the property continue to be in good condition and adequate security for the indebtedness. The following are events of default under this contract which will allow Seller to take such action under this Paragraph and under Paragraph 5 as it deems necessary:

(a) any of Buyer's obligations to Seller under any agreement with Seller is not paid promptly when due:
(b) Buyer breaches any warranty or provision hereof, or of any other instrument or agreement delivered by Buyer to Seller in connection with this or any other transaction;
(c) Buyer dies, becomes insolvent or ceases to do business as a going concern;
(d) it is determined Buyer has given Seller false information of a substantial nature regarding its financial condition;
(e) any of the property is lost or destroyed;
(f) a petition in bankruptcy or for arrangement or reorganization be filed by or against Buyer or Buyer admits its inability to pay its debts as they mature;
(g) property of Buyer be attached or a receiver be appointed for Buyer;
(h) whenever Seller in good faith believes the prospect of payment or performance is impaired or in good faith believes the property is insecure;
(i) any guarantor, surety or endorser for Buyer defaults in any obligation or liability to Seller or any guaranty obtained in connection with this transaction is terminated or breached.

**If Buyer shall be in default hereunder, the indebtedness herein described and all other debts then owing by Buyer to Seller under this or any other present or future agreement shall, if Seller shall so elect, become immediately due and payable.**

This acceleration of all indebtedness, if elected by Seller, shall be subject to all applicable laws, including laws as to rebates and refunds of unearned charges.



## SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

**5. Seller's Remedies After Default; Consent to Enter Premises:**

So long as any obligations are owed by Buyer to Seller hereunder, Seller shall have all the rights and remedies provided by this contract and provided a secured party under the Uniform Commercial Code and any other applicable law. After default by Buyer, Seller's rights and remedies include but are not limited to a number of choices. Buyer acknowledges that if it defaults Seller is justly entitled to do whatever the law allows to avoid loss to itself and also to obtain for itself the benefit of the bargain under this contract.

Consequently, Buyer agrees that Seller, among its other rights and remedies, may itself or through its agent enter the premises or upon the land where the property is located and without removing the property render any equipment which is part of the property unusable and/or take possession of the property without notice to anyone or without judicial process of any kind, provided such self-help is done without breach of the peace (meaning actual or threatened violence to a person at the time of repossession). In order to afford itself of these and related remedies, Seller must be able to enter the premises or land in or upon which the property is located.

**Buyer therefore agrees that Seller by itself or through its agent may without notice to any person and without judicial process of any kind, enter into any premises or upon any land (including access roads and rights of way) owned, leased or otherwise under the real or apparent control of Buyer or any agent of Buyer where the property may be or where Seller believes the property may be, and using any reasonable force with respect to the property and any property connected to the property, disassemble, render unusable, disconnect and separate all property from any other property and/or repossess and remove all or any item of the property.**

Buyer will not hinder or delay Seller or its agent in any way and will, if requested, assist Seller or its agent in disassembling and/or removing the property. Seller may require Buyer to assemble the property and return it to Seller at a place to be designated by Seller which is reasonably convenient to both parties. Buyer expressly waives all further rights to possession of the property after default and all claims for damages related to such removal, disassembling, entering and/or repossession. The security interest granted hereby shall continue effective irrespective of any retaking and redelivery of the property to Buyer until all amounts secured hereby are fully paid in money.

Unless Buyer otherwise agrees in writing after default and unless the property is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Seller will give Buyer reasonable notice of the time and place of any public sale of the property or reasonable notice of the time after which any private sale or other intended disposition thereof is to be made. Unless otherwise provided by law, the requirement of reasonable notice shall be met if such notice is mailed, postage prepaid, to the address of Buyer shown herein at least ten days before the time of the sale or disposition. Expenses of retaking, holding, preparing for sale, selling and the like shall include reasonable attorneys' fees and other legal expenses. Buyer understands that Seller's rights are cumulative and not alternative and that Buyer will remain fully liable for any deficiency remaining after disposition of the property.

**6. Waiver of Defaults; Exclusive Agreement:**

Seller may in its sole discretion waive a default or cure a default at Buyer's expense. Any such waiver in a particular instance or of a particular default shall not be a waiver of other defaults or the same kind of default at another time. No modification or change in this contract shall bind Seller (after assignment, "Seller", as stated above means "KF") unless in writing signed by Seller. No oral agreement shall be binding.

**7. Buyer's Agreements:**

Buyer agrees; a) to defend at Buyer's own cost any action, proceeding or claim affecting the property; b) to pay reasonable attorneys' fees and other expenses incurred by Seller in enforcing its rights after Buyer's default: c) to pay promptly all taxes, assessments, license fees and other public or private charges when levied or assessed against the property or this contract and this obligation shall survive the termination of this contract; d) that if a certificate of title be required or permitted by law, Buyer shall obtain such certificate with respect to the property, showing the security interest of Seller thereon, and in any event do everything necessary or expedient to preserve or perfect the security interest of Seller; e) that Buyer will not misuse, fail to keep in good repair, secrete, or, except as provided in the remaining sentences of this Paragraph 7, without the prior written consent of Seller, and notwithstanding Seller's claim to proceeds, sell, rent, lend, encumber or transfer any of the property; f) that Seller may enter upon Buyer's premises or wherever the property may be located at any reasonable time to inspect the property. Buyer may lease the property in the ordinary course of Buyer's business and, in each instance, only on an arms-length basis upon the terms hereinafter set forth. In the event that Buyer leases the property to an affiliate of Buyer, the lease agreement between Buyer and such affiliate shall provide that such lease agreement is subordinate to this Contract.

To further secure payment of the indebtedness contained herein or incurred thereinafter, Buyer agrees to assign and hereby pledges, assigns and grants to Seller a security interest in the following collateral (collectively called "Additional Collateral"); all leases of the Property ("Leases"), other chattel paper, accounts, contract rights, documents, instruments and general intangibles, including all guaranties thereof, now existing or hereafter arising with respect to the Property (collectively with the Leases called the "Documents"); all rental payments and other amounts due or to become due under the Documents and all other cash and non-cash proceeds of the Property and the Documents (collectively called "Revenues"); all rights under and benefits of the terms, covenants and provisions of the Documents; and all legal and other remedies available for enforcement of the terms, covenants and provisions of the Documents. No Lease shall relieve Buyer of any of its obligations to Seller under Contract, and the aforesaid assignment of and security interest granted in the Documents and other Additional Collateral shall not be construed as authorizing Buyer to do anything with the Property other than to lease the same in accordance with the terms of this Contract. Buyer agrees that Seller does not, by this Contract or otherwise, assume any of the obligations of Buyer under any Lease or other Documents. Buyer agrees, upon the request of Seller, from time to time (a) to deliver to Seller any or all Documents and (b) to execute and deliver to Seller any and all further instruments and documents, including, without limitation, separate assignments and financing statements, which Seller deems necessary or desirable to obtain the full benefits of the assignment, rights, interests and powers herein granted.

Buyer hereby grants to Seller the right (in Buyer's name or otherwise, and without affecting Buyer's obligations to Seller) during the continuance of an event of default under Paragraph 4: to demand, receive, compromise, extend the time of payment of, or give discharge for, any and all Revenues; to endorse any checks or other instruments or orders in connection with the Revenues; and to file any claims or take such actions or institute such proceedings as Seller may deem necessary or advisable to protect Seller's interest. Buyer shall have no authority during the continuance of an event of default under Paragraph 4 to, and will not, during such period of time without Seller's prior written consent, accept collections, repossess, substitute or consent to the return of the Property or modify the terms or provisions of the Documents.

## SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

Buyer agrees, upon the request of Seller, during the continuance of an event of default under Paragraph 4 (i) to notify all obligors under the Documents of the interest of Seller or its assigns, and (ii) to direct all obligors under the Documents to pay all Revenues directly to Seller. Buyer further agrees, upon request of Seller, to forward promptly to Seller all notices received by Buyer from any of the obligors under the Documents. Buyer agrees and warrants that: if required by Seller, all Leases shall provide that obligors under the Documents shall waive all rights to any defenses, set-offs and counterclaims as against Seller; if required by Seller, each lessee shall acknowledge and agree (or the Lease shall provide) that lessee's rights to the Property are subject and subordinate to all of the terms of this Contract, including, without limitation, Seller's right to possession of the property after the occurrence of an event of default under this Contract; there are and will be no purchase option or rights of third persons in or to the property or the Additional Collateral, except as approved by Seller in writing; the property is and will remain personal property; and the property and the Additional Collateral are and will be free from all liens and encumbrances other than Seller's. Buyer further agrees that it will notify Seller upon learning of any material damage to or destruction of any of the property. Buyer will not remove the property or permit any lessee of the property to remove the property from those states where Seller has agreed in writing the property may be located. Buyer's chief executive office and principal place of business are at Buyer's address as set forth on pages 1 and/or 2 of this Contract unless otherwise set forth herein, and Buyer agrees to notify Seller promptly of any change of such address(es). Buyer shall cause each lessee of property to permit Seller to visit and inspect the property on such lessee's premises or on any other premises where such lessee has control. Buyer warrants, represents and covenants that (i) Buyer's true and correct legal name is as set forth on page 1 of this Contract and (ii) Buyer will not do any of the following without prior written notice to Seller: change its legal name, merge or consolidate with or into any other entity, change its type of business organization or change the jurisdiction of its organization.

**8. Insurance and Risk of Loss: Liability Insurance coverage for bodily and property damage caused to others is NOT included herein.**

All risk of loss of, damage to or destruction of the property shall at all times be on Buyer. Buyer will procure forthwith and maintain fire and theft insurance with extended or combined additional coverage on the property for the full insurable value thereof for the life of this contract plus such other insurance as Seller may specify, and promptly deliver each policy to Seller with a standard long form endorsement attached showing loss payable to Seller or assigns as respective interests may appear. Seller's acceptance of policies in lesser amounts of risks shall not be a waiver of Buyer's foregoing obligation. In the event that the property damage insurance required hereby shall be issued through the Agency as provided in the Insurance Coverage section on the second page of this Contract (such insurance obtained through the Agency, the "Insurance") and any portion of the cash down payment and trade-in equipment allowance set forth in the Trade-In Equipment Description section of the second page of this Contract shall be allocated to the payment of the premium for the Insurance indicated in section 5c of the first page of this Contract. Seller agrees that the portion of the Cash and Trade-In allowance to be allocated to the payment of the premium on the Insurance shall constitute monies to be paid by Seller on behalf of Buyer to pay such premium. Buyer directs that such portion of such cash down payment and allowance be used by Seller to promptly pay on behalf of Buyer the premium on the Insurance. Buyer acknowledges that (i) Buyer has the option of furnishing the insurance required by this Section 8 through an agent or insurer of Buyer's choice and (ii) Seller merely informed Buyer of an insurance agent which dealt with insurance of the type required by this Contract and aided Buyer in completing the application form for the Insurance. Buyer agrees that Seller may from time to time communicate directly with the Agency and the insurer with respect to the Insurance. As additional security for the payment of the indebtedness owing by Buyer under this Contract, Buyer hereby grants to Seller a first priority security interest in the Insurance and all rights of Buyer with respect to the Insurance (including, without limitation, the right to cancel the Insurance and all rights to Buyer relating to unearned premiums and dividends which may be payable on or in respect of the Insurance).

Buyer represents, warrants and agrees that it has not heretofore assigned or transferred and will not assign or transfer any or all of its interest in the Insurance, except in favor of Seller. In addition to any and all other rights and remedies available to Seller under this Contract, applicable law or otherwise, upon and after the occurrence of an event of default under this Contract, Buyer agrees that Seller may cancel the Insurance and receive on behalf of Buyer the unearned insurance premium and dividends thereon. Such unearned insurance premium and dividends shall be applied by Seller to the payment of the amounts owing by Buyer to Seller under this Contract (and Buyer so directs that Seller make such application). Buyer hereby constitutes and appoints Seller as Buyer's attorney-in-fact with full authority upon and after the occurrence of an event of default under this Contract to cancel the Insurance, to receive (and give receipt for) monies payable with respect to the Insurance as a result of such cancellation and to endorse Buyer's name on any check, draft, or other form of payment for all monies that may become due from the insurer with respect to any such cancellation.

The foregoing power of attorney, being coupled with an interest, is irrevocable until all obligations of Buyer under this Contract have been paid in full. Buyer hereby releases Seller of any liabilities, claims, demands, obligations, costs and expenses now or hereafter incurred by Buyer in any way relating to the Insurance, except for the failure of Seller to make the payment on the insurance premium with respect to the Insurance as provided above and except for the gross negligence or willful misconduct of Seller. Seller assumes no liability as an insurer. Buyer acknowledges and agrees that the insurer and the Agency may conclusively rely on the agreements made by the Buyer in this Contract (including, without limitation, the direction of Buyer for Seller to pay on behalf of Buyer all or a portion of the insurance premium on the Insurance, the right of Seller to communicate from time to time directly with the Agency and insurer and the power of attorney herein provided in favor of Seller in order to cancel the Insurance) and shall have no liability to Buyer for relying on this Contract (including, without limitation, with respect to such power of attorney). Buyer acknowledges that neither the insurer nor the Agency shall be required to determine whether an event of default exists under this Contract in order to honor such power of attorney and the insurer and the Agency may conclusively rely on any statement given by Seller with respect to any such cancellation.

**9. Miscellaneous:**

Buyer waives all exemptions. Seller may correct patent errors herein and fill in such blanks as serial numbers, date of first payment and the like. Any provisions hereof contrary to, prohibited by, or invalid under applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining provisions hereof. Buyer acknowledges receipt of a true copy and waives acceptance hereof. "Buyer" and "Seller" as used in this contract also mean "debtor" and "secured party" respectively and include heirs, executors, or administrators, successors or assigns to those parties. If more than one Buyer executes this contract, their obligations under this contract shall be joint and several. Buyer acknowledges and agrees that the original contract shall not be returned to Buyer upon payment in full of all amounts owing under this contract, except as required by applicable law or as agreed to by Seller in its discretion.

DocuSign Envelope ID: 7B97F5B0-4762-466F-9F81-2DF5DFA0C9A3

KOMATSU **SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT**

ACCOUNT NO.

TO: KOMATSU FINANCIAL LIMITED PARTNERSHIP

Re: Security Agreement/Contract between HMH CONSTRUCTION, LLC ("Buyer") and undersigned ("Assignor"), dated 04/13/2022 having a present unpaid balance of $175,805.28 covering D61PX-24 S/N B60875 (hereinafter referred to as "Agreement").

For value received Assignor hereby sells and assigns to Komatsu Financial Limited Partnership, its successors and assigns ("Assignee"), the Agreement, together with all of Assignor's right, title and interest in the property covered by and described in the Agreement ("Property"), and all of Assignor's rights and remedies thereunder and under any guaranty or endorsement thereof, including the right to collect any and all installments due and to become due on the Agreement and to take, in Assignor's or Assignee's name, any and all proceedings Assignor might otherwise take.

Assignor agrees that Assignee may audit its books and records relating to all paper assigned to Assignee and may in Assignor's name endorse all accompanying notes and all remittances received, and Assignor gives express permission to Assignee to release, on terms satisfactory to Assignee, by operation of law or otherwise, or to compromise or adjust any and all rights against and grant extensions of time of payment to the Buyer or any other persons obligated on the Agreement or on any accompanying note or guaranty, without notice to Assignor and without affecting Assignor's liability hereunder. Assignor waives presentment and demand for payment, protest and notice of non-payment and protest as to all paper heretofore, now or hereafter endorsed or assigned to Assignee and Assignor subordinates to any rights Assignee may now or hereafter have against the Buyer any rights Assignor may now or hereafter have.

Assignor shall have no authority to, and will not, without Assignee's prior written consent, accept collections, repossess or consent to the return of the Property described in the Agreement or modify the terms of the agreement or of any accompanying note or guaranty. Assignee's knowledge at any time of any breach of or noncompliance with any of the foregoing shall not constitute any waiver by Assignee. Assignor waives notice of acceptance hereof.

As part of the foregoing instrument, the Assignor's obligations in addition to those stated in the preceding paragraphs are governed by paragraph 1, 2, 3 or 4 as indicated by the box marked X below.

[X] **1. WITHOUT RECOURSE**
Assignor further agrees to assign the Agreement without recourse as to the financial ability of the Buyer to pay.

[ ] **2. WITH RECOURSE**
Subject to the terms and provisions of any applicable underlying agreement between Assignor and Assignee, Assignor further agrees to guaranty the payment promptly when due of the amount of each and every installment payable under the Agreement and the payment on demand of the entire unpaid balance at the date of default in the event of any default by Buyer under the Agreement, without first requiring Assignee to proceed against Buyer or any other person or any security.

[ ] **3. LIMITED REPURCHASE AGREEMENT**
Assignor further agrees that if the Buyer fails to pay the first installments of his obligation within 15 days of scheduled maturity as set forth in the Agreement hereby assigned and if any of said installments are not paid within the 15 days and Assignee repossesses the Property described in said Agreement, Assignor will purchase from Assignee the Property for the then unpaid balance in its then condition and location.

[ ] **4. PARTIAL REPURCHASE AGREEMENT**
Assignor further agrees that if Assignee repossesses the Property described in said Agreement the undersigned upon demand will pay to Assignee NaN or purchase the Property from Assignee for the then unpaid balance in its then condition and location.

MODERN MACHINERY CO., INC.
(Assignor)

Sign: Matthew Bucklin
04/13/2022
(executed)

Name: Mathew A. Bucklin

Title: CFO

The above assignment is made subject to the terms and conditions of the financing agreement presently in effect between Assignor and the Assignee, which specifically sets forth all of the rights and obligations of the Assignor and the Assignee with respect to retail contracts, and incorporates without limitation, the representations and warranties made by Assignor to Assignee with respect to retail contracts, any accompanying notes, guaranty or other documents relating thereto. Assignor represents to Assignee that (i) the present unpaid balance under the Agreement is correct and (ii) Assignor will comply with all its obligations under the Agreement.




20220650653

B0700-6359 04/12/2022 4:04 PM Received by ID Secretary of State Lawerence Denney

**STATE OF IDAHO**

*Office of the secretary of state, Lawerence Denney*

**UCC1 FINANCING STATEMENT**

Idaho Secretary of State
PO Box 83720
Boise, ID 83720-0080
(208) 334-2301
Filing Fee - $3 submitted online, $6 print & mail or $12 if 3 or more pages. Make checks payable to Secretary of State.

Contact at Filer:

| | |
|---|---|
| Contact Name | WOLTERS KLUWER LIEN SOLUTIONS |
| Contact Phone | 800-331-3282 |
| Contact Email | uccfilingreturn@wolterskluwer.com |

Send acknowledgment to:

| | |
|---|---|
| Name | JOHN JAMES |
| Address | 2929 ALLEN PKWY STE 3300<br>HOUSTON, TX 77019 |

Debtors:

| DEBTOR'S NAME | MAILING ADDRESS |
|---|---|
| HMH CONSTRUCTION, LLC | 2501 E STATE AVE SUITE #110<br>MERIDIAN, ID 83642 |

Secured Parties:

| SECURED PARTY'S NAME | MAILING ADDRESS |
|---|---|
| KOMATSU FINANCIAL LIMITED PARTNERSHIP | 8770 W BRYN MAWR AVE SUITE 100<br>CHICAGO, IL 60631 |

Collateral:

| | |
|---|---|
| The financing statement covers the following collateral: | ONE (1) Komatsu D61PX-24 Crawler Dozer, S/N# B60875, EQ 722863, Includes Extended warranty $14,034. COMPLETE WITH ALL PRESENT ATTACHMENTS, ACCESSORIES, REPLACEMENT PARTS, ADDITIONS AND ALL PROCEEDS THEREOF. |
| The collateral is: | |

Designations:

| | |
|---|---|
| Select a designation which describes this financing statement: | Not Applicable |
| Select an additional designation which describes this financing statement: | Not Applicable |

Alternative Designations:

| | |
|---|---|
| Select the alternative designation which describes this financing statement: | Not Applicable |

Optional Filer Reference Data:

ID-0-85935790-63583975

Case 23-00191-JMM Claim 3-1 Part 2 Filed 07/20/23 Desc Exhibit 1 to Proof of Claim Page 41 of 59

# EXHIBIT 6

Case 23-00191-JMM Claim 9-1 Part 2 Filed 07/20/23 Desc Exhibit A to Proof of Claim Page 43 of 55
DocuSign Envelope ID: C7753C5D-73FE-4059-807E-056D1352

# SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

Subject to the Terms and Conditions herein contained, the Seller hereby agrees to sell, and the Buyer having been quoted and offered both a cash sale price, payable immediately or within a limited number of days, and a contract time price which permits the Buyer to purchase the property now but pay in installments over an extended period of time, hereby agrees to buy, the following described property ("property") on a contract time price basis set forth below. The Contract time price is more than the cash sale price because it includes charges by the Seller to compensate the Seller for having to wait a period of time before collecting its full purchase price and for taking a risk in waiting such period of time. The property is to be used only for commercial or business purposes, includes all accessories and attachments, and shall, except as permitted by Paragraph 7 on page 4 hereof, be located at Buyer's Address set forth immediately below.

**Seller's Information** MODERN MACHINERY CO., INC.
P.O. BOX 16660
MISSOULA, MT 59808

**Quote No. 154230**

**Buyer's Information**
HMH CONSTRUCTION, LLC
2501 E State Ave Suite #110
MERIDIAN, ID 83642

Physical Location: 2501 E State Ave Suite #110
MERIDIAN, ID 83642

County: CANYON
Telephone: 8334642667

County:
State Charter Number: 0000624752
State of Registration: ID
Tax ID: [redacted]

Property Description

| Make | Model | Type | Description | Serial No. | Price |
|---|---|---|---|---|---|
| Komatsu | PC138USLC-11 | Hydraulic Excavator | EQ 1355073 w/ 36" and 60" buckets and Plate compactor Includes Extended warranty $18,654 | 60480 | $261,697.00 |

Trade-In Description

| Year | Make | Model | Type | Description | Serial No. | Allowance | Amt. Owed | Net Trade |
|---|---|---|---|---|---|---|---|---|
| 2016 | Doosan | DX140LCR-5 | Crawler Excavator | | DHKCEBBSTG0001460 | $75,000.00 | $50,193.40 | $24,806.60 |

**Schedule of Payments**

BUYER AGREES TO PAY SELLER, OR IF THIS CONTRACT IS ASSIGNED, TO ASSIGNEE OF SELLER, THE 'TOTAL OF PAYMENTS' (ITEM 10) IN ACCORDANCE WITH THE FOLLOWING SCHEDULE. PAYMENTS IN NUMBER AND AMOUNT ARE DUE EACH SUCCESSIVE MONTH ON THE SAME DAY AS THE STARTING DATE, OR AS INDICATED BELOW.

| Payments | Start Date | End Date | Payment | Total |
|---|---|---|---|---|
| 48 | 05/24/2022 | 04/24/2026 | $5,261.21 | $252,538.08 |
| 48 | | | | $252,538.08 |

**Statement of Transaction**

| Item | | |
|---|---|---|
| 1. Sales Price | | $261,697.00 |
| 2. Delivery, Installation, Repair (or other Service Charges) | $0.00 | |
| 3. Sales Tax | $10,112.58 | |
| 4. Cash Price (1+2+3) | | $271,809.58 |
| 5. a. Cash Down Payment | $0.00 | |
| b. Net Trade In | $24,806.60 | |
| c. Less Insurance | $0.00 | |
| Total Down Payment (5a+5b-5c) | | $24,806.60 |
| 6. Net Cash Price (4-5) | | $247,002.98 |
| 7. a. Lien & Filing Fees | $0.00 | |
| b. Other Fees | $500.00 | |
| Total Other Charges | | $500.00 |
| 8. Amount Financed (6 + 7) | | $247,502.98 |
| 9. Finance Charge (0.99%) | | $5,035.10 |
| 10. Total of Payments (8 + 9) | | $252,538.08 |
| 11. Total Time Price (4 + 7 + 9) | | $277,344.68 |

Date finance charge begins to accrue (if different than contract date)

Page 1 of 5 KF524R ORIGINAL FOR SELLER (IF ASSIGNED, FOR KOMATSU FINANCIAL LIMITED PARTNERSHIP) Buyer's Initials

KOMATSU

# SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

| Insurance Coverage | Buyer Place of Business and Other Buyer Information |
|---|---|
| **LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS AGREEMENT.** | IF BUYER'S ACTUAL CHIEF PLACE OF BUSINESS (CHIEF EXECUTIVE OFFICE IF MORE THAN ONE PLACE OF BUSINESS) IS IN A STATE OTHER THAN STATE WHERE THE PROPERTY IS LOCATED (AS SET FORTH ON PAGE 1), SPECIFY ACTUAL CHIEF PLACE OF BUSINESS. |
| Physical Damage Insurance Covering The Property Is Required. | Physical Location: |
| BUYER HAS OBTAINED INSURANCE THROUGH THE INSURANCE AGENCY LISTED BELOW OR ON FORM KF543R, SUBMITTED WITH THIS CONTRACT. | |
| Insurance Agency | BUYER DOES NOT HAVE PLACES OF BUSINESS IN MORE THAN ONE COUNTY IN THE STATE WHERE PROPERTY IS LOCATED. |
| | THIS SALE IS CONTINGENT UPON FINANCING ON TERMS WHICH ARE SATISFACTORY TO THE PARTIES. |
| Contact:<br>Phone# | IF DATE OF DELIVERY IS DIFFERENT THAN EFFECTIVE DATE SHOWN BELOW, SHOW ACTUAL DELIVERY DATE: |

**Partner Names and Addresses (If applicable)**

| Name | Address | Tax ID |
|---|---|---|

**Delinquency Charge:** After maturity, each installment shall bear charges at the highest rate permitted by law, but not to exceed 1.5% per month. Buyer also agrees to pay all expenses, including reasonable attorneys' fees, incurred in the collection and enforcement, by suit or otherwise, of any amount payable under this contract.

**Security Interest:** In order to secure payment of the indebtedness contained herein or incurred hereunder, Seller hereby retains, and Buyer hereby grants, a purchase money security interest under the Uniform Commercial Code in and to the above described property sold hereunder, together with all replacements, substitutions, additions, attachments, repairs, accessions and proceeds, including amounts payable under any insurance policies with respect thereto. Buyer hereby authorizes Seller to file one or more financing statements and/or a carbon or reproduction of this contract as a financing statement. Buyer hereby authorizes Seller or its agent or assigns to sign and execute on its behalf any and all necessary UCC-1 forms to perfect the security interest herein granted to Seller.

**Location of Property:** Buyer and Seller agree that regardless of the manner of affixation, the property shall remain personal property and not become part of the real estate. Except as permitted by Paragraph 7, Buyer agrees to keep the property at the location set forth herein, and will notify Seller promptly in writing of any change in the location of the property within such State, but will not remove the property from such State without the prior written consent of Seller (except that in the State of Pennsylvania, the property will not be moved from the above location without such prior written consent).

**ENTIRE AGREEMENT:** BUYER agrees that this contract including the ADDITIONAL TERMS AND CONDITIONS PRINTED ON Page 3-5 hereof, which he has read and to which he agrees, contains the entire agreement relating to the conditional sale of the property and supersedes all previous contracts and agreements between Buyer and Seller relating to the order or sale of the property. This contract is not binding upon Seller, unless signed by the manager of Seller or owner.

**NOTICE TO BUYER: 1. Do not sign this contract before you read it or if it contains blank spaces. 2. You are entitled to an exact and completely filled-in copy of the contract you sign. 3. Under law, you have the following rights, among others: (a) to pay off in advance the full amount due and obtain a partial refund of any unearned finance charge; (b) to redeem the property if repossessed for a default; and (c) to require, under certain conditions, a resale of the property if repossessed. 4. If you desire to pay off in advance the full amount due, the amount of the refund you are entitled to, if any, will be furnished upon request. 5. Keep this contract to protect your legal rights.**

**BUYER ACKNOWLEDGES RECEIPT OF AN EXACT COPY OF THIS CONTRACT SIGNED BY SELLER**

| | |
|---|---|
| **Buyer:** HMH CONSTRUCTION, LLC | **Effective Contract Date:** 04/13/2022 |
| **By:** [signature] **Title** [signature] | **Salesman's Signature:** Ryan Rowbury |
| **Co-Signer:** | **Signature For Seller Approval:** |
| **By:** **Title:** | Matthew Bucklin |

KOMATSU

# SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

**Conditional Terms and Conditions:**

**1. Assignment by Seller; Waiver of Defenses Against Assignee Holder:**

Seller may hold this contract or it may assign it for value to Komatsu Financial Limited Partnership (hereinafter referred to as "KF"). If Seller does in fact assign this contract to KF then after such assignment: a) KF as assignee, shall have all the rights and remedies of Seller hereunder and all of Buyer's agreements, representations and warranties shall be deemed to have been made to KF with the same force and effect as if KF were an original party hereto; b) Seller shall not be KF's agent for any purposes; c) Seller shall not have any power or authority to change or modify this contract or any related document or instrument in any way (except any relevant warranty or service agreement which is exclusively between Seller and Buyer and shall not bind KF or affect any of Buyer's or KF's rights or obligations under this contract); d) Buyer will settle all claims, defenses, set-offs and counterclaims of any nature, it may have against Seller, including but not limited to delivery of property, defects in the property and the like, directly with Seller, and not set up any such claim, defense, set-off or counterclaim against KF, Seller hereby agreeing to remain responsible therefor.

**2. Waiver of Defenses Acknowledgment; Place of Payment:**

Buyer acknowledges that: KF has no knowledge or information as to the condition or suitability for Buyer's purposes of the property, and KF's decision to purchase this contract from Seller, if so offered, will be made in reliance on Buyer's warranties, agreements and covenants herein, including Buyer's express agreement not to assert against KF any claims, defenses, set-offs or counterclaims it may now or in the future have against Seller named on page 1 hereof. If this contract is assigned to KF then after assignment to KF, Buyer will make all payments directly to KF at such places as KF may from time to time designate in writing to Buyer.

**3. Buyer's Warranties and Representations:**

Buyer warrants, represents and covenants; a) that Buyer is justly indebted to Seller for the full amount of the foregoing indebtedness; b) that except for the security interest granted hereby the property is free from and will be kept free from all liens, claims, security interests and encumbrances; c) that no financing statement covering the property or any proceeds is on file in favor of anyone other than Seller but if such other financing statement is on file, it will be terminated or subordinated; d) that all information supplied and statements made by Buyer in any financial, credit or accounting statement or application for credit prior to, contemporaneously with or subsequent to the execution of this contract with respect to this transaction are and shall be true, correct, valid and genuine; e) Buyer has full authority to enter into this contract and in so doing it is not violating any law or regulation or agreement with third parties, and it has taken all such action as may be necessary or appropriate to make this contract binding upon it: f) No director, officer or employee of the Company is or has been identified on any of the following documents: (i) the United States Department of Treasury, Office of Foreign Assets Control ("OFAC") list of "Specially Designated Nationals and Blocked Persons" ("SDNs"); (ii) the United States Department of Commerce, Bureau of Industry and Security of "Denied Persons List". "Entity List" or "Unverified List"; (iii) the Directorate of Defense Trade Controls of the United States Department of State "List of Statutorily Debarred Parties" or "List of Administratively Debarred Parties"; (iv) the United Kingdom's "Consolidated List of Financial Sanctions Targets" as maintained by HM Treasury; (v) Canada's "Listed Entities" pursuant to the Anti-Terrorism Act, 2001; (vi) the Australian Department of Foreign Affairs and Trade "Consolidated List" (pursuant to the Charter of the United Nations Act 1945 and Charter of the United Nations Terrorism and Dealings with Assets) Regulations 2002, as amended; (vii) the United Nations Security Council "Consolidated List" established and maintained by the 1267 Committee; or (viii) European Union Commission "Consolidated list of persons, groups and entities subject to EU financial sanctions". The Company is not and has not been involved in business arrangements or transactions with or involving countries subject to economic or trade sanctions imposed by the United States Government, or with or involving SDNs, in violation of the regulations maintained by OFAC.

**4. Events of Default; Acceleration:**

A very important element of this contract is that Buyer make all its payments promptly as agreed upon. Also essential is that the property continue to be in good condition and adequate security for the indebtedness. The following are events of default under this contract which will allow Seller to take such action under this Paragraph and under Paragraph 5 as it deems necessary:

(a) any of Buyer's obligations to Seller under any agreement with Seller is not paid promptly when due:
(b) Buyer breaches any warranty or provision hereof, or of any other instrument or agreement delivered by Buyer to Seller in connection with this or any other transaction;
(c) Buyer dies, becomes insolvent or ceases to do business as a going concern;
(d) it is determined Buyer has given Seller false information of a substantial nature regarding its financial condition;
(e) any of the property is lost or destroyed;
(f) a petition in bankruptcy or for arrangement or reorganization be filed by or against Buyer or Buyer admits its inability to pay its debts as they mature;
(g) property of Buyer be attached or a receiver be appointed for Buyer;
(h) whenever Seller in good faith believes the prospect of payment or performance is impaired or in good faith believes the property is insecure;
(i) any guarantor, surety or endorser for Buyer defaults in any obligation or liability to Seller or any guaranty obtained in connection with this transaction is terminated or breached.

**If Buyer shall be in default hereunder, the indebtedness herein described and all other debts then owing by Buyer to Seller under this or any other present or future agreement shall, if Seller shall so elect, become immediately due and payable.**

This acceleration of all indebtedness, if elected by Seller, shall be subject to all applicable laws, including laws as to rebates and refunds of unearned charges.

DocuSign Envelope ID: C7753C5D-73FE-4059-807E-056D13526960

# SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

**5. Seller's Remedies After Default; Consent to Enter Premises:**

So long as any obligations are owed by Buyer to Seller hereunder, Seller shall have all the rights and remedies provided by this contract and provided a secured party under the Uniform Commercial Code and any other applicable law. After default by Buyer, Seller's rights and remedies include but are not limited to a number of choices. Buyer acknowledges that if it defaults Seller is justly entitled to do whatever the law allows to avoid loss to itself and also to obtain for itself the benefit of the bargain under this contract.

Consequently, Buyer agrees that Seller, among its other rights and remedies, may itself or through its agent enter the premises or upon the land where the property is located and without removing the property render any equipment which is part of the property unusable and/or take possession of the property without notice to anyone or without judicial process of any kind, provided such self-help is done without breach of the peace (meaning actual or threatened violence to a person at the time of repossession). In order to afford itself of these and related remedies, Seller must be able to enter the premises or land in or upon which the property is located.

**Buyer therefore agrees that Seller by itself or through its agent may without notice to any person and without judicial process of any kind, enter into any premises or upon any land (including access roads and rights of way) owned, leased or otherwise under the real or apparent control of Buyer or any agent of Buyer where the property may be or where Seller believes the property may be, and using any reasonable force with respect to the property and any property connected to the property, disassemble, render unusable, disconnect and separate all property from any other property and/or repossess and remove all or any item of the property.**

Buyer will not hinder or delay Seller or its agent in any way and will, if requested, assist Seller or its agent in disassembling and/or removing the property. Seller may require Buyer to assemble the property and return it to Seller at a place to be designated by Seller which is reasonably convenient to both parties. Buyer expressly waives all further rights to possession of the property after default and all claims for damages related to such removal, disassembling, entering and/or repossession. The security interest granted hereby shall continue effective irrespective of any retaking and redelivery of the property to Buyer until all amounts secured hereby are fully paid in money.

Unless Buyer otherwise agrees in writing after default and unless the property is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Seller will give Buyer reasonable notice of the time and place of any public sale of the property or reasonable notice of the time after which any private sale or other intended disposition thereof is to be made. Unless otherwise provided by law, the requirement of reasonable notice shall be met if such notice is mailed, postage prepaid, to the address of Buyer shown herein at least ten days before the time of the sale or disposition. Expenses of retaking, holding, preparing for sale, selling and the like shall include reasonable attorneys' fees and other legal expenses. Buyer understands that Seller's rights are cumulative and not alternative and that Buyer will remain fully liable for any deficiency remaining after disposition of the property.

**6. Waiver of Defaults; Exclusive Agreement:**

Seller may in its sole discretion waive a default or cure a default at Buyer's expense. Any such waiver in a particular instance or of a particular default shall not be a waiver of other defaults or the same kind of default at another time. No modification or change in this contract shall bind Seller (after assignment, "Seller", as stated above means "KF") unless in writing signed by Seller. No oral agreement shall be binding.

**7. Buyer's Agreements:**

Buyer agrees; a) to defend at Buyer's own cost any action, proceeding or claim affecting the property; b) to pay reasonable attorneys' fees and other expenses incurred by Seller in enforcing its rights after Buyer's default: c) to pay promptly all taxes, assessments, license fees and other public or private charges when levied or assessed against the property or this contract and this obligation shall survive the termination of this contract; d) that if a certificate of title be required or permitted by law, Buyer shall obtain such certificate with respect to the property, showing the security interest of Seller thereon, and in any event do everything necessary or expedient to preserve or perfect the security interest of Seller; e) that Buyer will not misuse, fail to keep in good repair, secrete, or, except as provided in the remaining sentences of this Paragraph 7, without the prior written consent of Seller, and notwithstanding Seller's claim to proceeds, sell, rent, lend, encumber or transfer any of the property; f) that Seller may enter upon Buyer's premises or wherever the property may be located at any reasonable time to inspect the property. Buyer may lease the property in the ordinary course of Buyer's business and, in each instance, only on an arms-length basis upon the terms hereinafter set forth. In the event that Buyer leases the property to an affiliate of Buyer, the lease agreement between Buyer and such affiliate shall provide that such lease agreement is subordinate to this Contract.

To further secure payment of the indebtedness contained herein or incurred thereinafter, Buyer agrees to assign and hereby pledges, assigns and grants to Seller a security interest in the following collateral (collectively called "Additional Collateral"); all leases of the Property ("Leases"), other chattel paper, accounts, contract rights, documents, instruments and general intangibles, including all guaranties thereof, now existing or hereafter arising with respect to the Property (collectively with the Leases called the "Documents"); all rental payments and other amounts due or to become due under the Documents and all other cash and non-cash proceeds of the Property and the Documents (collectively called "Revenues"); all rights under and benefits of the terms, covenants and provisions of the Documents; and all legal and other remedies available for enforcement of the terms, covenants and provisions of the Documents. No Lease shall relieve Buyer of any of its obligations to Seller under Contract, and the aforesaid assignment of and security interest granted in the Documents and other Additional Collateral shall not be construed as authorizing Buyer to do anything with the Property other than to lease the same in accordance with the terms of this Contract. Buyer agrees that Seller does not, by this Contract or otherwise, assume any of the obligations of Buyer under any Lease or other Documents. Buyer agrees, upon the request of Seller, from time to time (a) to deliver to Seller any or all Documents and (b) to execute and deliver to Seller any and all further instruments and documents, including, without limitation, separate assignments and financing statements, which Seller deems necessary or desirable to obtain the full benefits of the assignment, rights, interests and powers herein granted.

Buyer hereby grants to Seller the right (in Buyer's name or otherwise, and without affecting Buyer's obligations to Seller) during the continuance of an event of default under Paragraph 4: to demand, receive, compromise, extend the time of payment of, or give discharge for, any and all Revenues; to endorse any checks or other instruments or orders in connection with the Revenues; and to file any claims or take such actions or institute such proceedings as Seller may deem necessary or advisable to protect Seller's interest. Buyer shall have no authority during the continuance of an event of default under Paragraph 4 to, and will not, during such period of time without Seller's prior written consent, accept collections, repossess, substitute or consent to the return of the Property or modify the terms or provisions of the Documents.

## SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

Buyer agrees, upon the request of Seller, during the continuance of an event of default under Paragraph 4 (i) to notify all obligors under the Documents of the interest of Seller or its assigns, and (ii) to direct all obligors under the Documents to pay all Revenues directly to Seller. Buyer further agrees, upon request of Seller, to forward promptly to Seller all notices received by Buyer from any of the obligors under the Documents. Buyer agrees and warrants that: if required by Seller, all Leases shall provide that obligors under the Documents shall waive all rights to any defenses, set-offs and counterclaims as against Seller; if required by Seller, each lessee shall acknowledge and agree (or the Lease shall provide) that lessee's rights to the Property are subject and subordinate to all of the terms of this Contract, including, without limitation, Seller's right to possession of the property after the occurrence of an event of default under this Contract; there are and will be no purchase option or rights of third persons in or to the property or the Additional Collateral, except as approved by Seller in writing; the property is and will remain personal property; and the property and the Additional Collateral are and will be free from all liens and encumbrances other than Seller's. Buyer further agrees that it will notify Seller upon learning of any material damage to or destruction of any of the property. Buyer will not remove the property or permit any lessee of the property to remove the property from those states where Seller has agreed in writing the property may be located. Buyer's chief executive office and principal place of business are at Buyer's address as set forth on pages 1 and/or 2 of this Contract unless otherwise set forth herein, and Buyer agrees to notify Seller promptly of any change of such address(es). Buyer shall cause each lessee of property to permit Seller to visit and inspect the property on such lessee's premises or on any other premises where such lessee has control. Buyer warrants, represents and covenants that (i) Buyer's true and correct legal name is as set forth on page 1 of this Contract and (ii) Buyer will not do any of the following without prior written notice to Seller: change its legal name, merge or consolidate with or into any other entity, change its type of business organization or change the jurisdiction of its organization.

**8. Insurance and Risk of Loss: Liability insurance coverage for bodily and property damage caused to others is NOT included herein.**

All risk of loss of, damage to or destruction of the property shall at all times be on Buyer. Buyer will procure forthwith and maintain fire and theft insurance with extended or combined additional coverage on the property for the full insurable value thereof for the life of this contract plus such other insurance as Seller may specify, and promptly deliver each policy to Seller with a standard long form endorsement attached showing loss payable to Seller or assigns as respective interests may appear. Seller's acceptance of policies in lesser amounts of risks shall not be a waiver of Buyer's foregoing obligation. In the event that the property damage insurance required hereby shall be issued through the Agency as provided in the Insurance Coverage section on the second page of this Contract (such insurance obtained through the Agency, the "Insurance") and any portion of the cash down payment and trade-in equipment allowance set forth in the Trade-In Equipment Description section of the second page of this Contract shall be allocated to the payment of the premium for the Insurance indicated in section 5c of the first page of this Contract. Seller agrees that the portion of the Cash and Trade-in allowance to be allocated to the payment of the premium on the Insurance shall constitute monies to be paid by Seller on behalf of Buyer to pay such premium. Buyer directs that such portion of such cash down payment and allowance be used by Seller to promptly pay on behalf of Buyer the premium on the Insurance. Buyer acknowledges that (i) Buyer has the option of furnishing the insurance required by this Section 8 through an agent or insurer of Buyer's choice and (ii) Seller merely informed Buyer of an insurance agent which dealt with insurance of the type required by this Contract and aided Buyer in completing the application form for the Insurance. Buyer agrees that Seller may from time to time communicate directly with the Agency and the insurer with respect to the Insurance. As additional security for the payment of the indebtedness owing by Buyer under this Contract, Buyer hereby grants to Seller a first priority security interest in the Insurance and all rights of Buyer with respect to the Insurance (including, without limitation, the right to cancel the Insurance and all rights to Buyer relating to unearned premiums and dividends which may be payable on or in respect of the Insurance).

Buyer represents, warrants and agrees that it has not heretofore assigned or transferred and will not assign or transfer any or all of its interest in the Insurance, except in favor of Seller. In addition to any and all other rights and remedies available to Seller under this Contract, applicable law or otherwise, upon and after the occurrence of an event of default under this Contract, Buyer agrees that Seller may cancel the Insurance and receive on behalf of Buyer the unearned insurance premium and dividends thereon. Such unearned insurance premium and dividends shall be applied by Seller to the payment of the amounts owing by Buyer to Seller under this Contract (and Buyer so directs that Seller make such application). Buyer hereby constitutes and appoints Seller as Buyer's attorney-in-fact with full authority upon and after the occurrence of an event of default under this Contract to cancel the Insurance, to receive (and give receipt for) monies payable with respect to the Insurance as a result of such cancellation and to endorse Buyer's name on any check, draft, or other form of payment for all monies that may become due from the Insurer with respect to any such cancellation.

The foregoing power of attorney, being coupled with an interest, is irrevocable until all obligations of Buyer under this Contract have been paid in full. Buyer hereby releases Seller of any liabilities, claims, demands, obligations, costs and expenses now or hereafter incurred by Buyer in any way relating to the Insurance, except for the failure of Seller to make the payment on the insurance premium with respect to the Insurance as provided above and except for the gross negligence or willful misconduct of Seller. Seller assumes no liability as an insurer. Buyer acknowledges and agrees that the insurer and the Agency may conclusively rely on the agreements made by the Buyer in this Contract (including, without limitation, the direction of Buyer for Seller to pay on behalf of Buyer all or a portion of the insurance premium on the Insurance, the right of Seller to communicate from time to time directly with the Agency and insurer and the power of attorney herein provided in favor of Seller in order to cancel the Insurance) and shall have no liability to Buyer for relying on this Contract (including, without limitation, with respect to such power of attorney). Buyer acknowledges that neither the insurer nor the Agency shall be required to determine whether an event of default exists under this Contract in order to honor such power of attorney and the insurer and the Agency may conclusively rely on any statement given by Seller with respect to any such cancellation.

**9. Miscellaneous:**

Buyer waives all exemptions. Seller may correct patent errors herein and fill in such blanks as serial numbers, date of first payment and the like. Any provisions hereof contrary to, prohibited by, or invalid under applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining provisions hereof. Buyer acknowledges receipt of a true copy and waives acceptance hereof. "Buyer" and "Seller" as used in this contract also mean "debtor" and "secured party" respectively and include heirs, executors, or administrators, successors or assigns to those parties. If more than one Buyer executes this contract, their obligations under this contract shall be joint and several. Buyer acknowledges and agrees that the original contract shall not be returned to Buyer upon payment in full of all amounts owing under this contract, except as required by applicable law or as agreed to by Seller in its discretion.

DocuSign Envelope ID: C7753C5D-73FE-4059-807E-056D1352

# KOMATSU SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

TO: KOMATSU FINANCIAL LIMITED PARTNERSHIP

Re: Security Agreement/Contract between HMH CONSTRUCTION, LLC ("Buyer") and undersigned ("Assignor"), dated 04/13/2022 having a present unpaid balance of $252,538.08 covering PC138USLC-11 S/N 60480 (hereinafter referred to as "Agreement").

For value received Assignor hereby sells and assigns to Komatsu Financial Limited Partnership, its successors and assigns ("Assignee"), the Agreement, together with all of Assignor's right, title and interest in the property covered by and described in the Agreement ("Property"), and all of Assignor's rights and remedies thereunder and under any guaranty or endorsement thereof, including the right to collect any and all installments due and to become due on the Agreement and to take, in Assignor's or Assignee's name, any and all proceedings Assignor might otherwise take.

Assignor agrees that Assignee may audit its books and records relating to all paper assigned to Assignee and may in Assignor's name endorse all accompanying notes and all remittances received, and Assignor gives express permission to Assignee to release, on terms satisfactory to Assignee, by operation of law or otherwise, or to compromise or adjust any and all rights against and grant extensions of time of payment to the Buyer or any other persons obligated on the Agreement or on any accompanying note or guaranty, without notice to Assignor and without affecting Assignor's liability hereunder. Assignor waives presentment and demand for payment, protest and notice of non-payment and protest as to all paper heretofore, now or hereafter endorsed or assigned to Assignee and Assignor subordinates to any rights Assignee may now or hereafter have against the Buyer any rights Assignor may now or hereafter have.

Assignor shall have no authority to, and will not, without Assignee's prior written consent, accept collections, repossess or consent to the return of the Property described in the Agreement or modify the terms of the agreement or of any accompanying note or guaranty. Assignee's knowledge at any time of any breach of or noncompliance with any of the foregoing shall not constitute any waiver by Assignee. Assignor waives notice of acceptance hereof.

As part of the foregoing instrument, the Assignor's obligations in addition to those stated in the preceding paragraphs are governed by paragraph 1, 2, 3 or 4 as indicated by the box marked X below.

[X] **1. WITHOUT RECOURSE**
Assignor further agrees to assign the Agreement without recourse as to the financial ability of the Buyer to pay.

[ ] **2. WITH RECOURSE**
Subject to the terms and provisions of any applicable underlying agreement between Assignor and Assignee, Assignor further agrees to guaranty the payment promptly when due of the amount of each and every installment payable under the Agreement and the payment on demand of the entire unpaid balance at the date of default in the event of any default by Buyer under the Agreement, without first requiring Assignee to proceed against Buyer or any other person or any security.

[ ] **3. LIMITED REPURCHASE AGREEMENT**
Assignor further agrees that if the Buyer fails to pay the first installments of his obligation within 15 days of scheduled maturity as set forth in the Agreement hereby assigned and if any of said installments are not paid within the 15 days and Assignee repossesses the Property described in said Agreement, Assignor will purchase from Assignee the Property for the then unpaid balance in its then condition and location.

[ ] **4. PARTIAL REPURCHASE AGREEMENT**
Assignor further agrees that if Assignee repossesses the Property described in said Agreement the undersigned upon demand will pay to Assignee NaN or purchase the Property from Assignee for the then unpaid balance in its then condition and location.

MODERN MACHINERY CO., INC.
(Assignor)

Sign: Matthew Bucklin

04/13/2022
(executed)

Name: Mathew A. Bucklin

Title: CFO

The above assignment is made subject to the terms and conditions of the financing agreement presently in effect between Assignor and the Assignee, which specifically sets forth all of the rights and obligations of the Assignor and the Assignee with respect to retail contracts, and incorporates without limitation, the representations and warranties made by Assignor to Assignee with respect to retail contracts, any accompanying notes, guaranty or other documents relating thereto. Assignor represents to Assignee that (i) the present unpaid balance under the Agreement is correct and (ii) Assignor will comply with all its obligations under the Agreement.



20220650635

B0700-6357 04/12/2022 4:02 PM Received by ID Secretary of State Lawerence Denney

**STATE OF IDAHO**

*Office of the secretary of state, Lawerence Denney*

**UCC1 FINANCING STATEMENT**

Idaho Secretary of State
PO Box 83720
Boise, ID 83720-0080
(208) 334-2301
Filing Fee - $3 submitted online, $6 print & mail or $12 if 3 or more pages. Make checks payable to Secretary of State.

Contact at Filer:

| | |
|---|---|
| Contact Name | WOLTERS KLUWER LIEN SOLUTIONS |
| Contact Phone | 800-331-3282 |
| Contact Email | uccfilingreturn@wolterskluwer.com |

Send acknowledgment to:

| | |
|---|---|
| Name | JOHN JAMES |
| Address | 2929 ALLEN PKWY STE 3300<br>HOUSTON, TX 77019 |

Debtors:

| DEBTOR'S NAME | MAILING ADDRESS |
|---|---|
| HMH CONSTRUCTION, LLC | 2501 E STATE AVE SUITE #110<br>MERIDIAN, ID 83642 |

Secured Parties:

| SECURED PARTY'S NAME | MAILING ADDRESS |
|---|---|
| KOMATSU FINANCIAL LIMITED PARTNERSHIP | 8770 W BRYN MAWR AVE SUITE 100<br>CHICAGO, IL 60631 |

Collateral:

| | |
|---|---|
| The financing statement covers the following collateral: | ONE (1) Komatsu PC138USLC-11 Hydraulic Excavator, S/N# 60480, EQ 1355073 w/ 36" and 60" buckets and Plate compactor, Includes Extended warranty $18,654. COMPLETE WITH ALL PRESENT ATTACHMENTS, ACCESSORIES, REPLACEMENT PARTS, ADDITIONS AND ALL PROCEEDS THEREOF. |
| The collateral is: | |

Designations:

| | |
|---|---|
| Select a designation which describes this financing statement: | Not Applicable |
| Select an additional designation which describes this financing statement: | Not Applicable |

Alternative Designations:

| | |
|---|---|
| Select the alternative designation which describes this financing statement: | Not Applicable |

Optional Filer Reference Data:

ID-0-85935781-63583974

# EXHIBIT 7

DocuSign Envelope ID: CA92439A-15C1-477C-A30C-205B6D82FFE1

**KOMATSU**

NO

# SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

Subject to the Terms and Conditions herein contained, the Seller hereby agrees to sell, and the Buyer having been quoted and offered both a cash sale price, payable immediately or within a limited number of days, and a contract time price which permits the Buyer to purchase the property now but pay in installments over an extended period of time, hereby agrees to buy, the following described property ("property") on a contract time price basis set forth below. The Contract time price is more than the cash sale price because it includes charges by the Seller to compensate the Seller for having to wait a period of time before collecting its full purchase price and for taking a risk in waiting such period of time. The property is to be used only for commercial or business purposes, includes all accessories and attachments, and shall, except as permitted by Paragraph 7 on page 4 hereof, be located at Buyer's Address set forth immediately below.

**Seller's Information**
MODERN MACHINERY CO., INC.
P.O. BOX 16660
MISSOULA, MT 59808

**Quote No. 154226**

**Buyer's Information**
HMH CONSTRUCTION, LLC
2501 E State Ave Suite #110
MERIDIAN, ID 83642

Physical Location: 2501 E State Ave Suite #110, MERIDIAN, ID 83642

County: CANYON
Telephone: 8334642667

County:
State Charter Number: 0000624752
State of Registration: ID
Tax ID: [redacted]

Property Description

| Make | Model | Type | Description | Serial No. | Price |
|---|---|---|---|---|---|
| Komatsu | GD655-7 | Motor Grader | EQ 1165034 Includes Extended warranty $22,487 | 65092 | $423,145.00 |

Trade-In Description

| Year | Make | Model | Type | Description | Serial No. | Allowance | Amt. Owed | Net Trade |
|---|---|---|---|---|---|---|---|---|

**Schedule of Payments**

BUYER AGREES TO PAY SELLER, OR IF THIS CONTRACT IS ASSIGNED,TO ASSIGNEE OF SELLER, THE 'TOTAL OF PAYMENTS' (ITEM 10) IN ACCORDANCE WITH THE FOLLOWING SCHEDULE. PAYMENTS IN NUMBER AND AMOUNT ARE DUE EACH SUCCESSIVE MONTH ON THE SAME DAY AS THE STARTING DATE, OR AS INDICATED BELOW.

| Payments | Start Date | End Date | Payment | Total |
|---|---|---|---|---|
| 48 | 05/24/2022 | 04/24/2026 | $8,167.88 | $392,058.24 |
| 48 | | | | $392,058.24 |

**Statement of Transaction**

| Item | | |
|---|---|---|
| 1. Sales Price | | $423,145.00 |
| 2. Delivery, Installation, Repair (or other Service Charges) | $0.00 | |
| 3. Sales Tax | $20,476.68 | |
| 4. Cash Price (1+2+3) | | $443,621.68 |
| 5. a. Cash Down Payment | $59,880.00 | |
| b. Net Trade In | $0.00 | |
| c. Less Insurance | $0.00 | |
| Total Down Payment (5a+5b-5c) | | $59,880.00 |
| 6. Net Cash Price (4-5) | | $383,741.68 |
| 7. a. Lien & Filing Fees | $0.00 | |
| b. Other Fees | $500.00 | |
| Total Other Charges | | $500.00 |
| 8. Amount Financed (6 + 7) | | $384,241.68 |
| 9. Finance Charge (0.99%) | | $7,816.56 |
| 10. Total of Payments (8 + 9) | | $392,058.24 |
| 11. Total Time Price (4 + 7 + 9) | | $451,938.24 |

Date finance charge begins to accrue (if different than contract date) 

DocuSign Envelope ID: CA92439A-15C1-477C-A30C-205B6D82FFE1

# SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

| Insurance Coverage | Buyer Place of Business and Other Buyer Information |
|---|---|
| **LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS AGREEMENT.** | IF BUYER'S ACTUAL CHIEF PLACE OF BUSINESS (CHIEF EXECUTIVE OFFICE IF MORE THAN ONE PLACE OF BUSINESS) IS IN A STATE OTHER THAN STATE WHERE THE PROPERTY IS LOCATED (AS SET FORTH ON PAGE 1), SPECIFY ACTUAL CHIEF PLACE OF BUSINESS. |
| Physical Damage Insurance Covering The Property Is Required. | Physical Location: |
| BUYER HAS OBTAINED INSURANCE THROUGH THE INSURANCE AGENCY LISTED BELOW OR ON FORM KF543R, SUBMITTED WITH THIS CONTRACT. | |
| Insurance Agency | BUYER DOES NOT HAVE PLACES OF BUSINESS IN MORE THAN ONE COUNTY IN THE STATE WHERE PROPERTY IS LOCATED. |
| | THIS SALE IS CONTINGENT UPON FINANCING ON TERMS WHICH ARE SATISFACTORY TO THE PARTIES. |
| Contact:<br>Phone# | IF DATE OF DELIVERY IS DIFFERENT THAN EFFECTIVE DATE SHOWN BELOW, SHOW ACTUAL DELIVERY DATE: |

**Partner Names and Addresses (if applicable)**

| Name | Address | Tax ID |
|---|---|---|
| | | |

**Delinquency Charge:** After maturity, each installment shall bear charges at the highest rate permitted by law, but not to exceed 1.5% per month. Buyer also agrees to pay all expenses, including reasonable attorneys' fees, incurred in the collection and enforcement, by suit or otherwise, of any amount payable under this contract.

**Security Interest:** In order to secure payment of the indebtedness contained herein or incurred hereunder, Seller hereby retains, and Buyer hereby grants, a purchase money security interest under the Uniform Commercial Code in and to the above described property sold hereunder, together with all replacements, substitutions, additions, attachments, repairs, accessions and proceeds, including amounts payable under any insurance policies with respect thereto. Buyer hereby authorizes Seller to file one or more financing statements and/or a carbon or reproduction of this contract as a financing statement. Buyer hereby authorizes Seller or its agent or assigns to sign and execute on its behalf any and all necessary UCC-1 forms to perfect the security interest herein granted to Seller.

**Location of Property:** Buyer and Seller agree that regardless of the manner of affixation, the property shall remain personal property and not become part of the real estate. Except as permitted by Paragraph 7, Buyer agrees to keep the property at the location set forth herein, and will notify Seller promptly in writing of any change in the location of the property within such State, but will not remove the property from such State without the prior written consent of Seller (except that in the State of Pennsylvania, the property will not be moved from the above location without such prior written consent).

**ENTIRE AGREEMENT:** BUYER agrees that this contract including the ADDITIONAL TERMS AND CONDITIONS PRINTED ON Page 3-5 hereof, which he has read and to which he agrees, contains the entire agreement relating to the conditional sale of the property and supersedes all previous contracts and agreements between Buyer and Seller relating to the order or sale of the property. This contract is not binding upon Seller, unless signed by the manager of Seller or owner.

**NOTICE TO BUYER: 1. Do not sign this contract before you read it or if it contains blank spaces. 2. You are entitled to an exact and completely filled-in copy of the contract you sign. 3. Under law, you have the following rights, among others: (a) to pay off in advance the full amount due and obtain a partial refund of any unearned finance charge; (b) to redeem the property if repossessed for a default; and (c) to require, under certain conditions, a resale of the property if repossessed. 4. If you desire to pay off in advance the full amount due, the amount of the refund you are entitled to, if any, will be furnished upon request. 5. Keep this contract to protect your legal rights.**

**BUYER ACKNOWLEDGES RECEIPT OF AN EXACT COPY OF THIS CONTRACT SIGNED BY SELLER**

| | |
|---|---|
| Buyer: HMH CONSTRUCTION, LLC | Effective Contract Date: 04/13/2022 |
| By: [signature] Title [signature] | Salesman's Signature: Ryan Rowbury |
| Co-Signer: | Signature For Seller Approval: |
| By: Title: | Matthew Bucklin |

DocuSign Envelope ID: CA92439A-15C1-477C-A30C-205B6D82FFE1

KOMATSU

## SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

**Conditional Terms and Conditions:**

**1. Assignment by Seller; Waiver of Defenses Against Assignee Holder:**

Seller may hold this contract or it may assign it for value to Komatsu Financial Limited Partnership (hereinafter referred to as "KF"). If Seller does in fact assign this contract to KF then after such assignment: a) KF as assignee, shall have all the rights and remedies of Seller hereunder and all of Buyer's agreements, representations and warranties shall be deemed to have been made to KF with the same force and effect as if KF were an original party hereto; b) Seller shall not be KF's agent for any purposes; c) Seller shall not have any power or authority to change or modify this contract or any related document or instrument in any way (except any relevant warranty or service agreement which is exclusively between Seller and Buyer and shall not bind KF or affect any of Buyer's or KF's rights or obligations under this contract); d) Buyer will settle all claims, defenses, set-offs and counterclaims of any nature, it may have against Seller, including but not limited to delivery of property, defects in the property and the like, directly with Seller, and not set up any such claim, defense, set-off or counterclaim against KF. Seller hereby agreeing to remain responsible therefor.

**2. Waiver of Defenses Acknowledgment; Place of Payment:**

Buyer acknowledges that: KF has no knowledge or information as to the condition or suitability for Buyer's purposes of the property, and KF's decision to purchase this contract from Seller, if so offered, will be made in reliance on Buyer's warranties, agreements and covenants herein, including Buyer's express agreement not to assert against KF any claims, defenses, set-offs or counterclaims it may now or in the future have against Seller named on page 1 hereof. If this contract is assigned to KF then after assignment to KF, Buyer will make all payments directly to KF at such places as KF may from time to time designate in writing to Buyer.

**3. Buyer's Warranties and Representations:**

Buyer warrants, represents and covenants; a) that Buyer is justly indebted to Seller for the full amount of the foregoing indebtedness; b) that except for the security interest granted hereby the property is free from and will be kept free from all liens, claims, security interests and encumbrances; c) that no financing statement covering the property or any proceeds is on file in favor of anyone other than Seller but if such other financing statement is on file, it will be terminated or subordinated; d) that all information supplied and statements made by Buyer in any financial, credit or accounting statement or application for credit prior to, contemporaneously with or subsequent to the execution of this contract with respect to this transaction are and shall be true, correct, valid and genuine; e) Buyer has full authority to enter into this contract and in so doing it is not violating any law or regulation or agreement with third parties, and it has taken all such action as may be necessary or appropriate to make this contract binding upon it; f) No director, officer or employee of the Company is or has been identified on any of the following documents: (i) the United States Department of Treasury, Office of Foreign Assets Control ("OFAC") list of "Specially Designated Nationals and Blocked Persons" ("SDNs"); (ii) the United States Department of Commerce, Bureau of Industry and Security of "Denied Persons List", "Entity List" or "Unverified List"; (iii) the Directorate of Defense Trade Controls of the United States Department of State "List of Statutorily Debarred Parties" or "List of Administratively Debarred Parties"; (iv) the United Kingdom's "Consolidated List of Financial Sanctions Targets" as maintained by HM Treasury; (v) Canada's "Listed Entities" pursuant to the Anti-Terrorism Act, 2001; (vi) the Australian Department of Foreign Affairs and Trade "Consolidated List" (pursuant to the Charter of the United Nations Act 1945 and Charter of the United Nations Terrorism and Dealings with Assets) Regulations 2002, as amended; (vii) the United Nations Security Council "Consolidated List" established and maintained by the 1267 Committee; or (viii) European Union Commission "Consolidated list of persons, groups and entities subject to EU financial sanctions". The Company is not and has not been involved in business arrangements or transactions with or involving countries subject to economic or trade sanctions imposed by the United States Government, or with or involving SDNs, in violation of the regulations maintained by OFAC.

**4. Events of Default; Acceleration:**

A very important element of this contract is that Buyer make all its payments promptly as agreed upon. Also essential is that the property continue to be in good condition and adequate security for the indebtedness. The following are events of default under this contract which will allow Seller to take such action under this Paragraph and under Paragraph 5 as it deems necessary:

(a) any of Buyer's obligations to Seller under any agreement with Seller is not paid promptly when due;
(b) Buyer breaches any warranty or provision hereof, or of any other instrument or agreement delivered by Buyer to Seller in connection with this or any other transaction;
(c) Buyer dies, becomes insolvent or ceases to do business as a going concern;
(d) it is determined Buyer has given Seller false information of a substantial nature regarding its financial condition;
(e) any of the property is lost or destroyed;
(f) a petition in bankruptcy or for arrangement or reorganization be filed by or against Buyer or Buyer admits its inability to pay its debts as they mature;
(g) property of Buyer be attached or a receiver be appointed for Buyer;
(h) whenever Seller in good faith believes the prospect of payment or performance is impaired or in good faith believes the property is insecure;
(i) any guarantor, surety or endorser for Buyer defaults in any obligation or liability to Seller or any guaranty obtained in connection with this transaction is terminated or breached.

**If Buyer shall be in default hereunder, the indebtedness herein described and all other debts then owing by Buyer to Seller under this or any other present or future agreement shall, if Seller shall so elect, become immediately due and payable.**

This acceleration of all indebtedness, if elected by Seller, shall be subject to all applicable laws, including laws as to rebates and refunds of unearned charges.

 Buyer's Initials 

DocuSign Envelope ID: CA92439A-15C1-477C-A30C-205B6D82FFE1

KOMATSU

# SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

**5. Seller's Remedies After Default; Consent to Enter Premises:**

So long as any obligations are owed by Buyer to Seller hereunder, Seller shall have all the rights and remedies provided by this contract and provided a secured party under the Uniform Commercial Code and any other applicable law. After default by Buyer, Seller's rights and remedies include but are not limited to a number of choices. Buyer acknowledges that if it defaults Seller is justly entitled to do whatever the law allows to avoid loss to itself and also to obtain for itself the benefit of the bargain under this contract.

Consequently, Buyer agrees that Seller, among its other rights and remedies, may itself or through its agent enter the premises or upon the land where the property is located and without removing the property render any equipment which is part of the property unusable and/or take possession of the property without notice to anyone or without judicial process of any kind, provided such self-help is done without breach of the peace (meaning actual or threatened violence to a person at the time of repossession). In order to afford itself of these and related remedies, Seller must be able to enter the premises or land in or upon which the property is located.

**Buyer therefore agrees that Seller by itself or through its agent may without notice to any person and without judicial process of any kind, enter into any premises or upon any land (including access roads and rights of way) owned, leased or otherwise under the real or apparent control of Buyer or any agent of Buyer where the property may be or where Seller believes the property may be, and using any reasonable force with respect to the property and any property connected to the property, disassemble, render unusable, disconnect and separate all property from any other property and/or repossess and remove all or any item of the property.**

Buyer will not hinder or delay Seller or its agent in any way and will, if requested, assist Seller or its agent in disassembling and/or removing the property. Seller may require Buyer to assemble the property and return it to Seller at a place to be designated by Seller which is reasonably convenient to both parties. Buyer expressly waives all further rights to possession of the property after default and all claims for damages related to such removal, disassembling, entering and/or repossession. The security interest granted hereby shall continue effective irrespective of any retaking and redelivery of the property to Buyer until all amounts secured hereby are fully paid in money.

Unless Buyer otherwise agrees in writing after default and unless the property is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Seller will give Buyer reasonable notice of the time and place of any public sale of the property or reasonable notice of the time after which any private sale or other intended disposition thereof is to be made. Unless otherwise provided by law, the requirement of reasonable notice shall be met if such notice is mailed, postage prepaid, to the address of Buyer shown herein at least ten days before the time of the sale or disposition. Expenses of retaking, holding, preparing for sale, selling and the like shall include reasonable attorneys' fees and other legal expenses. Buyer understands that Seller's rights are cumulative and not alternative and that Buyer will remain fully liable for any deficiency remaining after disposition of the property.

**6. Waiver of Defaults; Exclusive Agreement:**

Seller may in its sole discretion waive a default or cure a default at Buyer's expense. Any such waiver in a particular instance or of a particular default shall not be a waiver of other defaults or the same kind of default at another time. No modification or change in this contract shall bind Seller (after assignment, "Seller", as stated above means "KF") unless in writing signed by Seller. No oral agreement shall be binding.

**7. Buyer's Agreements:**

Buyer agrees; a) to defend at Buyer's own cost any action, proceeding or claim affecting the property; b) to pay reasonable attorneys' fees and other expenses incurred by Seller in enforcing its rights after Buyer's default; c) to pay promptly all taxes, assessments, license fees and other public or private charges when levied or assessed against the property or this contract and this obligation shall survive the termination of this contract; d) that if a certificate of title be required or permitted by law, Buyer shall obtain such certificate with respect to the property, showing the security interest of Seller thereon, and in any event do everything necessary or expedient to preserve or perfect the security interest of Seller; e) that Buyer will not misuse, fail to keep in good repair, secrete, or, except as provided in the remaining sentences of this Paragraph 7, without the prior written consent of Seller, and notwithstanding Seller's claim to proceeds, sell, rent, lend, encumber or transfer any of the property; f) that Seller may enter upon Buyer's premises or wherever the property may be located at any reasonable time to inspect the property. Buyer may lease the property in the ordinary course of Buyer's business and, in each instance, only on an arms-length basis upon the terms hereinafter set forth. In the event that Buyer leases the property to an affiliate of Buyer, the lease agreement between Buyer and such affiliate shall provide that such lease agreement is subordinate to this Contract.

To further secure payment of the indebtedness contained herein or incurred thereinafter, Buyer agrees to assign and hereby pledges, assigns and grants to Seller a security interest in the following collateral (collectively called "Additional Collateral"); all leases of the Property ("Leases"), other chattel paper, accounts, contract rights, documents, instruments and general intangibles, including all guaranties thereof, now existing or hereafter arising with respect to the Property (collectively with the Leases called the "Documents"); all rental payments and other amounts due or to become due under the Documents and all other cash and non-cash proceeds of the Property and the Documents (collectively called "Revenues"); all rights under and benefits of the terms, covenants and provisions of the Documents; and all legal and other remedies available for enforcement of the terms, covenants and provisions of the Documents. No Lease shall relieve Buyer of any of its obligations to Seller under Contract, and the aforesaid assignment of and security interest granted in the Documents and other Additional Collateral shall not be construed as authorizing Buyer to do anything with the Property other than to lease the same in accordance with the terms of this Contract. Buyer agrees that Seller does not, by this Contract or otherwise, assume any of the obligations of Buyer under any Lease or other Documents. Buyer agrees, upon the request of Seller, from time to time (a) to deliver to Seller any or all Documents and (b) to execute and deliver to Seller any and all further instruments and documents, including, without limitation, separate assignments and financing statements, which Seller deems necessary or desirable to obtain the full benefits of the assignment, rights, interests and powers herein granted.

Buyer hereby grants to Seller the right (in Buyer's name or otherwise, and without affecting Buyer's obligations to Seller) during the continuance of an event of default under Paragraph 4: to demand, receive, compromise, extend the time of payment of, or give discharge for, any and all Revenues; to endorse any checks or other instruments or orders in connection with the Revenues; and to file any claims or take such actions or institute such proceedings as Seller may deem necessary or advisable to protect Seller's interest. Buyer shall have no authority during the continuance of an event of default under Paragraph 4 to, and will not, during such period of time without Seller's prior written consent, accept collections, repossess, substitute or consent to the return of the Property or modify the terms or provisions of the Documents.

Buyer's Initials



DocuSign Envelope ID: CA92439A-15C1-477C-A30C-205B6D82FFE1

**KOMATSU**

## SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

Buyer agrees, upon the request of Seller, during the continuance of an event of default under Paragraph 4 (i) to notify all obligors under the Documents of the interest of Seller or its assigns, and (ii) to direct all obligors under the Documents to pay all Revenues directly to Seller. Buyer further agrees, upon request of Seller, to forward promptly to Seller all notices received by Buyer from any of the obligors under the Documents. Buyer agrees and warrants that: if required by Seller, all Leases shall provide that obligors under the Documents shall waive all rights to any defenses, set-offs and counterclaims as against Seller; if required by Seller, each lessee shall acknowledge and agree (or the Lease shall provide) that lessee's rights to the Property are subject and subordinate to all of the terms of this Contract, including, without limitation, Seller's right to possession of the property after the occurrence of an event of default under this Contract; there are and will be no purchase option or rights of third persons in or to the property or the Additional Collateral, except as approved by Seller in writing; the property is and will remain personal property; and the property and the Additional Collateral are and will be free from all liens and encumbrances other than Seller's. Buyer further agrees that it will notify Seller upon learning of any material damage to or destruction of any of the property. Buyer will not remove the property or permit any lessee of the property to remove the property from those states where Seller has agreed in writing the property may be located. Buyer's chief executive office and principal place of business are at Buyer's address as set forth on pages 1 and/or 2 of this Contract unless otherwise set forth herein, and Buyer agrees to notify Seller promptly of any change of such address(es). Buyer shall cause each lessee of property to permit Seller to visit and inspect the property on such lessee's premises or on any other premises where such lessee has control. Buyer warrants, represents and covenants that (i) Buyer's true and correct legal name is as set forth on page 1 of this Contract and (ii) Buyer will not do any of the following without prior written notice to Seller: change its legal name, merge or consolidate with or into any other entity, change its type of business organization or change the jurisdiction of its organization.

**8. Insurance and Risk of Loss: Liability insurance coverage for bodily and property damage caused to others is NOT included herein.**

All risk of loss of, damage to or destruction of the property shall at all times be on Buyer. Buyer will procure forthwith and maintain fire and theft insurance with extended or combined additional coverage on the property for the full insurable value thereof for the life of this contract plus such other insurance as Seller may specify, and promptly deliver each policy to Seller with a standard long form endorsement attached showing loss payable to Seller or assigns as respective interests may appear. Seller's acceptance of policies in lesser amounts of risks shall not be a waiver of Buyer's foregoing obligation. In the event that the property damage insurance required hereby shall be issued through the Agency as provided in the Insurance Coverage section on the second page of this Contract (such insurance obtained through the Agency, the "Insurance") and any portion of the cash down payment and trade-in equipment allowance set forth in the Trade-In Equipment Description section of the second page of this Contract shall be allocated to the payment of the premium for the insurance indicated in section 5c of the first page of this Contract. Seller agrees that the portion of the Cash and Trade-In allowance to be allocated to the payment of the premium on the Insurance shall constitute monies to be paid by Seller on behalf of Buyer to pay such premium. Buyer directs that such portion of such cash down payment and allowance be used by Seller to promptly pay on behalf of Buyer the premium on the Insurance. Buyer acknowledges that (i) Buyer has the option of furnishing the insurance required by this Section 8 through an agent or insurer of Buyer's choice and (ii) Seller merely informed Buyer of an insurance agent which dealt with insurance of the type required by this Contract and aided Buyer in completing the application form for the Insurance. Buyer agrees that Seller may from time to time communicate directly with the Agency and the insurer with respect to the Insurance. As additional security for the payment of the indebtedness owing by Buyer under this Contract, Buyer hereby grants to Seller a first priority security interest in the Insurance and all rights of Buyer with respect to the Insurance (including, without limitation, the right to cancel the Insurance and all rights to Buyer relating to unearned premiums and dividends which may be payable on or in respect of the Insurance).

Buyer represents, warrants and agrees that it has not heretofore assigned or transferred and will not assign or transfer any or all of its interest in the Insurance, except in favor of Seller. In addition to any and all other rights and remedies available to Seller under this Contract, applicable law or otherwise, upon and after the occurrence of an event of default under this Contract, Buyer agrees that Seller may cancel the Insurance and receive on behalf of Buyer the unearned insurance premium and dividends thereon. Such unearned insurance premium and dividends shall be applied by Seller to the payment of the amounts owing by Buyer to Seller under this Contract (and Buyer so directs that Seller make such application). Buyer hereby constitutes and appoints Seller as Buyer's attorney-in-fact with full authority upon and after the occurrence of an event of default under this Contract to cancel the Insurance, to receive (and give receipt for) monies payable with respect to the Insurance as a result of such cancellation and to endorse Buyer's name on any check, draft, or other form of payment for all monies that may become due from the insurer with respect to any such cancellation.

The foregoing power of attorney, being coupled with an interest, is irrevocable until all obligations of Buyer under this Contract have been paid in full. Buyer hereby releases Seller of any liabilities, claims, demands, obligations, costs and expenses now or hereafter incurred by Buyer in any way relating to the Insurance, except for the failure of Seller to make the payment on the insurance premium with respect to the Insurance as provided above and except for the gross negligence or willful misconduct of Seller. Seller assumes no liability as an insurer. Buyer acknowledges and agrees that the insurer and the Agency may conclusively rely on the agreements made by the Buyer in this Contract (including, without limitation, the direction of Buyer for Seller to pay on behalf of Buyer all or a portion of the insurance premium on the Insurance, the right of Seller to communicate from time to time directly with the Agency and insurer and the power of attorney herein provided in favor of Seller in order to cancel the Insurance) and shall have no liability to Buyer for relying on this Contract (including, without limitation, with respect to such power of attorney). Buyer acknowledges that neither the insurer nor the Agency shall be required to determine whether an event of default exists under this Contract in order to honor such power of attorney and the insurer and the Agency may conclusively rely on any statement given by Seller with respect to any such cancellation.

**9. Miscellaneous:**

Buyer waives all exemptions. Seller may correct patent errors herein and fill in such blanks as serial numbers, date of first payment and the like. Any provisions hereof contrary to, prohibited by, or invalid under applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining provisions hereof. Buyer acknowledges receipt of a true copy and waives acceptance hereof. "Buyer" and "Seller" as used in this contract also mean "debtor" and "secured party" respectively and include heirs, executors, or administrators, successors or assigns to those parties. If more than one Buyer executes this contract, their obligations under this contract shall be joint and several. Buyer acknowledges and agrees that the original contract shall not be returned to Buyer upon payment in full of all amounts owing under this contract, except as required by applicable law or as agreed to by Seller in its discretion.

Buyer's Initials 

KOMATSU

# SECURITY AGREEMENT - CONDITIONAL SALES CONTRACT

ACCOUNT NO.

TO: KOMATSU FINANCIAL LIMITED PARTNERSHIP

Re: Security Agreement/Contract between HMH CONSTRUCTION, LLC ("Buyer") and undersigned ("Assignor"), dated 08/31/2021 having a present unpaid balance of $298,104.48 covering D51PXi-24 S/N 10973 HYPER V S/N 19959/20047 (hereinafter referred to as "Agreement").

For value received Assignor hereby sells and assigns to Komatsu Financial Limited Partnership, its successors and assigns ("Assignee"), the Agreement, together with all of Assignor's right, title and interest in the property covered by and described in the Agreement ("Property"), and all of Assignor's rights and remedies thereunder and under any guaranty or endorsement thereof, including the right to collect any and all installments due and to become due on the Agreement and to take, in Assignor's or Assignee's name, any and all proceedings Assignor might otherwise take.

Assignor agrees that Assignee may audit its books and records relating to all paper assigned to Assignee and may in Assignor's name endorse all accompanying notes and all remittances received, and Assignor gives express permission to Assignee to release, on terms satisfactory to Assignee, by operation of law or otherwise, or to compromise or adjust any and all rights against and grant extensions of time of payment to the Buyer or any other persons obligated on the Agreement or on any accompanying note or guaranty, without notice to Assignor and without affecting Assignor's liability hereunder. Assignor waives presentment and demand for payment, protest and notice of non-payment and protest as to all paper heretofore, now or hereafter endorsed or assigned to Assignee and Assignor subordinates to any rights Assignee may now or hereafter have against the Buyer any rights Assignor may now or hereafter have.

Assignor shall have no authority to, and will not, without Assignee's prior written consent, accept collections, repossess or consent to the return of the Property described in the Agreement or modify the terms of the agreement or of any accompanying note or guaranty. Assignee's knowledge at any time of any breach of or noncompliance with any of the foregoing shall not constitute any waiver by Assignee. Assignor waives notice of acceptance hereof.

As part of the foregoing instrument, the Assignor's obligations in addition to those stated in the preceding paragraphs are governed by paragraph 1, 2, 3 or 4 as indicated by the box marked X below.

[X] **1. WITHOUT RECOURSE**
Assignor further agrees to assign the Agreement without recourse as to the financial ability of the Buyer to pay.

[ ] **2. WITH RECOURSE**
Subject to the terms and provisions of any applicable underlying agreement between Assignor and Assignee, Assignor further agrees to guaranty the payment promptly when due of the amount of each and every installment payable under the Agreement and the payment on demand of the entire unpaid balance at the date of default in the event of any default by Buyer under the Agreement, without first requiring Assignee to proceed against Buyer or any other person or any security.

[ ] **3. LIMITED REPURCHASE AGREEMENT**
Assignor further agrees that if the Buyer fails to pay the first installments of his obligation within 15 days of scheduled maturity as set forth in the Agreement hereby assigned and if any of said installments are not paid within the 15 days and Assignee repossesses the Property described in said Agreement, Assignor will purchase from Assignee the Property for the then unpaid balance in its then condition and location.

[ ] **4. PARTIAL REPURCHASE AGREEMENT**
Assignor further agrees that if Assignee repossesses the Property described in said Agreement the undersigned upon demand will pay to Assignee NaN or purchase the Property from Assignee for the then unpaid balance in its then condition and location.

MODERN MACHINERY CO., INC.
(Assignor)

**Sign:** Kyle Viste

08/31/2021
(executed)

**Name: Kyle Viste**

**Title: Controller**

The above assignment is made subject to the terms and conditions of the financing agreement presently in effect between Assignor and the Assignee, which specifically sets forth all of the rights and obligations of the Assignor and the Assignee with respect to retail contracts, and incorporates without limitation, the representations and warranties made by Assignor to Assignee with respect to retail contracts, any accompanying notes, guaranty or other documents relating thereto. Assignor represents to Assignee that (i) the present unpaid balance under the Agreement is correct and (ii) Assignor will comply with all its obligations under the Agreement.



20220650608

**STATE OF IDAHO**

*Office of the secretary of state, Lawerence Denney*

**UCC1 FINANCING STATEMENT**

Idaho Secretary of State
PO Box 83720
Boise, ID 83720-0080
(208) 334-2301
Filing Fee - $3 submitted online, $6 print & mail or $12 if 3 or more pages. Make checks payable to Secretary of State.

Contact at Filer:

| | |
|---|---|
| Contact Name | WOLTERS KLUWER LIEN SOLUTIONS |
| Contact Phone | 800-331-3282 |
| Contact Email | uccfilingreturn@wolterskluwer.com |

Send acknowledgment to:

| | |
|---|---|
| Name | JOHN JAMES |
| Address | 2929 ALLEN PKWY STE 3300<br>HOUSTON, TX 77019 |

Debtors:

| DEBTOR'S NAME | MAILING ADDRESS |
|---|---|
| HMH CONSTRUCTION, LLC | 2501 E STATE AVE SUITE #110<br>MERIDIAN, ID 83642 |

Secured Parties:

| SECURED PARTY'S NAME | MAILING ADDRESS |
|---|---|
| KOMATSU FINANCIAL LIMITED PARTNERSHIP | 8770 W BRYN MAWR AVE SUITE 100<br>CHICAGO, IL 60631 |

Collateral:

| | |
|---|---|
| The financing statement covers the following collateral: | ONE (1) Komatsu GD655-7 Motor Grader, S/N# 65092, EQ 1165034, Includes Extended warranty $22,487. COMPLETE WITH ALL PRESENT ATTACHMENTS, ACCESSORIES, REPLACEMENT PARTS, ADDITIONS AND ALL PROCEEDS THEREOF. |
| The collateral is: | |

Designations:

| | |
|---|---|
| Select a designation which describes this financing statement: | Not Applicable |
| Select an additional designation which describes this financing statement: | Not Applicable |

Alternative Designations:

| | |
|---|---|
| Select the alternative designation which describes this financing statement: | Not Applicable |

Optional Filer Reference Data:

ID-0-85935753-63583972

B0700-6349 04/12/2022 4:00 PM Received by ID Secretary of State Lawerence Denney

# EXHIBIT 8

# Cross Collateral Security Agreement

**KOMATSU FINANCIAL**

This Agreement is by and between Komatsu Financial Limited Partnership ("KF") located at 8770 W Bryn Mawr Ave Suite 100, Chicago, IL 60631 and HMH CONSTRUCTION, LLC (the "Company" ) located at PO Box 337, NAMPA, ID 83653

WHEREAS, KF has and/or may hereafter acquire and/or enter into Contracts (as defined herein) with the Company, and it is a condition precedent to KF, as appropriate, acquiring or entering into such Contracts that the Company shall agree to all terms and conditions included herein. Since the terms and conditions included in this Agreement will affect each of the Contracts, the Company desires the agreement of KF to the terms and conditions hereof.

NOW, THEREFORE, FOR GOOD AND VALUABLE CONSIDERATION, THE RECEIPT AND SUFFICIENCY OF WHICH IS HEREBY ACKNOWLEDGED, THE PARTIES HERETO AGREE AS FOLLOWS:

1. The following terms as used herein shall be defined as follows:
   a. "Contracts" shall mean all present and future (i) conditional sales contracts, lease agreements, security agreements, notes and other like agreements which KF may acquire arising from the sale or lease to the Company of equipment and/or inventory from any vendor or lessor, and (ii) lease agreements, security agreements, direct loan agreements, notes and other agreements of any kind between the Company and KF.
   b. "Collateral" shall mean all present and future equipment, inventory, and other property described in and subject to the Contracts and/or which secures the performance of the Company thereunder, together with all the cash and non-cash proceeds of all of the foregoing.
   c. "Obligations" shall mean all the present and future duties, liabilities and obligations due to KF from the Company under the Contracts, whether joint or several, direct or indirect, absolute or contingent, secured or unsecured, matured or unmatured, or by assignment or otherwise.

2. Each item of Collateral shall secure the payment and other performance by the Company of each of the Obligations and shall continue to do so unless and until all of the Obligations are paid in full and otherwise satisfied and the Contracts have been fully performed by the Company. In furtherance of the foregoing, the Company does hereby grant to KF a security interest in all Collateral as collateral security for any and all Obligations. KF shall retain its security interest in the Collateral as security for the Company's performance of the Obligations notwithstanding the payment in full or other complete performance by the Company of one or more Obligations or Contracts. The Company will obtain title to any item of Collateral subject to a lease agreement subject to the security interest identified in this Agreement notwithstanding the execution, delivery or terms of any Bill of Sale delivered by KF. The security interest granted hereby is a separate, independent security interest that is in addition to, and not in substitution of, any and all security interests heretofore or hereafter granted by the Company to KF, including, without limitation, those granted by the Contracts. The Company hereby represents and warrants that the security interest created hereby constitutes a first priority lien on the Collateral, except for any prior lien of KF. To the extent permitted by law, the Company hereby irrevocably authorizes KF to file a financing statement with respect to the Collateral signed only by KF, and to file a carbon, photocopy or other reproduction of this Agreement as a financing statement.

3. Without limitation of any provisions in any Contracts, the Company agrees that
   (i) it shall keep the Collateral free from any liens, encumbrances or security interests other than in favor of KF and shall defend at the Company's cost and expense any action, proceeding or claim affecting the Collateral,
   (ii) it shall keep and maintain such insurance upon the Collateral in such amounts and manner as KF may require, loss, if any, payable to KF or its assigns as their interests may appear,
   (iii) no financing statement covering any of the Collateral or any proceeds thereof is on file in favor of anyone other than KF, but if such other financing statement is on file, it will be terminated or subordinated,
   (iv) it has full authority to enter into this Agreement and in so doing it is not violating its charter or by-laws, any law or regulation or agreement with third parties, and it has taken all such action as may be necessary or appropriate to make this Agreement binding upon it,
   (v) it shall pay reasonable attorney's fees and other expenses incurred by KF in enforcing its rights against the Company under this Agreement or any Contract,

(vi) it shall pay promptly all taxes, assessments, license fees and other public or private charges when levied or assessed against any of the Collateral or this Agreement, which obligation shall survive the termination of this Agreement,

(vii) if a certificate of title be required or permitted by law, the Company shall obtain such certificate with respect to the Collateral, showing the security interest of KF thereon and in any event do everything necessary or expedient to preserve or perfect the security interest of KF therein,

(viii) the Company will not misuse, fail to keep in good repair, secrete, or without the prior written consent of KF or except as expressly permitted under the relevant Contract, sell, rent, lend, encumber or transfer any of the Collateral, notwithstanding KF's claim to proceeds,

(ix) KF may enter upon the Company's premises or wherever any of the Collateral may be located at any reasonable time to inspect the Collateral and the Company's books and records pertaining to the Collateral, and the Company shall assist KF in making such inspection, and

(x) it shall, at its cost and expense, upon request of KF, duly execute and deliver, or cause to be duly executed and delivered, to KF such further documents and instruments and do and cause to be done such further acts as may be necessary or proper in the opinion of KF to carry out more effectively the provisions and purpose of this Agreement.

4. A default by the Company under one or more of the Contracts or this Agreement shall constitute a default by the Company under each of the Contracts. Following such a default, KF may immediately exercise all the rights and remedies (i) of a secured party under the Uniform Commercial Code, (ii) otherwise accorded KF under any of the Contracts whether or not such rights or remedies are specifically set forth in the Contract being enforced, and (iii) otherwise lawfully available to KF.

5. The parties hereto intend by this Agreement (i) to create cross default conditions among all the Contracts, and (ii) to create cross security rights and remedies in the favor of KF with respect to the Collateral and the Obligations. All the rights and remedies granted to KF hereunder shall be cumulative and not alternative, shall be in addition to and shall in no manner impair or affect the rights and remedies of KF under the Contracts or under any statute, judicial decision or rule of law. This Agreement shall become a part of and specifically incorporated in the Contracts. Any provisions hereof contrary to, prohibited by or invalid under applicable laws or regulations shall be inapplicable and deemed omitted herefrom, but shall not invalidate the remaining provisions hereof. Except as expressly modified herein, all the terms and conditions included in the Contracts shall remain in full force and effect. This Agreement may be modified only through the written agreement of the parties hereto and shall inure to the benefit of KF and the successors and assigns of KF and shall be binding upon the Company and the successors and assigns of the Company. The Company may not assign its rights and/or obligations hereunder or under any of the Contracts without the prior written consent of KF.

Dated: 12/31/2020

| Komatsu Financial Limited Partnership | HMH CONSTRUCTION, LLC |
|---|---|
| By: ______________________ | By: ______________________ |
| Title: ______________________ | Title: ______________________ |