Electronically Filed
6/23/2023 1:47 PM
Fourth Judicial District, Ada County
Trent Tripple, Clerk of the Court
By: Kristi Weekley, Deputy Clerk

SCOT M. LUDWIG, ISB 3506
MACEE B. UTECHT, ISB 11723
LUDWIG ◆ SHOUFLER ◆ MILLER ◆ JOHNSON, LLP
Attorneys at Law
401 West Front Street, Suite 401
Boise, ID  83702
Telephone:  208-387-0400
Facsimile:  208-387-1999
*scot@lsmj-law.com*
*macee@lsmj-law.com*

Attorneys for Petitioner

## IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF

## THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| TRASHELLE ELIZABETH KALYN ODOM,<br><br>            Petitioner,<br><br>vs.<br><br>JOHN IVAN ODOM,<br><br>            Respondent. | CASE NO.  CV01-22-05770<br><br>**PETITIONER'S CLOSING ARGUMENT** |

The Petitioner, TRASHELLE ELIZABETH KALYN ODOM, by and through her attorney

of record, Macee B. Utecht of Ludwig Shoufler Miller Johnson LLP, hereby submits her closing

argument.

## I.    INTRODUCTION

This matter was tried to the Court on May 31st, June 1st, and June 2nd, 2023. The Court

received testimony of Petitioner (hereinafter referred to as "Trashelle"), Shaun Buck, and Matthew

Taylor.

PETITIONER'S CLOSING ARGUMENT - 1

In March 2023, Trashelle filed a Motion for Sanctions and a Motion to Stay Respondent's Racing Operations. After Respondent (hereinafter referred to as "John") failed to appear for the hearing on these Motions, this Court granted Trashelle's Motion for Sanctions, striking all of John's pleadings from the record. John was therefore prohibited from presenting evidence at trial regarding the allegations in his pleadings. Further, while John appeared at trial in this matter on May 31st, 2023, he did not appear for trial on June 1st or June 2nd, 2023. Prior to trial, this Court previously ordered that John appear at all hearings in this matter, and the Court also entered an Injunction staying all racing operations until John produced all information related to the racing business (*see* Petitioner's Exhibit 5). John's counsel, Richard Aaron Morriss, stated on the record on June 1st, 2023, that John's absence at trial for his own divorce proceeding was because he was traveling for racing activities. This Court thereafter further sanctioned John by prohibiting John from presenting any cross-examination of witnesses at trial on June 1st or June 2nd, 2023. Because John could not present evidence regarding his pleadings or cross-examine witnesses at trial, John's counsel did not remain in the Courtroom during the remainder of Petitioner's case presentation on June 1st or June 2nd, 2023. A representative from Mr. Morriss's office, Ms. Skags, remained present in the Courtroom for the remainder of trial.

## II.    ISSUES IN DISPUTE

The issues in dispute included the following:

1. The allocation of the parties' assets;

2. Trashelle's request for an unequal division of the community assets and debt in her favor;

3. The custody schedule in the best interests of the two minor children: Scarlett Odom, born February 23, 2018 (age 5) and Holland Odom, born June 13, 2019 (age 3).

4. Trashelle's request for an award of spousal support and whether John's income should be imputed at $500,000.00 given the evidence presented at trial;

5. Child support calculations;

6. Trashelle's request for a Judgment against John to reimburse community funds in the sum of $122,434.70 that John spent on extramarital affairs;

7. Trashelle's request for Judgment that John pay her $478,000.00, pursuant to the Temporary Order entered by this Court on June 17th, 2022;

8. Trashelle's request that John pay 100% of Trashelle's attorney's fees associated with this divorce proceeding (Petitioner shall file an Affidavit of the attorney's fees incurred in this matter within fourteen (14) days);

9. Assets that this Court should consider omitted or should not allocate due to John's failure to produce records as ordered, or provide evidence due to ongoing civil litigation, or due to the pending bankruptcy proceeding related to HMH Construction, LLC.

### III.    FACTS

Trashelle and John were married on July 7th, 2017, in Eagle, Ada County, Idaho. The parties have been married for five (5) years. The parties have two minor children: Scarlett Odom, born February 23, 2018 (age 5) and Holland Odom, born June 13, 2019 (age 3). Trashelle has one minor child from a prior relationship, Mason McGregor, born December 21, 2011 (age 11). Trashelle shares a 50/50 custody schedule of Mason with Mason's father. John Odom has two adult children from two prior relationships: Hudson Odom and Makaylan Odom.

**A. Background, Employment, and Income of the Parties.**

Trashelle has been a stay-at-home mom and raised the parties' two young children while John has been the primary financial provider for the family throughout the parties' 5-year marriage. Trashelle does not possess a high school diploma, she has not received her GED or high-school equivalent, and she has not obtained any college education. Trashelle previously worked at Dillard's in the cosmetics department for several years but left that position when the parties began dating in approximately 2013, when Trashelle was twenty-four (24) years old. Trashelle has not worked since she left the position at Dillard's; Trashelle is now 33 years old, and John is 48. It has been almost ten (10) years since Trashelle was last employed.

Though Trashelle has been unemployed for nearly a decade, she has ambitions of eventually starting her own clothing boutique. In order to raise the capital to start the boutique, Trashelle has tentatively created a plan to run a cleaning business until she can obtain the funds to start the clothing boutique. Trashelle was unable to provide an approximate income for either the cleaning or clothing business ideas because both plans are speculative. There was no evidence of any employment evaluation or assessment presented at trial.

At the start of this divorce proceeding in April 2022, there was enough community wealth for both parties to live the opulent lifestyle they enjoyed prior to the divorce. The parties could afford nannies, luxury vehicles, multiple residences, first-class and private flights around the country, a hired lobbyist, donations to politicians, and luxury clothing and jewelry—all while growing and developing multiple businesses. Throughout the parties' marriage, John provided Trashelle $20,000.00 a month just so that Trashelle could pay community bills. After paying the bills with the $20,000.00 allowance, Trashelle used a credit card to pay for all other expenses; John consistently paid the balance of Trashelle's credit card in full on a monthly basis, and sometimes paid the balance of Trashelle's credit card several times per month. Trashelle testified that there

was never a limit on her credit card spending unless the parties were traveling; if the parties were traveling, Trashelle would ask John whether there was a spending limit. There was no testimony regarding the amount of any spending limit that may have been set while the parties traveled.

Though Trashelle provided the Court with a monthly budget of $15,057.00, she also testified that the budget was conservative: the budget does not include a gym membership, funds for entertainment, funds for travel, or unexpected expenses like medical or dental bills.[1] Trashelle's budget also does not include expenses related to a new vehicle, which she will need to purchase post-divorce. Trashelle currently drives a Cadillac Escalade that is listed as an asset in HMH Construction LLC's bankruptcy proceeding;[2] this vehicle will likely be liquidated and the funds distributed to creditors. The other vehicle in Trashelle's possession, a Bentley Bentayga, is a lease and is currently sitting in Trashelle's garage; Trashelle has been unable to make the payment on this vehicle for months and expects this vehicle to be repossessed at any moment. Trashelle's prior vehicle, a 2022 Audi RS Q8, had already been repossessed during this proceeding due to lack of payment.

Trashelle testified that a $20,000.00 budget would leave her with enough funds to cover community bills while also allowing her some financial breathing room. In other words, a $20,000.00 budget is more realistic and would allow her to live a life somewhat similar to that which she enjoyed prior to filing the Petition for Divorce.

In June 2022, this Court heard evidence from both parties and entered a temporary order that John pay Trashelle the sum of $50,000.00 on or before Tuesday, June 21st, 2022, and John was further ordered to thereafter provide Trashelle the sum of $50,000.00 on the 1st day of July and continue making payment in the sum of $50,000.00 to Trashelle on the 1st day of each month

---

[1] *See* Petitioner's Exhibit 9.
[2] As noted below, HMH Construction, LLC, is a community business that filed bankruptcy in April 2022.

PETITIONER'S CLOSING ARGUMENT - 5

thereafter until further Court Order.[3] This Order was never amended throughout the duration of this case. Throughout the parties' divorce proceeding, Trashelle testified that John failed to pay her $50,000.00 each month on the 1st of each month, and at the conclusion of the case, John owed her the total sum of $478,000.00 pursuant to the Temporary Order entered by this Court on June 17th, 2022. Trashelle requested that this Court enter a Judgment against John for the sum of $478,000.00.

John is the sole member and CEO of HMH Construction, LLC, which was created in September 2018, after the parties were married. The parties and John, individually, also created many other entities during the parties' marriage, including: Skyline Homes and Development, LLC, Skyline Odom, LLC (a 50% owner in Skyline Homes and Development LLC), Odom Group, LLC, Odom Racing, LLC, Odom Motorsports, LLC, Invictus Capital, LLC, Mosey Hill Community Association, Inc., and Crescent Lake Community Association, Inc. Trashelle had no knowledge that John had created Odom Motorsports, LLC, Invictus Capital, LLC, Mosey Hill Community Association, Inc., or Crescent Lake Community Association, Inc. until she engaged in discovery after filing the Petition for Divorce in April 2022. Further, evidence obtained via discovery and presented at trial also indicated that John currently has or previously had an ownership in multiple other entities during the parties' marriage, including J&J Property Development, LLC, and Sand Creek Investments 2, LLC.[4]

On June 16th, 2022, John filed a Declaration in Support of a Motion for Temporary Orders that provided the following:

15. I am self-employed with HMH Construction as the CEO. Last year I made about 1.8 million as income which includes my W-2 income and draws from the company[.][5]

---

[3] *See* Petitioner's Exhibit 4.
[4] *See* Petitioner's Exhibits 35, 39, 55, 59.
[5] *See* Petitioner's Exhibit 6.

On April 20th, 2023, John filed a notice of bankruptcy indicating that HMH Construction, LLC, filed bankruptcy under Chapter 11 of the U.S. Bankruptcy Code.[6]

Though John did not provide testimony or evidence at trial regarding his income, Petitioner's Exhibit 14, an email sent by Crystal Byington[7] to John, provided evidence that John had taken over $3 million dollars in draws in 2022 from HMH Construction LLC, not including W-2 income. This email also indicated that in November 2022, John had transferred $110,000.00 to his personal account from HMH Construction's business account, and, separately, that he had been paid in payroll "$2,100.00 each week over the last month." Trashelle also provided testimony that she attended the 341 Meeting of Creditors on May 23rd, 2023, during which she heard that John had taken $2.7 million in draws from HMH Construction, LLC, in 2022.

John was always responsible for the parties' personal and business tax returns. Though Trashelle was a stay-at-home mom (and assisted with the growth and development of the parties' businesses), she never personally received a paycheck from HMH Construction or any other community business entity. In 2022, Trashelle received a letter from the IRS that stated that she and John owed approximately $42,000.00 to the IRS for prior income taxes. Trashelle testified that she has been paying $2,200 a month for this IRS tax debt since July 2022, even though John refused to share the community income throughout this proceeding. Trashelle testified that she is terrified and possesses no knowledge about the potential tax liability that she may face post-divorce due to John's failure to disclose tax information related to income, assets, or entities. As such, Trashelle requests that this Court allocate to John any and all State and Federal tax liability, penalties, interest, or debt owed by the parties, or any entity in which either party has an interest,

---

[6] *See* Petitioner's Exhibit 19.
[7] Trashelle provided testimony that Crystal Byington was a managerial employee at HMH Construction.

in accordance with Trashelle's proposed Judgment and Decree of Divorce, attached hereto as Exhibit "A."

### B. The Parties' Parenting and John's Disregard for the Wellbeing of his Family.

Prior to the trial date in this case, the parties entered into a stipulation regarding a parenting schedule. However, because John has outwardly and repeatedly refused to abide by this Court's orders throughout the duration of this case, the Court determined on the record that it would refuse to enter the parties' custody stipulation because it was apparent that John would refuse to abide by the Court's Judgment pertaining to custody as well. Instead, the Court heard evidence at trial regarding a custody schedule that would serve the best interests of the minor children.

Trashelle requested that the Court award her sole legal custody and primary physical custody of the children, with John receiving reasonable rights to visitation during the second weekend of each month from Friday until Sunday. Trashelle also requested custody of her children during each major holiday while allowing John some visitation time with the children on Christmas Day.[8] Trashelle testified that she had originally entered into a stipulation because she believed that, in most circumstances, the Court system nearly always awarded parenting time to the other party, and that John had previously threatened that he would fight her in the divorce matter if she pursued custody of the children. Trashelle also testified that she was concerned that John would use the fact that she had sought therapy prior to filing the Petition for Divorce against her for custody purposes in this proceeding.[9]

---

[8] *See* Petitioner's Exhibit 102.

[9] Trashelle also testified that Matthew Taylor, the parties' former attorney, had paid for Trashelle's therapy costs when she saw a therapist in 2021. On June 2nd, 2023, Trashelle texted her former therapist, Dina Denney, to ask whether Matthew Taylor had paid the cost of her counseling sessions at the time. Ms. Denney confirmed in writing that Mr. Taylor paid for her sessions. *See* Petitioner's Exhibit 106. Trashelle has no knowledge as to how Mr. Taylor paid this expense.

Trashelle testified that John previously engaged in physical abuse during their marriage by strangling her, hitting her, and raping her; Trashelle testified that she had recorded a video depicting the injuries she suffered from the strangulation and rape, and she has since filed a police report in 2023 regarding this incident. Trashelle testified that she was extremely concerned that John would lose his quick temper and direct his extreme anger towards the children. Trashelle also testified that John never prioritized the children: he had never once been to any of his daughter's gymnastic events even though Trashelle provided John with her gymnastics schedule, nor did John pay his wife to allow her to maintain and continue to pay for the children's health insurance. Trashelle has been forced to enroll the children in Medicaid because John continuously refused to share community income in the Court-ordered sum of $50,000.00, despite John drawing millions of dollars and receiving a W-2 income from HMH Construction, LLC, in 2022. John further did nothing when Trashelle informed him that she could not afford to pay their children's school tuition; the sole reason that the children were able to complete their schooling in the current institution was because family friends, Bridget and Lucas Hanson, generously paid the kids' tuition for the remainder of the school year. When Trashelle informed John that their son would be starting football in June 2023, John told her that he could not make it to his son's football games because he would be too busy racing.

Trashelle testified that she has always been the parent to schedule the children's doctor's and dental appointments, to enroll the children in extracurricular activities like gymnastics and football, to ensure that the children always wear their seatbelts when riding in a vehicle, to ensure that they have clothes that fit them, to ensure that they are enrolled in summer activities (Trashelle is trying to enroll the children at the YMCA this summer), to ensure that they go to school, and to generally ensure that they are happy and healthy. Trashelle provided testimony that the children

are her top priority. During this case, Trashelle began to sell personal items on Facebook Marketplace and hosted garage sales in order to obtain cash for the kids; because John refused to share the community income, Trashelle has been forced to sell personal property to obtain clothing for her children, who had outgrown their prior clothes. John, on the other hand, paid for dinners with his children at Chandler's (Idaho's only Michelin-star restaurant), and purchased toys during his parenting time while his wife—the primary parent to his children—continued to scrape by financially.

John has consistently placed racing above his family, his businesses, his employees, his business partners, his debt obligations, and his investors: John's former controller at HMH Construction, Sherri Byington,[10] withdrew her retirement and maxed out credit cards in order to fund HMH Construction, which John has now placed in bankruptcy.[11] John and several of the community businesses are involved in over 5 different lawsuits across multiple states, and there are default judgments entered against John and community business entities in Idaho that total over $1 million dollars—both Washington Trust Bank and Idaho Central Credit Union (ICCU) obtained default judgments against John and HMH Construction, LLC. Trashelle's own stepfather, Joel Mikasa, filed a lawsuit against John and HMH Construction in June 2022. Steel National LLC, owned by Lucas and Bridget Hanson, filed a lawsuit against John Odom, Skyline Homes and Development, HMH Construction, and Dale Newberry in February 2023.[12] Lucas and Bridget Hanson were once very close friends with the Odoms; they generously paid the Odom children's school tuition throughout the remainder of the school year during this divorce proceeding. John Odom has not only continuously refused to pay his debts owed to financial institutions and lenders

---

[10] *See* Petitioner's Exhibit 14.
[11] *See* Petitioner's Exhibit 14 and 19.
[12] *See* Petitioner's Exhibit 29.

throughout this divorce matter, but he has also refused to pay his debts owed to friends and family members.

John failed to provide any accounting or documentation whatsoever during this proceeding regarding draws that he took from community businesses or business loans, such as the loan through Builders Capital. Petitioner's Exhibit 14 depicts evidence that John Odom was withdrawing funds from HMH Construction for use with Odom Racing, LLC, and Trashelle testified that John routinely used funds withdrawn from HMH Construction for purposes of funding his racing hobby. John also failed to provide documentation in this case regarding the loans received from financial institutions in New York, including Blue Elephant Financing, LLC, Meged Funding Group Corp, Alva Advance, LLC, and BMF Advance, LLC.[13] Trashelle testified that John's main priority has never been his children; John will use people until they no longer benefit him—this is demonstrated through John's intentional disregard for financial health of his family, disregard for the lawsuits filed against him and his entities, disregard for the debts owed to his friends and family members who have invested or used their own resources for John's own benefit, disregard for the bankruptcy proceeding, and disregard for the orders entered by this Court. John Odom did not even bother to appear for two of three days of his own divorce trial because he was traveling for racing purposes.

### C. Conflicting Testimony Regarding Undisclosed Funds Held for John in an Attorney Trust Account and John's Criminal History.

Shaun Buck testified at trial that in 2022, Matthew Taylor informed Mr. Buck that he was holding funds in his own attorney trust account for Mr. Odom for Mr. Odom's use during his divorce matter. Mr. Buck testified that Mr. Taylor offered to do the same for him, but Mr. Buck

---

[13] Blue Elephant filed a foreign judgment against HMH Construction and John individually, Case No. CV01-23-01396. *See also* Petitioner's Exhibit 28. This is just one of many lawsuits that has been filed against HMH Construction and John individually. *See* Petitioner's Exhibits 25 through 30.

PETITIONER'S CLOSING ARGUMENT - 11

declined the offer. Mr. Buck testified that Mr. Taylor did not inform him as to how much money Mr. Taylor was holding for Mr. Odom in his attorney trust account. After Mr. Buck's testimony, Petitioner thereafter called Mr. Taylor as a witness. Mr. Taylor testified that he had never held funds in his attorney trust account to allow Mr. Odom to evade disclosure of the funds during the divorce proceeding, in direct contrast to Mr. Buck's testimony just minutes prior.

While Mr. Taylor testified that he had never provided legal advice to John or any of his entities related to this divorce proceeding, Mr. Taylor also testified that he had loaned $300,000.00 to John Odom on July 11th, 2022, the same day that John texted his personal assistant, Kathryn ("Katie") Waggaman, "We have Matt at 11 for the financial stuff for my divorce."[14] Mr. Taylor testified that the purpose of the loan was not related to "financial stuff for [John's] divorce," but to provide John with funds to keep HMH Construction business operations running. Mr. Taylor further testified that he received full repayment of his $300,000.00 loan from John via check from Lennar Homes of Idaho, plus an additional payment of about 7% interest on his loan to John, for a total payment of $321,662.50.[15] All of this occurred during the pendency of this divorce proceeding in July 2022 but was not disclosed until 2023 by Mr. Taylor. John never provided any documentation related to this transaction with Mr. Taylor.

Further, even though Mr. Taylor testified that he represented John and his businesses for several years, and even though he personally loaned $300,000.00 to John for the alleged purpose of maintaining HMH Construction business operations, Mr. Taylor could not seem to recall any information about business entities that his own law office formed for John. One such business entity is Invictus Capital, LLC, which the Taylor Law Offices helped John create. Mr. Taylor could provide no testimony whatsoever as to why Invictus Capital, LLC was formed, nor could Mr.

---

[14] *See* Petitioner's Exhibits 23 and 24.
[15] *See* Petitioner's Exhibit 24.

Taylor provide any clear testimony as to why his office helped form the Mosey Hill Community Association, Inc., or the Crescent Lake Community Association, Inc. Mr. Taylor further testified that he had never provided to John or any of his entities any legal advice related to this divorce proceeding, despite the fact that Mr. Taylor's own records provide that he had, in fact, submitted an entry on his billing/activity records for John/HMH Construction for "additional divorce issues (all companies)" on October 6th, 2022, and further submitted an entry for John/HMH Construction for "Business Legal Advice RE: Divorce" on November 4th, 2022.[16]

It is worth noting that Mr. Taylor provided confusing and conflicting testimony where he attempted to distinguish between an "Activities Report" and a "Matter Report," which both highlighted work that the Taylor Law Offices performed for John and his entities. The fact remains that Mr. Taylor's *own records* include descriptions and entries that expressly state that Mr. Taylor provided legal advice related to this divorce proceeding to John and his entities.[17] Mr. Taylor also provided testimony at this divorce trial that he assisted John and his entities "navigate" the divorce, while later providing conflicting testimony that he had never once given legal advice to John, or his entities, related to this divorce proceeding. Mr. Taylor's testimony is not credible. As such, Trashelle requests that this Court consider as omitted assets any undisclosed community funds, including any undisclosed funds held for John in any attorney trust account.

Further, John Odom is a felon with several convictions in the State of Idaho and Louisiana for crimes involving dishonesty. In 2002, John Odom was booked and processed for the three

---

[16] *See* Petitioner's Exhibit 99.
[17] When the Court questioned Mr. Taylor regarding his representation as the "Odom Family Attorney," Mr. Taylor confirmed that he had held himself out to be the "Odom Family Attorney" during the parties' marriage. Further, Trashelle testified at trial that there was never a time during her marriage to John where she *did not* believe that Mr. Taylor was her attorney.

different warrants: according to the police report, Petitioner's Exhibit 18, the warrants included

the following:

> One warrant was out of the Twin Falls Police Department for six counts of issuing an
> insufficient funds check, three counts of grand theft, and one count of forgery. The second
> warrant was out of Kimberly Police Department for four counts of issuing an insufficient
> funds check. The third warrant was out of Twin Falls County for three counts of issuing
> insufficient funds checks. Each was a felony warrant, with a bond of $10,000.[18]

John Odom served time in prison for his crimes; Trashelle testified that after serving time, John

could not own a bank account in his name, presumably as part of the terms of his parole. John

thereafter used bank accounts that were listed in the names of other individuals as an alternative.

For example, Trashelle testified that one such account that John had used was in the name of an

individual Jeffrey ("Jeff") Fletcher, until Mr. Fletcher's relationship with John soured. Trashelle

also testified that John applied for and received credit cards in her own name; Trashelle testified

that on one occasion, John applied for a credit card in her own name while she was taking a shower.

Further, ICCU alleged in its November 2022 civil complaint against John Odom that John had

committed fraud in a "check-kiting" scheme, which is a form of check fraud.[19] In its complaint,

ICCU alleged the following:

> 16. That Defendants, and each of them, instituted, orchestrated, and/or performed a
> fraudulent check kiting scheme, whereby (i) John Odom signed NSF checks issued by
> HMH, as drawer, on HMH's checking account maintained at Cendera Bank, N.A., account
> no. *****9391 (the "Cendera Bank Checking Account"), that were made payable to HMH,
> as payee, (ii) then such NSF checks were deposited into HMH's checking account
> maintained at ICCU, account no. *****6144 (the "ICCU Checking Account"), (iii) then
> HMH would issue checks drawn on its ICCU Checking Account before ICCU was able to
> verify if the Cendera Bank checks would be honored and paid, and (iv) then when the
> Cendera Bank checks were dishonored, the ICCU Account had a material negative balance
> in the sum of $672,849.63.
>
> 17. This check kiting process occurred for at least the period of time from July 2, 2022,
> through September 6, 2022, as is evidenced by at least the following checks written on the

---

[18] *See* Petitioner's Exhibit 18, BATES-Stamp 656.
[19] *See* Petitioner's Exhibit 30.

HMH Cendera Bank Checking Account, signed by John Odom, made payable to HMH, and deposited into the HMH ICCU Checking Account (the "Checks"):

(1) Check No. 001004 dated July 4, 2022, in the sum of $250,000.00;
(2) Check No. 001019 dated August 9, 2022, in the sum of $350,000.00;
(3) Check No. 001015 dated August 21, 2022, in the sum of $250,000.00;
(4) Check No. 001016 dated August 29, 2022, in the sum of $250,000.00; and
(5) Check No. 001004 dated September 6, 2022, in the sum of $250,000.00.

18. All of the Checks were dishonored by Cendera Bank for non-sufficient funds in the Cendera Bank Checking Account.[20]

Trashelle testified that she had zero knowledge of the Cendera Bank Account or the Veritex bank accounts identified in Petitioner's Exhibit 100, nor does she have knowledge as to why either account existed.

Trashelle has placed herself in therapy and has placed Scarlett Odom, the parties' 5-year-old, in therapy as well. Trashelle testified that she intends to enroll the parties' 3-year-old, Holland, in therapy when he turns 5 years old. Trashelle testified that she anticipates that John will return to prison, and she has been trying to prepare herself as to how she will explain this to the children.

**D. The Parties' Assets and Debts, and John's Refusal to Disclose Information.**

**1. Business Entities**

John Odom formed a number of business entities throughout the parties' marriage. These entities include, but may not be limited to, the following: Odom Racing LLC, Odom Motorsports LLC, Odom Group LLC, Invictus Capital LLC, HMH Construction LLC, Skyline Homes and Development LLC, Skyline Odom, LLC (50% owner of Skyline Homes and Development), Crescent Lake Community Association, Inc., Mosey Hill Community Association, Inc., and Rue Oil, LLC. The parties also formed the Odom Living Trust during their marriage.

---

[20] *See* Petitioner's Exhibit 30.

HMH Construction, LLC, filed Chapter 11 Bankruptcy in April 2023. Trashelle provided a list of assets and debts associated with the bankruptcy as Petitioner's Exhibit 100.

Due to John's failure to disclose documents in this case, Trashelle does not have knowledge regarding the assets or debts that each of these entities may hold or own. Trashelle also testified that she does not have knowledge regarding the assets held by the Odom Living Trust, but that she intends to dissolve the trust upon the conclusion of this divorce proceeding. Trashelle requests that this Court consider the business entities as omitted assets in the final judgment in this matter, consistent with the form outlined in the proposed Judgment and Decree of Divorce attached hereto as Exhibit "A."

### 2. Properties and Developments

The following properties, projects, and/or developments are owned, partially owned, potentially owned, or are being developed by John Odom or an entity in which John has an ownership interest: Thunder Ridge (CanAda Rd., Star, ID 83669), Crescent Lakes (Kingsbury Rd., Middleton, ID 83644), Lakes of Telaga (Kingsbury Rd., Middleton, ID 83644), Mystic Creek (6501 N. Mystic Creek Ave. Meridian, ID 83646), Brookway North (6001 W. Beacon Light Rd. Eagle, ID 83616), Scarlett Ridge (20666 Middleton Rd., Caldwell, ID 83605), and Newberry Estates (Ten Mile Rd., Meridian, ID 83642), 3516 Black Butte Ct., Nampa, ID 83687.[21]

Dale Newberry, John's business partner and 50% owner of Skyline Homes and Development (Skyline Odom, an entity that John owns, is the other 50% owner of Skyline Homes), testified in his deposition on October 19th, 2022, that Vista Rim was a project/property that John owned, but Skyline Homes and Development was not involved in the project.[22] According to Mr. Newberry, the developments/properties at Thunder Ridge, Crescent Lakes, and Lakes of Telaga

---

[21] *See* Petitioner's Exhibit 69.
[22] *See* Petitioner's Exhibit 11, page 47, lines 23-25 and page 48 lines 1-23.

were all were listed for sale.[23] Mr. Newberry testified in his deposition that though Newberry Place was not "formally" listed, he would have listed the property had Jennie Johnson brought a prospective buyer to his attention.[24]

Mr. Newberry testified during his deposition that he has no knowledge as to the Brookway North development.[25] He also stated that he believes that John does not own Scarlett Ridge, but that he has earnest money on the property and it was pending engineering.[26] Odom Group, LLC purchased the Brookway North Property for $11 million on January 6th, 2022; John paid $25,000.00 in earnest money for the property.[27] Trashelle testified that she has no knowledge at all as to how John obtained the money to purchase this property or which financial lender loaned John the money to purchase the Brookway North property. John did not disclose any information about the purchase of this property or its current status throughout this proceeding.

Due to John's failure to disclose documents in this case, Trashelle is unaware of the present status of each of the aforementioned developments or properties. Trashelle requests that this Court consider these properties, and any other undisclosed community properties or developments, omitted assets in the final Judgment in this matter.

The parties own a home located at 6358 S. Bosch Way, Meridian, ID, 83642. Trashelle and the children currently reside in this home. Trashelle requests that this Court award her the home located at 6358 S. Bosch Way, Meridian, ID, 83642, subject to the mortgage. Further, Odom Group LLC also purchased a property in January 2022 located at R-8 War Bonnet Canyon Ranch, Hulett, WY 82720.[28] To the best of Trashelle's knowledge and understanding, this property has not been

---

[23] *See* Petitioner's Exhibit 11, page 55, lines 10-25.
[24] *See* Petitioner's Exhibit 11, page 56, lines 22-23; page 57, lines 1-11.
[25] *See* Petitioner's Exhibit 11, page 55, lines 17-19.
[26] *See* Petitioner's Exhibit 11, page 55, lines 20-25; page 56, lines 16-21
[27] *See* Petitioner's Exhibit 33.
[28] See Petitioner's Exhibits 58 and 59.

foreclosed upon and remains a viable community asset. Trashelle requests that this Court award her the Wyoming property, subject to any mortgage that may be connected to the property.

### 3. Vehicles

The parties have acquired certain vehicles during the marriage. Trashelle previously leased a 2022 Audi RS Q8, which was repossessed after she could not make the monthly payment on the vehicle. Trashelle is currently driving the parties' Cadillac Escalade, which has been included on the bankruptcy list of assets for HMH Construction, LLC. Other vehicles that have been owned or leased by the parties or by the parties' entities include the following: a 2021 Bentley Bentayga, the Odom Racing Semi-Truck, the Odom Racing Trailers, a Nissan GTR 50th Anniversary Edition, a 2019 GTR Nismo, a Ferrari 488 Pista, a 2019 GMC Yukon, a 2020 GTR 40th Anniversary Edition, a 2009 GTR Drag, and a 2017 Focus RS.[29] Matthew Taylor also testified that Odom Motorsports LLC was originally formed by the Taylor Law Offices as a holding company for the racing vehicles. Trashelle requests that this Court award her all vehicles except the Cadillac Escalade, in accordance with the PDS attached hereto. Trashelle requests that any and all undisclosed vehicles be considered omitted assets by this Court.

### 4. Personal Property and Bank Accounts.

The parties previously rented a penthouse in Dallas, Texas, from which they had been evicted because John failed to make payment or provide Trashelle with the funds to pay the property's rent. The parties had furnished the penthouse with household items and furniture, including a $15,000.00 couch; trial testimony indicates that all of this furniture is currently in John's possession. Trashelle requested that the Court award her all personal property in her possession and the penthouse furniture and goods in John's possession, in accordance with the

---

[29] *See* Petitioner's Exhibits 2, 21, and 57.

PDS attached hereto. Trashelle testified that John has purchased expensive watches, but she does not have knowledge as to which watches are currently in John's possession. Trashelle requests that this Court consider John's watches omitted assets in the final Judgment in this matter.

Trashelle also requested that the Court award her line items 39 through 47, which include Trashelle's ICCU personal checking and savings accounts, a vacation savings account, and her children's savings accounts. Trashelle further requests that this Court award her the New York Life Insurance policy, line item 48 on the attached PDS. John did not produce any documentation regarding his financial accounts, or the financial accounts held by any entity in which John has an ownership interest. As such, Trashelle requests that this Court consider John's accounts, including but not limited to any undisclosed business accounts, as omitted assets.

### 5. Debts

Petitioner's Exhibit 100 includes a list of all creditors and debts owed by HMH Construction, LLC and John Odom (as a co-debtor); pages 11 through 22 of Petitioner's Exhibit 100 includes a list of all secured creditors and the amount of the claim. Pages 23 through 44 of Petitioner's Exhibit 100 includes a list of all unsecured creditors and the amount of their claim, if known. Included in the list of unsecured creditors are the Idaho State Tax Commission, the Internal Revenue Service (IRS), Blue Elephant Financing, BMT Capital Group, Inc., Conrad Bischoff, ICCU, Joel Mikasa, Red Butte LLC, Steel National, and Washington Trust Bank. Turbo Air secured a default judgment entered against John individually in the amount of $192,205.93 (Case No. CV01-23-00847), and Idaho First Bank filed a lawsuit against John individually on May 12th, 2023 (Case No. CV01-23-07825). During the parties' marriage, John opened an American Express credit card in both Trashelle's name and in the name of HMH Construction, LLC. John thereafter incurred over $200,000.00 in credit card debt on this credit card, leaving Trashelle and HMH

Construction owing hundreds of thousands of dollars. This debt to American Express is presumably listed in the bankruptcy proceeding: American Express is listed as an unsecured creditor with a claim totaling $218,000.00, with Trashelle Odom listed as a co-debtor with HMH Construction, Inc. The American Express debt in Trashelle's name cannot be allocated because it is listed as a debt in the bankruptcy proceeding; as such, Trashelle requests that this Court consider this debt omitted until the conclusion of the bankruptcy matter. Trashelle thereafter intends to file a petition to divide the community debt with this Court and to allocate the entirety of this debt to John.

During his October 2022 deposition, Dale Newberry testified that Skyline Homes and Development secured a $50 million line of credit through Builders Capital,[30] and about $31 million of the Builders Capital debt has been used[31] and personally guaranteed by Dale Newberry and John Odom, according to Mr. Newberry's deposition testimony.[32] Mr. Newberry also testified that the only reason he believed that John does not have any money was Mr. Newberry "Watch[ed] the condition around his office and everybody scrambling, and he's cut labor and all these things that you have to do when you're out of money," though Mr. Newberry also testified that he had not seen John's financials.[33] The following questioning occurred in Dale Newberry's deposition on October 19th, 2022:

> Q: (BY MR. LUDWIG) And you're confident [...] that [John] hasn't overbilled any of these projects such that the loan balance is higher?
> A: Well, I'm not a construction guy. I just take [John's] word for it. He's --
> Q: You're not concerned about that?
> A: No.
> Q. You're not concerned that he may have overbilled a million dollars, for example, for work which drew down your line of credit that you're --
> A: No.

[30] *See* Petitioner's Exhibit 11, page 26:14-21.
[31] *See* Petitioner's Exhibit 11, page 26:19-21.
[32] *See* Petitioner's Exhibit 11, page 26;11-21 and page 34:2-7.
[33] *See* Petitioner's Exhibit 11, page 63; 11-20.

> Q: -- personally guaranteeing?
> A: No.
> Q. You have zero concern about that?
> A. Right.[34]

Mr. Taylor also testified at trial that he had never seen an accounting for the Builder's Capital loan, nor had Trashelle seen any documentation whatsoever about the Builder's Capital funds. John did not produce any documents whatsoever regarding the draws that he had taken from the Builder's Capital loan, and thus it is unknown whether draws from Builders Capital were *actually used* for Skyline Homes projects or developments such as Thunder Ridge, Telaga Lakes, or the Crescent Lakes subdivision. Given John's criminal history, his history of taking funds from HMH Construction and diverting it for purposes of racing, and his history of opening and using credit cards in the names of other individuals, it is entirely possible that John diverted funds from the Builders Capital loan for purposes unrelated to Skyline Homes or any project, subdivision, or development. Trashelle requests that any bank accounts or funds not disclosed by John in this proceeding be considered omitted assets.

Trashelle requests that this Court allocate to John any and all debt related to the Builder's Capital loan. Trashelle requests that this Court allocate to John any and all State and Federal tax liability or debt owed by the parties or any entity in which John has any interest, and all debts personally guaranteed by either party, and any and all debts acquired by either party or any entity formed during the parties' marriage, including, but not limited to, any and all credit card, business loan, student loan, personal loan, installment, revolving, medical, promissory note, lien, civil judgment, criminal restitution, secured, unsecured, or any other kind of debt acquired by either party or any entity formed during the parties' marriage. Trashelle requests that any community debts included or listed in any bankruptcy proceeding shall not be divided pursuant to this

---

[34] *See* Petitioner's Exhibit 11, page 52:15-25; page 53:1-6.

Judgment and shall be considered an omitted debt. Trashelle's proposed Judgment and Decree of Divorce, consistent with the testimony provided at trial, is attached hereto as Exhibit "A."

**E.    Trashelle's Request for Attorney's Fees and Reimbursement of John's Dissipation of the Community.**

During this proceeding, Trashelle requested all PayPal records and any other documentation indicating the amount of funds that John spent to purchase sex with or gifts for his extramarital affairs during the marriage. John refused to disclose this information despite this Court's Order compelling him to do so on November 29th, 2022. After this Court entered its Order for Sanctions in March 2023, Trashelle served a subpoena on PayPal, Inc., to obtain the records related to John's PayPal accounts. The records provided by PayPal were entered into evidence at trial as Petitioner's Exhibit 96, which is a large excel spreadsheet with thousands of transactions. For expediency purposes, the Court requested that Trashelle provide an exhibit with only the relevant disputed transactions, which this Court admitted into evidence as Petitioner's Exhibit 101.

Trashelle's Exhibit 101 indicates that John paid Mary Risener, one of John's extramarital affairs, a total of $97,500.00 in community funds between November 2020 and September 2021. Ms. Kennalee Smart is also included on this list; Ms. Smart submitted a Declaration in June 2022 stating that John paid her $2,000.00 in exchange for sex. Petitioner's Exhibit 101 documents this transaction—according to the PayPal records, John paid Kennalee Smart $2,000.00 in May 2021. John further paid numerous other women; Trashelle testified that she understands the women listed on Petitioner's Exhibit 101 to be some of John's extramarital affairs. Trashelle testified that John paid a total of $122,434.70 in community funds on extramarital affairs. The PayPal records further indicated that John Odom used a debit account at Washington Trust to pay the funds to the various women.

Trashelle testified that she contracted a sexually transmitted disease (STD) as a result of John's sexual relations with women outside of her marriage. John has not only dissipated over $100,000.00 in community funds on extramarital affairs, but he has also permanently changed her life and negatively impacted her health as a result of his own egregious behavior. Trashelle filed a lawsuit against John in May 2023, which includes a claim of sexual battery against John. *See* Case No. CV01-23-08442. Trashelle requests that this the Court enter a Judgment that John pay her the $122,434.70 that he spent on extramarital affairs.

Trashelle further testified that she requests that this Court enter a judgment against John requiring John to pay the entirety of her attorney's fees associated with this divorce proceeding.[35] Trashelle's request for attorney's fees is based upon the expenses and costs incurred as a result of John's noncompliance with Court Orders and use of frivolous litigation tactics throughout the entirety of this divorce proceeding, including his outright refusal to provide complete and accurate responses to discovery requests. A large portion of Trashelle's attorney fees would not have been incurred but for John's behavior during this matter.

## IV.    LAW AND ANALYSIS

Trashelle is requesting an unequal division of the community estate in her favor under Idaho Code §32-712. Trashelle respectfully requests the Court to award her an unequal division of assets in her favor as specifically set forth in Petitioner's PDS, which is attached hereto as Exhibit "C." She also requests spousal support in the amount of $50,000.00 monthly for 10 years, that she be entitled to recuperate funds that John spent on extramarital affairs during the marriage (the sum of $122,434.70), and that John's income be imputed at $500,000.00 for purposes of calculating child and spousal support. Regarding custody, Trashelle requests that she receive sole legal and

---

[35] Trashelle would submit to the Court an Affidavit of the attorney's fees incurred in this case, with redaction of any attorney-client privileged information or material, within fourteen (14) days upon entry of the Judgment.

primary physical custody of Scarlett and Holland Odom, with John receiving reasonable rights to visitation during the second weekend of each month. Trashelle requests that she receive custody of the children during major holidays, with John receiving visitation time with the children on Christmas day during even years. Trashelle has submitted a proposed child support calculation with the parties' imputed incomes, attached hereto as Exhibit "C." Trashelle also requests that John pay her the community income that he refused to pay during this divorce proceeding, as ordered by this Court in its June 2022 temporary order; a total of $478,000.00, within ninety (90) days upon entry of Judgment.

Finally, Trashelle requests that John pay the balance of her attorney's fees, in full, within thirty (30) days upon entry of the Judgment and Decree of Divorce.

**A.    This Court Should Award Trashelle Sole Legal and Primary Physical Custody of the Children.**

Idaho law regarding child custody states the following:

**32-717.  Custody of children - Best interest.**

(1).  In an action for divorce the court may, before and after judgment, give such direction for the custody, care and education of the children of the marriage as may seem necessary or proper in the best interests of the children.  The court shall consider all relevant factors which may include:

a)    The wishes of the child's parent as to his or her custodian;
b)    The wishes of the child as to his or her custodian;
c)    The interaction and interrelationship of the child with his or her parent or parents, and his or her siblings;
d)    The child's adjustment to his or her home, school and community;
e)    The character and circumstances of all individuals involved;
f)    The need to promote continuity and stability in the life of the child; and
g)    Domestic violence as defined in section 39-6303, *Idaho Code*, whether or not in the presence of the child.

It is undisputed that Trashelle has spent the past decade of her life as a stay-at-home mom, raising the parties' children, feeding them, involving them in sports and the community, and generally supporting them as a parent. John has only continued his repugnant behavior towards the children and their mother that he engaged during the parties' marriage: he has continuously placed himself and his racing hobby as his top priority. John constantly travels and remains absent in the children's lives; John told Trashelle that he could not attend his son's football events this summer because he would be too busy racing, and John has never once attended any of his daughter's gymnastic events.

John's refusal to share income with Trashelle forced her to remove the children from their current school because she can no longer afford to pay the school tuition. Bridget and Lucas Hanson, who were once good friends with the Odoms, generously offered to pay the Odom children's school tuition so that they could finish the remainder of the 2022-2023 school year. Trashelle has enrolled the children in a different school for the fall of 2023 because she cannot afford tuition for their current school. Trashelle and the children have been forced to rely upon the generosity of others to help them financially, despite the fact that John drew nearly $3 million dollars from HMH Construction in 2022, not including his W-2 income. John's refusal to share community income has also forced Trashelle to place her children on Medicaid because she could no longer afford the cost of her children's private medical insurance.

Trashelle began selling personal items throughout this divorce proceeding in order to obtain cash to pay community bills. One community vehicle has already been repossessed, and Trashelle is waiting for the Bentley in her garage to be repossessed any day because she has been unable to pay the lease. Trashelle currently drives a Cadillac Escalade that is listed as an asset in HMH Construction's bankruptcy proceeding; it is only a matter of time before she loses that

vehicle as well. After the Cadillac is liquidated by the bankruptcy proceeding, and after the Bentley is repossessed, Trashelle will not possess an alternative vehicle for herself and the children. Trashelle presently cannot afford to purchase a vehicle. John's selfish refusal to share community income has left his family without many resources that they once enjoyed prior to this divorce proceeding.

While it is uncertain how John continues to fund his racing hobby after filing Chapter 11 bankruptcy for HMH Construction, LLC, it is certain that John will continue to ignore the needs of his children as he has consistently done throughout the parties' marriage.

Further, evidence indicates that Trashelle has endured several instances of domestic violence perpetrated by John. Trashelle testified that John strangled her, hit her, and raped her during their marriage, and that she has now filed a police report. Trashelle testified that John has an extreme temper and that he will scream at his own children when provoked. John has further endangered the lives of their children by allowing them to ride in vehicles without a seatbelt. Trashelle also testified that John has endangered her own health by transmitting an STD to her; John's egregious behavior of engaging in unprotected sexual relations with women outside of his marriage, and thereafter engaging in sexual relations with Trashelle (without her knowledge or consent that he was engaging in extramarital relations), has permanently and negatively impacted Trashelle's life and health.

John has an extensive criminal history of crimes involving fraud and dishonesty. Trashelle is very concerned that John will return to prison; she is worried about how she will tell her children if that time arrives.

Pursuant to the factors outlined in Idaho Code §32-717, it is in the best interests of the minor children, Scarlett and Holland, that Trashelle receive primary legal and physical custody of

the children. Trashelle has already been required make major decisions without John's input as a parent because John does not care, nor does he have any consistent presence in his children's lives. John has refused to provide financial support or resources to his wife to allow her to pay for their children's school tuition, for their health insurance, or for a stable and reliable vehicle to drive the kids around. John continues to engage in his expensive racing hobby as though nothing is wrong. John has been absent from children's birthdays, holidays, and sporting events because John places racing before his own family.

Trashelle has been physically abused by her husband and testified that John becomes very angry with his children as well. Trashelle is further concerned that John will return to prison and remain absent from the children's lives more permanently. Trashelle is the parent who will best promote continuity, stability, and safety in the children's lives. Pursuant to Idaho Code §32-717, it is in the best interest of the minor children that Trashelle receive sole legal and primary physical custody in accordance with the schedule outlined in the proposed Judgment attached hereto.

**B.**     **This Court Should Award an Unequal Division of Assets in Trashelle's Favor.**

This is a 5-year marriage where Trashelle has been a stay-at-home mom to two children of the marriage (and a third child from a prior relationship) and supported John while he built several businesses. Trashelle quit her previous job at Dillard's when she first began dating John at the age of 24. Trashelle is now 33 years old and has not been employed for nearly a decade. Trashelle did not graduate from high school, and she has no college education. John, on the other hand, will continue managing construction, real estate, and racing businesses (among other unknown businesses) after this divorce. John continues to fund wildly expensive racing operations, though the source of these funds was not disclosed; John has destroyed the marital estate by diverting assets for his own benefit at the expense of others and, therefore, Trashelle requests an unequal division of all viable assets in her favor under Idaho Code Section §32-712.

The trial court has the discretion to make a just division of the community property; the division must be substantially equal in value unless there are compelling reasons to do otherwise. *Ross v. Ross*, 117 Idaho 548, 789 P.2d 1139 (1990). The determination whether there are compelling reasons to justify an unequal division of community property is within the discretion of the trial court. *Maslen v. Maslen*, 121 Idaho 85, 89, 822 P.2d 982, 986 (1991). Idaho Code Section 32-712 provides:

> In case of divorce by decree of a court of competent jurisdiction, the community property and the homestead must be assigned as follows:
> (1) The community property must be assigned by the court in such proportions as the court, from all the facts of the case and the condition of the parties, deems just, with due consideration of the following factors:
>> (a) Unless there are compelling reasons otherwise, there shall be a substantially equal division in value, considering debts, between the spouses.
>> (b) Factors which may bear upon whether a division shall be equal, or the manner of the division, include, but are not limited to:
>>> i. Duration of the marriage;
>>> ii. Any ante-nuptial agreement of the parties; provided, however, that the court shall have no authority to amend or rescind any such agreement;
>>> iii. The age, health, occupation, amount, and source of income, vocational skills, employability, and liabilities of each spouse;
>>> iv. The needs of each spouse;
>>> v. Whether the apportionment is in lieu of or in addition to maintenance;
>>> vi. The present and potential earning capability of each party; and
>>> vii. Retirement benefits, including, but not limited to, social security, civil service, military and railroad retirement benefits.

I.C. § 32-712. The factors in Idaho Code §32-712 support a division of property with Trashelle receiving more than one-half of the total value of the parties' net assets, such as Trashelle's lack of education, work experience, and long gap in her employment.

Several factors set forth under Idaho Code Section 32-712(1)(b) support Trashelle's position that there should be an unequal division in her favor, and compelling reasons exist for making an unequal division of the community estate in her favor. The disparities in this case are great: this is a five-year marriage where John leaves this marriage with substantial income and the

means to continue operating a construction, real estate, and racing business. Trashelle's needs are also substantial: she will require financial support given that she will be the primary parent to the parties' two children with significant future expenses. Trashelle testified that a $20,000.00 budget would allow her to pay her expenses while still allowing her to maintain some semblance of the life she lived prior to this divorce proceeding.

Trashelle has continuously paid an IRS income tax debt throughout this proceeding, and she has no knowledge regarding the potential cost of property taxes associated with her residence in Meridian, ID. Trashelle has no knowledge regarding potential tax liability in general, including any possible capital gains tax that she might owe for assets sold after Judgment is entered.

The second factor under the statute is not applicable, but the third factor weighs in favor of Trashelle being awarded an unequal division in her favor. The income disparities in this case are great. Trashelle is unemployed and has remained unemployed since approximately 2013. By contrast, John swore before this Court in his June 2022 declaration that his income as CEO of HMH Construction, LLC, was $1.8 million. Evidence later showed that John took approximately $2.8 to over $3 million in draws from HMH Construction, LLC, in addition to his W-2 income. Because Trashelle has no knowledge of John's tax liability on his income or draws from the company, and because Trashelle has no knowledge as to any kind of income or tax liability John may be receiving from any other business, Trashelle requests that this Court impute John's income at $500,000.00 when determining spousal and child support. Trashelle also requests that her income be imputed at minimum wage, or $15,080.00, for purposes of calculating spousal and child support. Trashelle's proposed Child Support Calculations are attached hereto as Exhibit "B."

Finally, this Court is permitted to consider retirement benefits when making an unequal division of property. It is unclear what retirement benefits John may be receiving due to his refusal

to disclose documents during this proceeding. Trashelle does not have any retirement; she withdrew her retirement in order to fund the start of HMH Construction, LLC. As such, this factor favors Trashelle, as John refused to provide any documentation or information whatsoever regarding future retirement benefits.

This Court should allocate an uneven distribution of assets in Trashelle's favor for the above-stated reasons.

### C. This Court Should Enter Judgment that John Reimburse Trashelle Dissipated Funds.

Dissipation refers to one spouse's use of marital property for a selfish purpose unrelated to the marriage at the time when the marriage is undergoing an irretrievable breakdown. *Larson v. Larson*, 139 Idaho 972, 975, 88 P.3d 2003). Factors to consider in determining whether dissipation of marital assets has occurred include: (1) whether the expenditure benefited the marriage or was made for a purpose entirely unrelated to the marriage; (2) the timing of the transaction; (3) whether the expenditure was excessive or de minimis; and (4) whether the dissipating party intended to hide, deplete, or divert the marital asset. *Id*. at 975-976. The concept of dissipation has been applied in Idaho in the context of overcoming the presumption that expenditures made and indebtedness incurred during the marriage are for the benefit of the community. *Id*. at 976; *see also Smith v. Smith*, 124 Idaho 431, 436, 860 P.2d 634 (1993) (Expenditures made and indebtedness incurred during the marriage are presumed to be for the benefit of the community unless the spouse alleging dissipation can demonstrate that the dissipating spouse spent community funds on something other than the community).

Here, Trashelle provided testimony and documentary evidence of John's PayPal records that John expended $122,434.70 on extramarital affairs during their marriage; these payments are outlined in detail in Petitioner's Exhibits 96 and 101. Trashelle's testimony at trial highlighted her

knowledge that John engaged in numerous extramarital affairs, including an affair with a woman by the name of Mary Risener. John's PayPal records, Petitioner's Exhibits 96 and 101, show that John expended $97,500.00 in payments to Mary Risener alone, and a sum of $122,434.00 to other women in total.

John's payments of community funds to his extramarital affairs: (1) were made for an entirely selfish purpose unrelated to the marriage, (2) were made during the parties' marriage over the course of multiple years, (3) were excessive, and (4) were both diverted from the community and intended to deplete the community. John's PayPal records indicate that he paid $122,434.70 to extramarital affairs from a community debit account at Washington Trust between 2020 and 2022. Trashelle presented evidence that John has engaged in sexual or romantic affairs with at least ten different women and paid thousands of dollars both in direct funds and gifts to these women; Trashelle testified that these funds could have been placed in their children's college savings accounts or used for some other purpose that would have served as a benefit to the community. Trashelle requests that the Court allocate the total sum of funds that John expended on other women to her. Trashelle further provided evidence at trial that she has suffered health consequences as a result of John's multitude of affairs; the expenditures that John incurred in paying these women harmed the community, and, as a result, Trashelle requests that this Court enter Judgment that John pay her $122,434.70 within sixty (60) days upon entry of the Judgment and Decree of Divorce.

**D.    This Court Should Enter Judgment that John Pay Trashelle the Community Funds he Failed to Pay Pursuant to this Court's Temporary Orders.**

This Court entered a Temporary Order during the parties' divorce proceeding on June 17th, 2022, that John share the community income; this Court ordered that John provide Trashelle the sum of $50,000.00 on or before Tuesday, June 21st, 2022, and John was further ordered to

thereafter provide Trashelle the sum of $50,000.00 on the 1st day of July and continue making

payment in the sum of $50,000.00 to Trashelle on the 1st day of each month thereafter until further

Court Order. Throughout the parties' divorce proceeding, John failed to pay Trashelle $50,000.00

each month on the 1st of each month. Trashelle testified at trial that John owed her the total sum

of $478,000.00 pursuant to the Temporary Order entered by this Court on June 17th, 2022.

This Court should therefore enter Judgment against John for the sum of $478,000.00, to be

paid directly to Trashelle within ninety (90) days upon entry of the Judgment in this case.

**E.      Trashelle Should be Awarded Spousal Support.**

Trashelle should be awarded spousal support under Idaho Code § 32-705. Idaho Code §

32-705 specifically addresses the issues of maintenance payments in divorce cases and provides:

(1)    Where a divorce is decreed, the court may grant a maintenance order if it finds that
the spouse seeking maintenance:
(a)    Lacks sufficient property to provide for his or her reasonable needs; and
(b)    Is unable to support himself or herself through employment.
(2)    The maintenance order shall be in such amounts and for such periods of time that
the court deems just, after considering all of the relevant factors which may include:
(a)    The financial resources of the spouse seeking maintenance, including the
marital property apportioned to said spouse, and said spouse's ability to
meet his or her needs independently;
(b)    The time necessary to acquire sufficient education and training to enable the
spouse seeking maintenance to find employment;
(c)    The duration of the marriage;
(d)    The age and the physical and emotional condition of the spouse seeking
maintenance;
(e)    The ability of the spouse from whom maintenance is sought to meet his or
her needs while meeting those of the spouse seeking maintenance;
(f)    The tax consequences to each spouse; and
(g)    The fault of either party.

I.C. § 32-705. In interpreting the above statute, the Idaho Supreme Court has instructed:

To determine if an award of spousal maintenance is proper, we must glean the legislative
intent of Idaho Code § 32-705 and give effect thereto. *Gumprecht v. City of Coeur d'Alene*,
104 Idaho 615,661 P.2d 1214 (1983). We must not be guided by a single sentence or a part
thereto, but must look to the provisions of the entire statute and its object and policy; *Local
1494 of the International Association of Firefighters v. City of Couer d' Alene*, 99 Idaho
630, 639, 586 P.2d 1346, 1355 (1978).

*Theiss v. Theiss*, 112 Idaho 681, 683, 735 P.2d 992, 994 (1987). In *Theiss*, our Supreme Court disagreed with the appellant's contention that a person requesting spousal support is required to attempt to support himself or herself by whatever employment is available; and that only if no employment is available should a trial judge award maintenance. *Id*. Rather, the Supreme Court concluded that construing the statute as a whole, a spouse is entitled to maintenance if both the property awarded in the divorce decree, and the spouse's potential employment opportunities are insufficient to meet his or her day-to-day needs. *Id*.

> In *Campbell v. Campbell*, the Idaho Court of Appeals stated the following:
>
> Unlike an award of property, which turns upon the vested property rights of spouses, maintenance is designed solely for the support of the dependent spouse after the showing of need. The object of a maintenance order is to secure to that dependent spouse the same comforts and luxuries of life as probably would have been enjoyed had it not been for the enforced separation. Thus, when determining whether a spouse can provide for his or her reasonable needs, the court is to *take into account the standard of living established during the marriage*.

*Campbell v. Campbell*, 120 Idaho 394, 404, 816 P.2d 350, 360 (Ct. App. 1991) (internal citations omitted) (emphasis added). Seven years later, the Idaho Supreme Court again instructed that "[w]hen determining a spouse's reasonable needs, the Court is to take into account the standard of living established during the marriage." *Wilson v. Wilson*, 131 Idaho 533, 960 P.2d 1262 (1998) (holding that an award of spousal maintenance for 11 years was not excessive, and also affirming the Idaho Court of Appeals *Campbell* holding that the standard of living during marriage must be considered in determining spousal maintenance). Thus, "reasonable needs" is not a formulaic and absolute standard based upon the parties' solvency. There is no identifiable point of how much is "enough" as a matter of law. Rather, "needs" is a relative standard based upon the parties' standard of living during the marriage.

The factors outlined in Idaho Code § 32-705(2)(a), (b), (c), (e), (f), and (g) all support an award of spousal support to Trashelle. This is a 5-year marriage where the parties enjoyed a lavish

standard of living before Trashelle filed the Petition for Divorce in April 2022. Trashelle is 33 years old with three children, two of whom are very young children. Trashelle has been unemployed for nine years with no high school or college degree. John is 48 and capable of continued employment and advancement with his businesses. John is able to provide for his own needs and provide support for Trashelle's needs concurrently. Trashelle does not have sufficient income or property to provide for her reasonable needs. Trashelle is currently unemployed and faces extreme hardship in finding employment: she needs to find an employer that will hire an employee with no education credentials and a significant employment gap on her resume. This job must also allow Trashelle the flexibility to manage her children's schedules. Additionally, Trashelle testified that she is terrified of the potential tax consequences that she may face after this divorce proceeding because John has refused to disclose this information during this litigation.

John, on the other hand, earned $1.8 million in income as CEO of HMH Construction and paid Trashelle at least $20,000.00 a month via check to cover base community expenses in 2021. John withdrew approximately $3 million dollars from HMH Construction in 2022, not counting W-2 income. John started (what was previously) a successful construction business that earned substantial income for the parties, and he has the experience and capability to earn a significant income in the future. John is further capable of earning enough income to allow Trashelle and their children to enjoy a comfortable quality of life- John is able to provide for his own needs and provide support for Trashelle's at the same time, despite his refusal to do so throughout this litigation. John's own divorce attorney stated on the record that John did not appear at his own divorce trial because he was engaging in racing activities, and Trashelle provided testimony that John could not come to their son's football events because John said he would be too busy racing.

John is apparently financially capable of paying for both his legal representation and his racing hobby; surely John is capable of paying spousal support to his wife.

The final factor provided in Idaho Code § 32-705(2)(g), fault, plays a significant role in this litigation. Evidence presented at trial shows that John has continuously and repeatedly spent thousands of dollars on extramarital affairs and gifts for women with whom he has had sexual affairs. John transmitted an STD to his wife because he engaged in unprotected sex with women outside of his marriage. Notably, John also continues to waste community funds on racing activities that were expressly prohibited by an injunction entered by this Court. John has ignored legal and marital obligations and used community business resources to fund his own extramarital affairs and his racing entertainment at the expense of his wife and children. John is solely at fault for the dissipation of the community estate and his extramarital affairs, and this Court should heavily consider the factor outlined in Idaho Code § 32-705(2)(g) when determining an award of spousal support.

Pursuant to the factors prescribed in in Idaho Code § 32-705, Trashelle requests that this Court enter Judgment that awards her monthly spousal maintenance in the sum of $50,000.00 by John, beginning the 15th of the month following entry of this Judgment and Decree of Divorce, and continuing on the 15th of each month thereafter for a period of 120 months.

### F.  This Court Should Enter Judgment that John Pay 100% of Trashelle's Attorney Fees.

Idaho Rule of Family Law Procedure 902(b) provides the following:

> Attorney fees under Idaho Code § 12-121 may be awarded by the court only when it finds that the case was brought, pursued, or defended frivolously, unreasonably, or without foundation. This finding must be in writing and include the basis and reasons for the award.

*See* IRFLP 902(b). The Rule further provides that if the Court grants attorney fees to a party in a civil action it must consider the following factors in determining the amount of such fees:

(1) the time and labor required;
(2) the novelty and difficulty of the questions;
(3) the skill requisite to perform the legal service properly and the experience and ability of the attorney in the particular field of law;
(4) the prevailing charges for like work;
(5) the time limitations imposed by the client or the circumstances of the case;
(6) the time limitations imposed by the client or the circumstances of the case;
(7) the amount involved and the results obtained;
(8) the undesirability of the case;
(9) the nature and length of the professional relationship with the client;
(10) awards in similar cases;
(11) the reasonable cost of legal research, if the court finds it was reasonably necessary in preparing a party's case; and
(12) any other factor which the court deems appropriate in the particular case.

IRFLP 902(c). Here, a tremendous amount of time and labor has been required to litigate this proceeding solely because of John's refusal to comply with the rules of discovery and Court Orders. John has delayed and disrupted the judicial process to such a degree that the majority of Trashelle's attorney fees are a direct consequence of John's deplorable behavior. John's refusal to comply with the judicial process forced Trashelle to serve subpoenas to third parties when he could easily access such information himself, forced Trashelle to file motions to compel and motions for contempt, and generally forced Trashelle to incur attorney's fees that would not have been incurred had he chosen to comply with the law. John unreasonably and frivolously litigated this case in its entirety, going as far as refusing to appear at his own divorce trial. For these reasons, Trashelle requests that this Court enter Judgment that John pay 100% of Trashelle's attorney fees incurred in this divorce proceeding within thirty (30) days upon entry of the Judgment and Decree of Divorce.

## V.    CONCLUSION

Based upon the foregoing reasons, Petitioner respectfully requests the Court award her an unequal division of assets in her favor as specifically set forth in Petitioner's PDS, attached hereto as Exhibit "C." Petitioner also requests spousal support in the amount of $50,000.00 monthly for 10 years, and that she be entitled to reimbursement of community funds that John spent on his extramarital affairs during their marriage, the sum of which totals $122,434.70. Regarding custody, Petitioner requests that she receive sole legal and primary physical custody of Scarlett and Holland Odom, with John receiving reasonable rights to visitation every second weekend from Friday through Sunday, as set forth in Petitioner's proposed Judgment and Decree of Divorce attached hereto as Exhibit "A." Also attached hereto is Petitioner's proposed child support calculation with the parties' imputed incomes as Exhibit "B." Petitioner further requests that this Court enter a Judgment ordering that John pay 100% of Petitioner's attorney's fees incurred in this divorce proceeding within thirty (30) days upon entry of the Judgment and Decree of Divorce.

DATED this 23rd day of June, 2023.

LUDWIG ◆ SHOUFLER ◆ MILLER ◆ JOHNSON, LLP

By:_____

Macee B. Utecht
Attorney for Petitioner

<u>CERTIFICATE OF SERVICE</u>

    I hereby certify that on this 23rd day of June, 2023, I caused a true and correct copy of the foregoing document to be served upon the following as indicated:

| | |
|---|---|
| Aaron Morriss<br>Attorney at Law<br>Morriss Law Firm<br>1120 S. Rackham Way Ste. 300<br>Meridian, Idaho 83642 | ☐ Hand Deliver<br>☐ US Mail<br>☐ E-Mail<br>☒ iCourt / eService: morrisslaw@gmail.com |

Macee B. Utecht

SCOT M. LUDWIG, ISB 3506
MACEE B. UTECHT, ISB 11723
LUDWIG ◆ SHOUFLER ◆ MILLER ◆ JOHNSON, LLP
Attorneys at Law
401 West Front Street, Suite 401
Boise, ID 83702
Telephone: 208-387-0400
Facsimile: 208-387-1999
*scot@lsmj-law.com*
*macee@lsmj-law.com*

Attorneys for Petitioner

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF

THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| TRASHELLE ELIZABETH KALYN ODOM,<br><br>Petitioner,<br><br>vs.<br><br>JOHN IVAN ODOM,<br><br>Respondent. | CASE NO. CV01-22-05770<br><br>**JUDGMENT AND DECREE OF DIVORCE** |

JUDGMENT IS ENTERED AS FOLLOWS:

    **1.**    **DIVORCE:** Petitioner (hereinafter "Trashelle") and Respondent (hereinafter "John") are hereby granted an absolute Decree of Divorce from each other on the grounds of irreconcilable differences.

    **2.**    **CHILD CUSTODY:** The parties have two minor children: Scarlet Odom, born February 23rd, 2018 (age 5), and Holland Odom, born June 13th, 2019 (age 3).

    **A. Legal Custody:** Trashelle shall have sole legal custody of the minor children.

JUDGMENT AND DECREE OF DIVORCE- 1



**B.**    **Physical Custody:** Trashelle shall have primary physical custody of the minor children, with John receiving parenting time pursuant to the following schedule:

     i.    During the second weekend of each month, John shall have parenting time with both minor children from Friday at the end of school, or 4:00 p.m. if there is no school until Sunday at 5:00 p.m. The second weekend shall begin on the second Friday of the month.

    ii.    John shall pick up the children from school. If there is no school, Trashelle shall drop off the children at his home, and he shall return the children to Trashelle on Sunday.

**3.**    **RIGHT OF FIRST REFUSAL**: If a parent has to travel out of town on his or her parenting time the other parent shall have the right of first refusal to watch the children.

**4.**    **HOLIDAY SCHEDULE:** The parties shall follow the holiday schedule set forth below:

| Holiday | Duration | Even Year | Odd Year |
|---|---|---|---|
| July 4th | Beginning 10:00 a.m. on July 4th until 10:00 a.m. July 5th. | Mother | Mother |
| Halloween | Beginning at 4:00 p.m. or at the end of school day until 10:00 a.m. or at school start the following day. | Mother | Mother |
| Thanksgiving | Beginning at 4:00 p.m. on the Wednesday | Mother | Mother |

JUDGMENT AND DECREE OF DIVORCE- 2

| | before Thanksgiving until Thanksgiving evening. | | |
|---|---|---|---|
| Christmas Eve | Beginning at 4:00 p.m. on December 23rd until 11:00 a.m. on Christmas Day. | Mother | Mother |
| Christmas Day | Beginning at 11:00 a.m. on Christmas Day until 11:00 a.m. on December 26th. | Mother | Father |
| Easter | Beginning at 4:00 p.m. on the Saturday before Easter until 10:00 a.m. Easter morning. | Mother | Mother |
| Memorial Day Weekend | Beginning at the release of school until the return to school. | Mother | Mother |
| Labor Day Weekend | Beginning at the release of school until the return to school. | Mother | Mother |

5.    **VACATION**: Each parent shall have one (1) week of vacation time each year. The

parent exercising the vacation time shall give the other parent a minimum two-week notice of the

location and the dates of the vacation. The proposed vacation cannot conflict with the other parent's

holiday schedule or previously noticed vacation. If the parties cannot agree, then Trashelle shall

JUDGMENT AND DECREE OF DIVORCE- 3

have priority during odd years, and John during even years. The parties shall not take the children out of school for vacation without the other parent's consent.

6.    **SECURITY:** Both parties shall continue to have cameras in the children's rooms, and John's son (Hudson Odom) shall not be with the children alone. The parties shall jointly approve of all nannies to be hired. John shall not unreasonably withhold his approval.

7.    **READINESS:** Each parent shall be responsible for having each child ready and promptly available for all custody exchanges – both pick-up and drop-off. If an unavoidable delay occurs, the delayed parent shall contact the other parent immediately. The parents shall deliver and return each child's personal belongings at the same time they exchange each child. Parents shall assist a child to remember to take the personal belongings and school supplies she needs.

8.    **PARENT RESPONSIBILITIES:**

   **A.**  When the child is in a parent's physical custody, the parent shall provide the child with regular and nutritious food, and clean, appropriate clothing.

   **B.**  The parent who has the child in his/her care shall make decisions about the child's day- to-day care and safety.

   **C.**  Both parties intend that each shall have a full and active role in providing a healthy and safe environment free of abuse and/or neglect, drug use, and any criminal activity in the home.

   **D.**  Both parties agree to keep each other advised as to any serious illness or other major developments respecting the children.

   **E.**  Both parents shall keep each other informed always of their current address, home and cell phone numbers and email address.

9.    **SAFETY:**

JUDGMENT AND DECREE OF DIVORCE- 4

**THE PARENTS SHALL:**

    **A.** Not operate a vehicle or other form of transportation when impaired by alcohol or drugs when a child is in the vehicle or use drugs or alcohol carelessly when the child is in his/her care.

    **B.** Provide and use seatbelts when driving the child as required by law.

    **C.** Not smoke within the child's household.

    **10.** **CHILD SUPPORT:** John shall pay child support to Trashelle in the monthly sum of $3,459.20, until such time as the parties' minor children reach the age of majority or are otherwise emancipated. In the event that each child continues their education, John shall continue to pay such monthly child support until such time as each child reaches the age of nineteen (19) years or graduates from high school, whichever first occurs. John's child support obligation should be paid through the Department of Health and Welfare. The payment should be due on the first day of each month beginning on the first day of the month following entry of Judgment and Decree of Divorce.

    **11.** As of December 21st, 2029, Mason McGregor, Trashelle's child from a prior marriage, will be eighteen (18) years old, and at such time John's child support obligation shall be decreased to the sum of $3,450.86 per month.

    **12.** As of February 23, 2036, Scarlet will be eighteen (18) years old, and at such time John's child support obligation shall be decreased to the sum of $2,428.45 per month, unless Scarlet is still pursuing high school, in which case, the child support reduction would coincide with her graduation from high school, but in no event later than age nineteen (19).

    **13.** As of June 13th, 2037, Holland will be eighteen (18) years old, and at such time John's child support obligation shall end, unless Holland is still pursuing high school, in which

case, the child support reduction would coincide with his graduation from high school, but in no event later than age nineteen (19).

### NOTICE OF IMMEDIATE INCOME WITHHOLDING

This support order is enforceable by immediate income withholding as of the effective date of this order under Chapter 12, Title 32, Idaho Code. Immediate income withholding shall be enforced by a withholding order issued to the obligor's employer, without additional notice to the obligor.

### NOTICE OF LIEN

Pursuant to Idaho Code §7-1206, the obligor is hereby notified that a lien on your real and personal property will arise automatically upon a delinquency in making support payments pursuant to this support order.

**14.    HEALTH INSURANCE:** The children's health insurance is currently covered by Medicaid. Trashelle shall continue to maintain and ensure that the minor children are covered by medical insurance and dental insurance.

**15.    TAX EXEMPTIONS:** Trashelle shall be entitled to claim any tax credits available for the use of minor children on her State and Federal Income Tax Returns beginning in 2022 and continuing each year thereafter.

**16.    SPOUSAL MAINTENANCE:** Trashelle shall be awarded monthly spousal maintenance in the sum of $50,000.00 by John, beginning the 15th of the month following entry of this Judgment and Decree of Divorce, and continuing on the 15th of each month thereafter for a period of 120 months. John shall pay the monthly spousal support directly to Trashelle. John's monthly spousal maintenance obligations shall cease upon Trashelle's death or remarriage.

**17. SHARING COMMUNITY INCOME.** This Court entered a Temporary Order during the parties' divorce proceeding on June 17th, 2022, that John share the community income; this Court ordered that John provide Trashelle the sum of $50,000.00 on or before Tuesday, June 21st,

2022, and John was further ordered to thereafter provide Trashelle the sum of $50,000.00 on the 1st day of July and continue making payment in the sum of $50,000.00 to Trashelle on the 1st day of each month thereafter until further Court Order. Throughout the parties' divorce proceeding, John failed to pay Trashelle $50,000.00 each month on the 1st of each month. At the conclusion of the case, John owed Trashelle the total sum of $478,000.00 pursuant to the Temporary Order entered by this Court on June 17th, 2022. Trashelle is hereby awarded a Judgment against John for the sum of $478,000.00, to be paid directly to Trashelle within ninety (90) days upon entry hereof.

18.     **DIVISION OF PROPERTY AND DEBTS:** During the marriage of the parties, they have acquired certain personal property and debts. All property and debt not specifically awarded herein shall be divided in accordance with the Property and Debt Schedule ("PDS"), attached as Exhibit "A," which is integrated and incorporated into this Judgment.

A. **PETITIONER. Trashelle is hereby awarded the following as her sole and separate property and debt:**

(i) Trashelle is awarded the property located at 6358 S. Bosch Way, Meridian, ID, 83642, subject to the mortgage secured against the real property.

(ii) Trashelle is awarded the property located at R-8 War Bonnet Canyon Ranch, Hulett, WY, 82720.

(iii) Trashelle is awarded any and all personal property in her possession.

(iv) Trashelle is awarded the following vehicles: the Cadillac Escalade, the Nissan 5,000 HP GT-R, the 2020 Nissan GT-R 50th Anniversary Edition, the Nissan 2,300 HP 2009 GT-R, the 2020 Ferrari Pista, the 2020 Nissan GTR 40th Anniversary Edition, the Nissan GT-R Nismo, the Ford Focus RS, any and all semi-trucks and trailers owned, partially owned, or held by

John Odom or any entities in which John Odom has an ownership interest, including, but not limited to, the Odom Racing Group LLC, Odom Motorsports LLC, Invictus Capital, LLC, or the Odom Group LLC. **Any and all other vehicles acquired during the parties' marriage that are not described in this paragraph are considered omitted assets, and Trashelle shall be entitled to file a petition to divide the omitted asset(s) post-judgment upon the discovery of any asset not specifically described.**

(v) Trashelle is awarded the following financial accounts: the ICCU Share Savings ending in 9627, the ICCU Free Checking ending in 9635, Scarlet's Savings ending in 2074, Secondary Savings Vacation Fund ending in 2082, Holland's Savings ending in 2497, Mason's Secondary Savings ending in 2523, Mason's College Savings ending in 3462, Holland's College Savings ending in 7804, and Scarlet's College Savings ending in 7916.

(i) Trashelle is awarded any and all equity, cash value, any accrued interest in any life insurance policy, including, but not limited to, the personal New York Life insurance policy.

**B. RESPONDENT. John is hereby awarded the following as his sole and separate property and debt:**

i. John is awarded the following debt: any and all State and Federal tax liability, penalties, interest, or debt owed by the parties or any entity in which John has an interest, any and all debts personally guaranteed by either party, and any and all debts acquired by either party or any entity formed during the parties'

marriage, including, but not limited to, any and all credit card, business loan, student loan, personal loan, installment, revolving, medical, promissory note, lien, civil judgment, criminal restitution, secured, unsecured, or any other kind of debt acquired by either party or any entity formed during the parties' marriage. **Any and all community debts included or listed in any bankruptcy proceeding shall not be divided pursuant to this Judgment and shall be considered an omitted debt.**

19. **OMITTED ASSETS.** Omitted asset(s) shall be defined as any asset not specifically listed in this Judgment and Decree of Divorce, including, but not limited to, any business entities, inventory, equipment, accounts (including but not limited to all health-care-insurance receivable), real property, chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, financial accounts, real property, investment property, money (including physical or liquid cash), other rights to payment and performance, general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures, all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, commingled goods, vehicles, all insurance refunds, all good will, all records and data and embedded software, equipment, inventory, and all equipment and inventory to utilize, create, maintain and process any such records and data on electronic media; all supporting obligations whether existing now or hereafter arising, obligations whether now owned or hereafter acquired or whether now or hereafter subject to any rights, and all products and processes (including but not limited to all insurance payments. **Any and all community assets or debts included or listed in any bankruptcy proceeding shall not be**

JUDGMENT AND DECREE OF DIVORCE- 9

divided pursuant to this Judgment and shall be considered an omitted asset or debt. Trashelle shall be entitled to file a post-judgment petition to divide any omitted asset or debt, including, but not limited to, any asset or debt for which John failed to disclose or provide any documents or evidence thereof.

### 20. OMITTED BUSINESS ENTITIES AND ASSETS HELD BY SUCH ENTTIES.

It is understood that HMH Construction, LLC, filed Chapter 11 Bankruptcy in April 2023. This asset shall be considered omitted until the resolution of the Bankruptcy. Trashelle shall be entitled to file a petition to divide the omitted asset post-judgment and post-bankruptcy. Further, Skyline Homes and Development, LLC, and Skyline Odom, LLC (which is a 50% owner of Skyline Homes and Development) are currently involved in pending litigation with Steel National, LLC, Case No. CV01-23-02958, and Washington Trust Bank, CV01-22-156812. Skyline Homes and Development, LLC, Skyline Odom, LLC, and assets and debts owned, partially owned, or held by these entities shall be considered omitted assets. Other omitted assets include the following: all inventory, equipment, accounts (including but not limited to all health-care-insurance receivable), real property, chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, financial accounts, real property, investment property, money, other rights to payment and performance, general intangibles (including but not limited to all software and all payment intangibles); all oil, gas and other minerals before extraction; all oil, gas, other minerals and accounts constituting as-extracted collateral; all fixtures, all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, commingled goods, vehicles, all insurance refunds, all good will, all records and data and embedded software, equipment, inventory, and all equipment and inventory to utilize, create, maintain and process any such records and data on electronic media; all supporting

obligations whether existing now or hereafter arising, obligations whether now owned or hereafter acquired or whether now or hereafter subject to any rights, and all products and processes (including but not limited to all insurance payments of or relating to, owned, or held by the following property, businesses, and entities:

  **C.** Odom Racing LLC;

  **D.** Odom Motorsports LLC;

  **E.** Odom Group LLC;

  **F.** Invictus Capital LLC;

  **G.** Odom Holdings, LLC;

  **H.** The Odom Living Trust.

**Trashelle shall be entitled to file a post-judgment petition to divide any omitted entities and assets, including any omitted entities and assets not explicitly listed in this decree.**

**21. DISSIPATION OF THE COMMUNITY.** John has dissipated the community estate by expending community funds on extramarital affairs in the amount of $122,434.70. Trashelle is hereby awarded a Judgment against John for the sum of $122,434.70, to be paid directly to Trashelle within sixty (60) days upon entry hereof.

**22. EXECUTION OF DOCUMENTS:** Each party shall perform any and all acts necessary to implement the terms of this decree. If either party currently has any property in his or her possession that is awarded to the other property in the decree, the party with possession shall deliver said property to the other party within five (5) days from the date of the entry of this decree. If either party comes into possession of any property awarded to the other party, including any funds from any retirement plan or pension, that party shall deliver that property or those funds to

the opposing party within five (5) days. John shall sign and transfer any and all title(s) to any asset awarded to the Trashelle under this decree.

**23. CREDIT ACCOUNTS**. Each of the parties shall do all acts necessary to close immediately all existing credit card or financial accounts in the name of Trashelle and John, or either of them, under which one may make purchases on credit of the other. If there is any tax liability for any tax year during which the parties were married, John shall be 100% responsible for such tax liability.

**24. ATTORNEY'S FEES.** John shall pay 100% of Trashelle's attorney fees incurred in this divorce proceeding within thirty (30) days upon entry hereof. Trashelle shall submit to the Court an Affidavit of the attorney's fees incurred in this matter, with redaction of any attorney-client privileged information or material, within fourteen (14) days upon entry of this Judgment and Decree.

SO ORDERED this _____.

<br>

_____
FAFA ALIDJANI
MAGISTRATE JUDGE

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on _____, I caused a true and correct copy of the foregoing document to be served upon the following as indicated:

| | |
|---|---|
| SCOT M. LUDWIG, ISB 3506<br>MACEE B. UTECHT<br>LUDWIG ♦ SHOUFLER ♦ MILLER<br>♦ JOHNSON, LLP<br>Attorneys at Law<br>401 West Front Street, Suite 401<br>Boise, ID 83702<br>Telephone: 208-387-0400<br>Facsimile: 208-387-1999 | ☐ Hand Deliver<br>☐ US Mail<br>☐ E-Mail<br>☒ iCourt / eService: scot@lsmj-law.com<br>　　　　　　　macee@lsmj-law.com |
| Aaron Morriss<br>Attorney at Law<br>Morriss Law Firm<br>1120 S. Rackham Way Ste. 300<br>Meridian, Idaho 83642 | ☐ Hand Deliver<br>☐ US Mail<br>☐ E-Mail<br>☒ iCourt / eService: morrisslaw@gmail.com |

_____
Deputy Clerk of the Court

JUDGMENT AND DECREE OF DIVORCE- 13

CASE TITLE: Odom v. Odom
CASE NO.: CV01-22-05770
DATE OF MARRIAGE: July 7th, 2017

FILE NO.:

| ITEM NO. | PROPERTY DESCRIPTION | MARKET VALUE | | LIENS | EQUITY | C/S | LSMJ'S EVALUATION AND ALLOCATION | | REMARKS |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | TO HUSBAND | TO WIFE | |
| | **REAL PROPERTY & DEVELOPMENTS** | | | | | | | | |
| 1 | Cirrus Point | | | | | | | | See Silver Creek List of Properties; Petitioner's Exhibit 55 |
| 2 | 6358 S. Bosch Way, Meridian | 891,000 | $ | 475,687.00 | $415,313 | | | 415,313 | |
| 3 | Vista Rim | 1,600,000 | | | | | | | See depo of Dale Newberry- Pet Ex. 11 |
| 4 | Thunder Ridge | $ 15,260,000.00 | $ | 9,000,000.00 | | | | | See depo of Dale Newberry- Pet Ex. 11 |
| 5 | Crescent Lakes | | $ | 18,000,000.00 | | | | | See depo of Dale Newberry- Pet Ex. 11 |
| 6 | Mystic Creek | $12,000,000.00 | $ | 8,100,000.00 | | | | | See depo of Dale Newberry- Pet Ex. 11 |
| 7 | Lakes of Telaga (located on Can-Ada Road near Star, ID) | | $ | 4,000,000.00 | | | | | See depo of Dale Newberry- Pet Ex. 11 |
| 8 | Brookway North- 6001 W. Beacon Light, Eagle, ID 83616 | | $ | 10,975,000 | | | | | See purchase and sale agreement- Pet Ex. 33 |
| 9 | Newberry Place | $ 6,000,000 | $ | 1,500,000 | | | | | See depo of Dale Newberry- Pet Ex. 11 |
| 10 | Wyoming Property | | | | | | | X | 40 acres of land in Wyoming- owned by Odom Group LLC- Pet Exs. 58-59. |
| 12 | 3516 Black Butte Ct., Nampa, ID 83687 | | | | | | | | |
| 13 | Scarlet Ridge | | | | | | | | See depo of Dale Newberry- Pet Ex. 11 |
| | | | | | | | | | |
| | **BUSINESSES** | | | | | | | | |
| 14 | HMH Construction, LLC | BANKRUPTCY | | | | | | | |
| 15 | Odom Group LLC | | | | | | | | |
| 16 | Skyline Homes and Development | | | | | | | | |
| 17 | Invictus Capital, LLC | | | | | | | | |
| 18 | Mosey Hill Community Association, Inc. | | | | | | | | |
| 19 | Crescent Lake Community Association, Inc. | | | | | | | | |
| 20 | Odom Motorsports, LLC | | | | | | | | |
| 21 | Odom Racing, LLC | | | | | | | | Pursuant to the Operating Agreement, Trashelle owns 900,000 Class A units of the company; Pet Ex. 22 |
| 22 | Skyline Odom LLC | | | | | | | | 50% Ownership interest in Skyline Homes and Development, LLC- Pet Ex. 65. |
| 23 | Rue Oil LLC | | | | | | | | |
| | | | | | | | | | |
| | **INVESTMENTS/TRUSTS** | | | | | | | | |
| 24 | Odom Living Trust dated May 7th, 2021 | | | | | | | | The trust (with John and Trashelle as trustees) owns 200,000 Class B Units of Odom Racing LLC- See Odom Racing Operating Agreement- Pet Exhibit 22. |
| | | | | | | | | | |
| | **BANK ACCOUNTS** | | | | | | | | |
| 25 | HMH Bank Accounts | BANKRUPTCY | | | | | | | |
| 26 | Skyline Homes & Development Financial Accts | | | | | | | | |
| 27 | Skyline Odom Financial Accounts | | | | | | | | |
| 28 | Odom Motorsports LLC  Account | | | | | | | | |
| 29 | Odom Group LLC Financial Accounts | | | | | | | | |
| 30 | Invictus Capital LLC Accounts | | | | | | | | |
| 31 | Odom Racing, LLC Financial Accounts | | | | | | | | |
| 32 | Rue Oil LLC Financial Accounts | | | | | | | | |
| | | | | | | | | | |
| | **JOHN FINANCIAL ACCOUNTS** | | | | | | | | |
| 33 | Fifth Third Bank- Checking- 0016 | | | | | | | | |
| 34 | Fifth Third Bank- Debit | | | | | | | | |
| 35 | Lake Forest Bank & Trust Company, N.A. | | | | | | | | |
| 36 | Idaho First Bank | | | | | | | | |
| 37 | ICCU | | | | | | | | |
| 38 | Washington Trust | | | | | | | | |
| | | | | | | | | | |
| | **TRASHELLE FINANCIAL ACCOUNTS** | | | | | | | | |
| 39 | Trashelle's ICCU Share Savings 9627 | $24.41 | | | | | | $24.41 | |
| 40 | Secondary Savings- Scarlet's Savings 2074 | $9,181.29 | | | | | | $9,181.29 | |
| 41 | Secondary Savings- Vacation Fund 2082 | $2.10 | | | | | | $2.10 | |
| 42 | Secondary Savings- Holland 2497 | $2,340.43 | | | | | | $2,340.43 | |
| 43 | Secondary Savings- Mason's Savings 2523 | $10,608.86 | | | | | | $10,608.86 | |
| 44 | Secondary Savings- Mason's College 3462 | $5,005.22 | | | | | | $5,005.22 | |
| 45 | Secondary Savings- Holland College 7804 | $1,103.99 | | | | | | $1,103.99 | |
| 46 | Secondary Savings- Scarlet College 7916 | $1,103.88 | | | | | | $1,103.88 | |

EXHIBIT

A

CASE TITLE: Odom v. Odom
CASE NO: CV01-22-05770
DATE OF MARRIAGE: July 7th, 2017

FILE NO.:

| ITEM NO. | PROPERTY DESCRIPTION | MARKET VALUE | LIENS | EQUITY | C/S | LSMJ'S EVALUATION AND ALLOCATION TO HUSBAND | TO WIFE | REMARKS |
|---|---|---|---|---|---|---|---|---|
| 47 | Trashelle's ICCU Free Checking 9635 | $1,095.07 | | | | | $1,095.07 | |
| | | | | | | | | |
| | **LIFE INSURANCE** | | | | | | | |
| 48 | New York Life- Personal | 5,000,000 | | | | X | | |
| | | | | | | | | |
| | **PERSONAL PROPERTY** | | | | | | | |
| 49 | Clothing | $25,000 | | | | | $ 25,000 | |
| 50 | Jewelry | $40,000 | | | | | $ 40,000 | |
| 51 | Couch and Loveseat | $3,000 | | | | | $ 3,000 | |
| 52 | Guns | | | | | X | | |
| 53 | 4 Go-Pros | | | | | X | | |
| 54 | Dirtbikes | | | | | X | | |
| 55 | Coffee table | $500 | | | | | $ 500 | |
| 56 | Kitchen table and chairs | $1,000 | | | | | $ 1,000 | |
| 57 | Patio Furniture | $1,500 | | | | | $ 1,500 | |
| 58 | Queen bed and mattress | $4,000 | | | | | $ 4,000 | |
| 59 | Night stands | $400 | | | | | $ 400 | |
| 60 | Dresser | $500 | | | | | $ 500 | |
| 61 | Safe & Conents | $5,000 | | | | | $ 5,000 | |
| 62 | Purses | $40,000 | | | | | $ 30,000 | |
| 63 | Golf Cart | | | | | X | | |
| 64 | Electric Scooters | | | | | X | | |
| | | | | | | | | |
| | **JOHN'S GOODS AND FURNISHINGS** | | | | | | | |
| 65 | King Matress | $600 | | | | $ 600 | | |
| 66 | King Bedframe | $2,699 | | | | $ 2,699 | | |
| 67 | Cloud Couch from Dallas Penthouse | $15,105 | | | | | $ 15,105 | |
| 68 | Dining Table | $3,897 | | | | | $ 3,897 | |
| 69 | Dining Chairs | $5,990 | | | | | $ 5,990 | |
| 70 | Twin Mattress | $300 | | | | $ 300 | | |
| 71 | Twin Mattress | $300 | | | | $ 300 | | |
| 72 | Coffee Table | $2,599 | | | | | $ 2,599 | |
| 73 | Barstools | $3,745 | | | | | $ 3,745 | |
| 74 | RH Towels | $1,000 | | | | | $1,000 | |
| 75 | Outdoor Furniture | $5,000 | | | | | $5,000 | Estimate |
| 76 | Garage Content | $5,000 | | | | | $5,000 | Estimate |
| 77 | John's Watches | $200,000 | | | | | $200,000 | Estimate |
| | | | | | | | | |
| | **VEHICLES** | | | | | | | |
| 78 | 2021 Bentley Bentega | | | | | X | | |
| 79 | Cadillac Escalade | BANKRUPTCY ASSET | | | | | | |
| 80 | Odom Racing Semi-Truck | | | | | X | | John's possession |
| 81 | Odom Racing Trailers | | | | | X | | John's possession |
| 82 | Nissan GTR 50th Anniversary Edition | | | | | X | | John's possession |
| 83 | 2019 GTR Nismo | $ 250,000.00 | | | | X | | John's possession |
| 84 | Ferrari 488 Pista | $ 700,000.00 | | | | X | | John's possession |
| 85 | 2019 GMC Yukon | | | | | X | | John's possession |
| 86 | 2020 GTR 40th Anniversary Edition | $ 150,000.00 | | | | X | | John's possession |
| 87 | 2009 GTR Drag | $ 700,000.00 | | | | X | | John's possession |
| 88 | 2022 Audi RS Q8 | REPOSSESSED | | | | | | |
| 89 | 2017 Focus RS | | | | | X | | John's possession |
| | | | | | | | | |
| | **Debts/Liabilities** | | | | | | | |
| 90 | Foreclosure of Mechanics lien- Steel National Lawsuit CV01-23-02958 | BANKRUPTCY | | | | | | |
| 91 | Current/Future IRS Tax debts- 2020, 2021, 2022 | All possible IRS tax debts unrelated to HMH Construction or the bankruptcy | | | | X | | |
| 92 | Default Judgment- ICCU against John Odom & HMH Construction | BANKRUPTCY | | | | | | |
| 93 | Lawsuit- Turbo Air against John individually | | $ 192,205.93 | | | X | | |
| 94 | Lawsuit- Washington Trust Bank | BANKRUPTCY | | | | | | |
| 95 | Lawsuit- Joel Mikasa | BANKRUPTCY | | | | | | |
| 96 | Lawsuit- Blue Elephant LLC | BANKRUPTCY | | | | | | |
| 97 | Lawsuit- Parkland USA Corporation & Conrad and Bischoff LLC | BANKRUPTCY | | | | | | |
| 98 | Idaho First Bank Lawsuit- filed 5.12.2023; CV01-23-07825 | | | | | X | | |
| | | | | | | | | |
| | **JOHN'S CREDIT CARDS** | | | | | | | |
| 99 | Amex Platinum | | | | | X | | |
| 100 | Amex Plum Credit Card- Trashelle & HMH Construction | BANKRUPTCY DEBT | | | | | | |
| 101 | Amex Hilton | | | | | X | | |
| 102 | Asperation Black Card | | | | | X | | |
| 103 | Discover Card | | | | | X | | |
| 104 | Bank of America | | | | | X | | |
| 105 | Apple Card | | | | | X | | |
| 106 | Black card Barclays | | | | | X | | |
| 107 | Capital One- 4705 | | | | | X | | |
| | | | | | | | X | |

CASE TITLE: Odom v. Odom
CASE NO: CV01-22-05770
DATE OF MARRIAGE: July 7th, 2017

FILE NO.:

| ITEM NO. | PROPERTY DESCRIPTION | MARKET VALUE | LIENS | EQUITY | C/S | LSMJ'S EVALUATION AND ALLOCATION | | REMARKS |
|---|---|---|---|---|---|---|---|---|
| | | | | | | TO HUSBAND | TO WIFE | |
| | **TRASHELLE'S CREDIT CARDS** | | | | | | | |
| 108 | Chase Sapphire | | $ 17,571.90 | | X | | | |
| 109 | Chase Freedom | | $ 20,142.69 | | X | | | |
| 110 | Citi Advantage | | | | | | | Paid off by Trashelle with her savings |
| 111 | Black Card | | | | | | | Paid off by Trashelle with her savings |
| | | | | | | | | |
| | **DISSIPATION OF THE COMMUNITY** | | | | | | | |
| 112 | Payments to/for other women | | | | | | $122,434.70 | See spreadsheet from Paypal; Pet. Ex. 96. |
| | | | | | | | | |
| | | | | | | | | |
| | **SEPARATE PROPERTY** | | | | | | | |
| 113 | Trashelle's dog | | | | | | X | Trashelle owned prior to marriage. |
| | | | | | | | | |
| | **TOTAL:** | | | | | | | |
| | **TOTAL ASSETS** | 42,948,600 | 52,280,608 | 415,313 | | 3,899 | 921,449 | |
| | **DIFFERENCE** | | | | | | | |
| | **AMOUNT TO EQUALIZE** | | | | | | | |
| | **EQUALIZED COM. PROPERTY** | | | | | | | |

# Case Summary

**Case Number: CV01-22-05770**

## Party Information

|  | Petitioner | Respondent |
|---|---|---|
| **Name:** | Trashelle Odom | John Odom |
| **Marital Status:** | Single | Single |
| **Attorney's Name:** |  |  |
| **Attorney's Phone:** |  |  |
| **ICSG Income:** | 55,570.40 | 450,000.00 |
| **ICSG Percentage:** | 10.99% | 89.01% |

## Child Information

| Child's Name | Birthdate | % with Petitioner | Tax Exemption | Calc Support Until |
|---|---|---|---|---|
| Holland | 13-Jun-2019 | 90.00% | Petitioner | 18th Birthday |
| Scarlet | 23-Feb-2018 | 90.00% | Petitioner | 18th Birthday |

## Recap of all Obligations per Month

|  | Petitioner | Respondent |
|---|---|---|
| Monthly Child Support Obligation | 0.00 | 3,786.31 |
| Work Related Child Care Costs | 0.00 | 0.00 |
| Health Insurance Obligation | 0.00 | 0.00 |
| Travel Expenses | 0.00 | 0.00 |
| Disability and Retirement Dependency Benefits | 0.00 | 0.00 |
| Tax Exemption Compensation | 327.11 | 0.00 |

**The recommended basic support the Respondent should pay is 3,786.31 per month**
(before other costs to be considered by the court)

**The recommended adjusted support the Respondent should pay is 3,459.20 per month**
(before other costs to be considered by the court)



# Child Support Calculations

## Trashelle Odom

| | |
|---|---|
| Income | 65,080.00 |
| Adjustments to Gross Income | -9,509.60 |
| **Petitioner's Net ICSG Income** | 55,570.40 |

## John Odom

| | |
|---|---|
| Income | 500,000.00 |
| Adjustments to Gross Income | -50,000.00 |
| **Respondents's Net ICSG Income** | 450,000.00 |

## Support Breakdown Table

| % | of | | = | |
|---|---|---|---|---|
| 26% of | 10,000.00 | = | 2,600.00 |
| 25% of | 10,000.00 | = | 2,500.00 |
| 23% of | 10,000.00 | = | 2,300.00 |
| 22% of | 10,000.00 | = | 2,200.00 |
| 20% of | 10,000.00 | = | 2,000.00 |
| 17% of | 20,000.00 | = | 3,400.00 |
| 13% of | 20,000.00 | = | 2,600.00 |
| 9% of | 20,000.00 | = | 1,800.00 |
| 8% of | 20,000.00 | = | 1,600.00 |
| 8% of | 20,000.00 | = | 1,600.00 |
| 8% of | 150,000.00 | = | 12,000.00 |
| 8% of | 205,570.40 | = | 16,445.63 |

### Totals:

| | |
|---|---|
| Petitioner's ICSG: | 55,570.40 |
| Respondents's ICSG: | 450,000.00 |
| Total ICSG: | 505,570.40 |
| | |
| Total Support: | 51,045.63 |

## Petitioner's Calculations

| Child's Name | Physical Custody | Base | Factor | Respondents's Time | Petitioner's Income Share | Petitioner's Obligation |
|---|---|---|---|---|---|---|
| Holland | Joint | 2,126.90 | 1.0 | 0.00 | 10.99 | 0.00 |
| Scarlet | Joint | 2,126.90 | 1.0 | 0.00 | 10.99 | 0.00 |
| | | | | | | **0.00** |

## Respondent's Calculations

| Child's Name | Physical Custody | Base | Factor | Petitioner's Time | Respondent's Income Share | Respondent's Obligation |
|---|---|---|---|---|---|---|
| Holland | Joint | 2,126.90 | 1.0 | 100.00 | 89.01 | 1,893.15 |
| Scarlet | Joint | 2,126.90 | 1.0 | 100.00 | 89.01 | 1,893.15 |
| | | | | | | **3,786.31** |

**The recommended basic support the Respondent should pay is 3,786.31 per month**
(before other costs to be considered by the court)

## From the offices of: Ludwig Shoufler Miller Johnson, LLP

## In the District Court of the Fourth Judicial District
## of the State of Idaho, in and for the County of Ada

**Trashelle Odom**

Petitioner,

vs

**John Odom**

Respondent,

**Case No. CV01-22-05770**
**Affidavit Verifying Income**

I hereby state under oath that the following information is true.

| | Petitioner | Respondent |
|---|---|---|
| **A. GROSS INCOME (I.R.F.L.P. 126 Section F)** | | |
| 1. Wages, salary, commissions, bonuses, etc. | $15,080.00 | $500,000.00 |
| 2. Rent, royalties, trade, or business income, etc. (net of ordinary & nessary expenses) | $0.00 | $0.00 |
| 3. Interest, dividends, pensions, annuities, etc. | $0.00 | $0.00 |
| 4. Social security, worker's compensation, unemployment benefits, disability, veterans' benefits, etc. | $0.00 | $0.00 |
| 5. Public Assistance, welfare for self (not children) | $0.00 | $0.00 |
| 6. Alimony | $50,000.00 | $0.00 |
| 7. Grants, distributions from trusts, etc. | $0.00 | $0.00 |
| 8. Other | $0.00 | $0.00 |
| **9. SUBTOTAL** | **$65,080.00** | **$500,000.00** |
| **B. DEDUCTIONS FROM GROSS INCOME** (I.R.F.L.P. Sections F and G) | | |
| 1. Straight line depreciation on assets | $0.00 | $0.00 |
| 2. One-half of self-employment Social Security taxes | $0.00 | $0.00 |
| 3. Child support & alimony from another relationship | $0.00 | $0.00 |
| 4. Support for child of another relationship living in the home | $9,509.60 | $0.00 |
| 5. DEDUCTIONS SUBTOTAL | $9,509.60 | $50,000.00 |
| **C. GROSS INCOME AS ADJUSTED** | $55,570.40 | $450,000.00 |
| **D. FRINGE BENEFITS (I.R.F.L.P. Section F.2)** | $0.00 | $0.00 |
| **E. POTENTIAL INCOME (I.R.F.L.P. Section F.3)** | $0.00 | $0.00 |
| **F. GUIDELINES INCOME (C + D + E)** | $55,570.40 | $450,000.00 |
| **G. MONTHLY ICSG INCOME (F / 12 months)** | $4,630.87 | $37,500.00 |

### CERTIFICATION UNDER PENALTY OF PERJURY

I certify under penalty of perjury pursuant to the law of the Sate of Idaho that the following is true and correct.

Date: _____

_____

Typed/printed

_____

Signature

Signature of Party Submitting    _____

Subscribed and sworn to before me on    _____, _____

_____

## From the offices of: Ludwig Shoufler Miller Johnson, LLP

## In the District Court of the Fourth Judicial District
## of the State of Idaho, in and for the County of Ada

**Trashelle Odom**

vs                                           Petitioner,      **Case No. CV01-22-05770**
                                                              **Child Support Order**
**John Odom**

                                             Respondent,

| Children | Birthdate | % with Petitioner | % with Respondent | Physical Custody |
|---|---|---|---|---|
| Holland | 13-Jun-2019 | 90.00 | 10.00 | Joint |
| Scarlet | 23-Feb-2018 | 90.00 | 10.00 | Joint |

| | | | |
|---|---|---|---|
| **Base Annual Support** | **$51,045.63** | **Shared/Split per month** | **$6,380.70** |
| **Base Monthly Support** | **$4,253.80** | **Net Monthly Support** | **$4,253.80** |

| Petitioner: | Income | Respondent: | Income |
|---|---|---|---|
| Trashelle Odom | $65,080.00 | John Odom | $500,000.00 |
| Adjustments to Gross Inc. | $9,509.60 | Adjustments to Gross Inc. | $9,509.60 |
| Petitioner's Net ICSG Income | $55,570.40 | Respondent's Net ICSG Income | $450,000.00 |
| Petitioner's Share (%) | 10.99% | Respondent's Share (%) | 89.01% |
| Petitioner's Share per Month ($) | $467.49 | Respondent's Share per Month ($) | $3,786.31 |
| Petitioner Owes | $0.00 | Respondent Owes | $3,786.31 |
| For 0.00 children living with Respondent | | For 2.00 children living with Petitioner | |

## Recap of all Obligations per Month

| | Petitioner | Respondent |
|---|---|---|
| Monthly Child Support Obligation | 0.00 | 3,786.31 |
| Work Related Child Care Costs | 0.00 | 0.00 |
| Health Insurance Obligation | 0.00 | 0.00 |
| Travel Expenses | 0.00 | 0.00 |
| Disability and Retirement Dependency Benefits | 0.00 | 0.00 |
| Tax Exemption Compensation | 327.11 | 0.00 |
| The Bottom Line...Respondent Owes | 0.00 | 3,459.20 |

Ordered By _____     Date _____

**From the offices of: Ludwig Shoufler Miller Johnson, LLP**

## In the District Court of the Fourth Judicial District
## of the State of Idaho, in and for the County of Ada

Trashelle Odom

Petitioner,

vs

John Odom

Respondent,

**Case No. CV01-22-05770**
**Adjustments to Child Support and**
**Recap of Obligations**

| | | | | |
|---|---|---|---|---|
| **Total ICSG Income:** | **$505,570.40** | Petitioner's Share | 10.99 | $55,570.40 |
| | | Respondent's Share | 89.01 | $450,000.00 |

### Tax Exemption Adjustment

| Child's Name | Claimed by | Exemption Amt | Petitioner's Share | Respondent's Share |
|---|---|---|---|---|
| Holland | Petitioner | $2,205.00 | $242.33 | $1,962.67 |
| Scarlet | Petitioner | $2,205.00 | $242.33 | $1,962.67 |
| | | | | |
| Parent is entitled to: | | | $484.66 | $3,925.34 |
| While parent is getting: | | | $4,410.00 | $0.00 |

Petitioner owes $3,925.34 per year, $327.11 per month for tax exemptions.

### Health Insurance Adjustment

| | Total Paid | % Share | Obligation | Amt Paid | Difference |
|---|---|---|---|---|---|
| **Petitioner** | $0.00 | 10.99 | $0.00 | $0.00 | $0.00 |
| **Respondent** | $0.00 | 89.01 | $0.00 | $0.00 | $0.00 |

Petitioner owes $0.00 per year, $0.00 per month for health insurance.

### Work Related Daycare Adjustment

| | Total Paid | % Share | Obligation | Amt Paid | Difference |
|---|---|---|---|---|---|
| **Petitioner** | $0.00 | 10.99 | $0.00 | $0.00 | $0.00 |
| **Respondent** | $0.00 | 89.01 | $0.00 | $0.00 | $0.00 |

Petitioner owes $0.00 per year, $0.00 per month for daycare.

### Travel Expenses Adjustment

| | Total Paid | % Share | Obligation | Amt Paid | Difference |
|---|---|---|---|---|---|
| **Petitioner** | $0.00 | 10.99 | $0.00 | $0.00 | $0.00 |
| **Respondent** | $0.00 | 89.01 | $0.00 | $0.00 | $0.00 |

Petitioner owes $0.00 per year, $0.00 per month for travel expenses.

## Recap of all Obligations per Month

|  | Petitioner | Respondent |
|---|---|---|
| Monthly Child Support Obligation | 0.00 | 3,786.31 |
| Work Related Child Care Costs | 0.00 | 0.00 |
| Health Insurance Obligation | 0.00 | 0.00 |
| Travel Expenses | 0.00 | 0.00 |
| Disability and Retirement Dependency Benefits | 0.00 | 0.00 |
| Tax Exemption Compensation | 327.11 | 0.00 |

**The recommended basic support the Respondent should pay is 3,786.31 per month**
(before other costs to be considered by the court)

**The recommended adjusted support the Respondent should pay is 3,459.20 per month**
(before other costs to be considered by the court)

Prepared By Nicole Lettunich Bierle_____ Date _____

## From the offices of: Ludwig Shoufler Miller Johnson, LLP

## In the District Court of the Fourth Judicial District
## of the State of Idaho, in and for the County of Ada

**Trashelle Odom**

vs

Petitioner,

**John Odom**

Respondent,

### Case No. CV01-22-05770
### Continued Support Worksheet

As of June 20, 2023, the date of this report, the following rates apply:

|  | Petitioner | Respondent |  | Petitioner | Respondent |
|---|---|---|---|---|---|
| **Support** | $0.00 | $3,786.31 | **Travel** | $0.00 | $0.00 |
| **Health Care** | $0.00 | $0.00 | **Disability** | $0.00 | $0.00 |
| **Child Care** | $0.00 | $0.00 | **Tax Exempt** | $327.11 | $0.00 |
|  |  |  | **Bottom Line** | $327.11 | $3,786.31 |

**Respondent owes Petitioner 3,459.20**

As of December 22, 2029, when Mason McGregor reaches the age of 18, the following rates apply:

|  | Petitioner | Respondent |  | Petitioner | Respondent |
|---|---|---|---|---|---|
| **Support** | $0.00 | $3,771.94 | **Travel** | $0.00 | $0.00 |
| **Health Care** | $0.00 | $0.00 | **Disability** | $0.00 | $0.00 |
| **Child Care** | $0.00 | $0.00 | **Tax Exempt** | $321.09 | $0.00 |
|  |  |  | **Bottom Line** | $321.08 | $3,771.94 |

**Respondent owes Petitioner 3,450.86**

As of February 24, 2036, when Scarlet reaches the age of 18, the following rates apply:

|  | Petitioner | Respondent |  | Petitioner | Respondent |
|---|---|---|---|---|---|
| **Support** | $0.00 | $2,428.45 | **Travel** | $0.00 | $0.00 |
| **Health Care** | $0.00 | $0.00 | **Disability** | $0.00 | $0.00 |
| **Child Care** | $0.00 | $0.00 | **Tax Exempt** | $0.00 | $0.00 |
|  |  |  | **Bottom Line** | $0.00 | $2,428.45 |

**Respondent owes Petitioner 2,428.45**

As of June 13, 2037 when Holland turns 18, no children will remain in the home.

This form must be completed and given to the Clerk of the Court, with a copy of the final order attached.
SUPPORT PAYMENTS UNDER THIS ORDER MUST BE SENT TO THE STATE OF IDAHO, CHILD SUPPORT
RECEIPTING, P.O. BOX 70008, BOISE, ID, 83707.

| | | |
|---|---|---|
| Date of Order | _____ Case # | CV01-22-05770 |
| Start of Payments | _____ County | Ada |

**Who is ordered to pay child support? (full name)**     John Odom
**How Much?**     $3,459.20
**How Often?**     ___ Weekly  _X_ Monthly

Special child support terms in this order (check all that apply):
___ Cost of living increases          ___ Modification of a previous order          ___ Decrease for visitation
___ Other: _____

Is there an order for Wage Assignment?   ___ Yes  _X_ No      (if yes, attach a copy of the wage assignment order)

**Respondent's full name**     | John Odom |

| Social Security # | | Date of Birth | |
|---|---|---|---|
| Phone Number | | Attorney | |
| Phone | | City / State | |

| Residence Address |     |
| Mailing Address (if different) |     |
| Employer Name and Address |      |

| Social Security # | | Date of Birth | |
|---|---|---|---|
| Phone Number | | Attorney | |
| Phone | | City / State | |

**Petitioner's full name**     | Trashelle Odom |

| Social Security # | | Date of Birth | |
|---|---|---|---|
| Phone Number | | Attorney | |
| Phone | | City / State | |

| Residence Address |     |
| Mailing Address (if different) |     |
| Employer Name and Address |      |

| Social Security # | | Date of Birth | |
|---|---|---|---|
| Phone Number | | Attorney | |
| Phone | | City / State | |

**Children for whom support is ordered in the order:**

| Child's Full Name | Social Security # | Date of Birth | Gender |
|---|---|---|---|
| Holland | | 13-Jun-2019 | M |
| Scarlet | | 23-Feb-2018 | M |

Prepared By  Date

CASE TITLE: Odom v. Odom
CASE NO: CV01-22-05770
DATE OF MARRIAGE: July 7th, 2017

FILE NO.:

| ITEM NO. | PROPERTY DESCRIPTION | MARKET VALUE | LIENS | EQUITY | C/S | LSMJ'S EVALUATION AND ALLOCATION TO HUSBAND | TO WIFE | REMARKS |
|---|---|---|---|---|---|---|---|---|
| | **REAL PROPERTY & DEVELOPMENTS** | | | | | | | |
| 1 | Cirrus Point | | | | | | | See Silver Creek List of Properties; Petitioner's Exhibit 55 |
| 2 | 6358 S. Bosch Way, Meridian | 891,000 | $ 475,687.00 | $415,313 | | | 415,313 | |
| 3 | Vista Rim | 1,600,000 | | | | | | See depo of Dale Newberry- Pet Ex. 11 |
| 4 | Thunder Ridge | $ 15,260,000.00 | $ 9,000,000.00 | | | | | See depo of Dale Newberry- Pet Ex. 11 |
| 5 | Crescent Lakes | | $ 18,000,000.00 | | | | | See depo of Dale Newberry- Pet Ex. 11 |
| 6 | Mystic Creek | $12,000,000.00 | $8,100,000.00 | | | | | See depo of Dale Newberry- Pet Ex. 11 |
| 7 | Lakes of Telaga (located on Can-Ada Road near Star, ID) | | $ 4,000,000.00 | | | | | See depo of Dale Newberry- Pet Ex. 11 |
| 8 | Brockway North- 6001 W. Beacon Light, Eagle, ID 83616 | | $ 10,975,000 | | | | | See purchase and sale agreement- Pet Ex. 33 |
| 9 | Newberry Place | $ 6,000,000 | $ 1,500,000 | | | | | See depo of Dale Newberry- Pet Ex. 11 |
| 10 | Wyoming Property | | | | | | X | 40 acres of land in Wyoming- owned by Odom Group LLC- Pet Exs. 58-59. |
| 12 | 3516 Black Butte Ct., Nampa, ID 83687 | | | | | | | |
| 13 | Scarlet Ridge | | | | | | | See depo of Dale Newberry- Pet Ex. 11 |
| | | | | | | | | |
| | **BUSINESSES** | | | | | | | |
| 14 | HMH Construction, LLC | BANKRUPTCY | | | | | | |
| 15 | Odom Group LLC | | | | | | | |
| 16 | Skyline Homes and Development | | | | | | | |
| 17 | Invictus Capital, LLC | | | | | | | |
| 18 | Mosey Hill Community Association, Inc. | | | | | | | |
| 19 | Crescent Lake Community Association, Inc. | | | | | | | |
| 20 | Odom Motorsports, LLC | | | | | | | |
| 21 | Odom Racing, LLC | | | | | | | Pursuant to the Operating Agreement, Trashelle owns 900,000 Class A units of the company; Pet Ex. 22 |
| 22 | Skyline Odom LLC | | | | | | | 50% Ownership interest in Skyline Homes and Development, LLC- Pet Ex. 65. |
| 23 | Rue Oil LLC | | | | | | | |
| | | | | | | | | |
| | **INVESTMENTS/TRUSTS** | | | | | | | |
| 24 | Odom Living Trust dated May 7th, 2021 | | | | | | | The trust (with John and Trashelle as trustees) owns 200,000 Class B Units of Odom Racing LLC- See Odom Racing Operating Agreement- Pet Exhibit 22 |
| | | | | | | | | |
| | **BANK ACCOUNTS** | | | | | | | |
| 25 | HMH Bank Accounts | BANKRUPTCY | | | | | | |
| 26 | Skyline Homes & Development Financial Accts | | | | | | | |
| 27 | Skyline Odom Financial Accounts | | | | | | | |
| 28 | Odom Motorsports LLC  Account | | | | | | | |
| 29 | Odom Group LLC Financial Accounts | | | | | | | |
| 30 | Invictus Capital LLC Accounts | | | | | | | |
| 31 | Odom Racing, LLC Financial Accounts | | | | | | | |
| 32 | Rue Oil LLC Financial Accounts | | | | | | | |
| | **JOHN FINANCIAL ACCOUNTS** | | | | | | | |
| 33 | Fifth Third Bank- Checking- 0016 | | | | | | | |
| 34 | Fifth Third Bank- Debit | | | | | | | |
| 35 | Lake Forest Bank & Trust Company, N.A. | | | | | | | |
| 36 | Idaho First Bank | | | | | | | |
| 37 | ICCU | | | | | | | |
| 38 | Washington Trust | | | | | | | |
| | | | | | | | | |
| | **TRASHELLE FINANCIAL ACCOUNTS** | | | | | | | |
| 39 | Trashelle's ICCU Share Savings 9627 | $24.41 | | | | | $24.41 | |
| 40 | Secondary Savings- Scarlet's Savings 2074 | $9,181.29 | | | | | $9,181.29 | |
| 41 | Secondary Savings- Vacation Fund 2082 | $2.10 | | | | | $2.10 | |
| 42 | Secondary Savings- Holland 2497 | $2,340.43 | | | | | $2,340.43 | |
| 43 | Secondary Savings- Mason's Savings 2523 | $10,608.86 | | | | | $10,608.86 | |
| 44 | Secondary Savings- Mason's College 3462 | $5,005.22 | | | | | $5,005.22 | |
| 45 | Secondary Savings- Holland College 7804 | $1,103.99 | | | | | $1,103.99 | |
| 46 | Secondary Savings- Scarlet College 7916 | $1,103.88 | | | | | $1,103.88 | |

EXHIBIT
C
tabbies

CASE TITLE: Odom v. Odom
CASE NO: CV01-22-05770
DATE OF MARRIAGE: July 7th, 2017

FILE NO.:

| ITEM NO. | PROPERTY DESCRIPTION | MARKET VALUE | LIENS | EQUITY | C/S | LSMJ'S EVALUATION AND ALLOCATION TO HUSBAND | TO WIFE | REMARKS |
|---|---|---|---|---|---|---|---|---|
| 47 | Trashelle's ICCU Free Checking 9635 | $1,095.07 | | | | | $1,095.07 | |
| | | | | | | | | |
| | **LIFE INSURANCE** | | | | | | | |
| 48 | New York Life- Personal | 5,000,000 | | | | X | | |
| | | | | | | | | |
| | **PERSONAL PROPERTY** | | | | | | | |
| 49 | Clothing | $25,000 | | | | | $ 25,000 | |
| 50 | Jewelry | $40,000 | | | | | $ 40,000 | |
| 51 | Couch and Loveseat | $3,000 | | | | | $ 3,000 | |
| 52 | Guns | | | | | X | | |
| 53 | 4 Go-Pros | | | | | X | | |
| 54 | Dirtbikes | | | | | X | | |
| 55 | Coffee table | $500 | | | | | $ 500 | |
| 56 | Kitchen table and chairs | $1,000 | | | | | $ 1,000 | |
| 57 | Patio Furniture | $1,500 | | | | | $ 1,500 | |
| 58 | Queen bed and mattress | $4,000 | | | | | $ 4,000 | |
| 59 | Night stands | $400 | | | | | $ 400 | |
| 60 | Dresser | $500 | | | | | $ 500 | |
| 61 | Safe & Conents | $5,000 | | | | | $ 5,000 | |
| 62 | Purses | $40,000 | | | | | $ 30,000 | |
| 63 | Golf Cart | | | | | X | | |
| 64 | Electric Scooters | | | | | X | | |
| | | | | | | | | |
| | **JOHN'S GOODS AND FURNISHINGS** | | | | | | | |
| 65 | King Matress | $600 | | | | $ 600 | | |
| 66 | King Bedframe | $2,699 | | | | $ 2,699 | | |
| 67 | Cloud Couch from Dallas Penthouse | $15,105 | | | | | $ 15,105 | |
| 68 | Dining Table | $3,897 | | | | | $ 3,897 | |
| 69 | Dining Chairs | $5,990 | | | | | $ 5,990 | |
| 70 | Twin Mattress | $300 | | | | $ 300 | | |
| 71 | Twin Mattress | $300 | | | | $ 300 | | |
| 72 | Coffee Table | $2,599 | | | | | $ 2,599 | |
| 73 | Barstools | $3,745 | | | | | $ 3,745 | |
| 74 | RH Towels | $1,000 | | | | | $1,000 | |
| 75 | Outdoor Furniture | $5,000 | | | | | $5,000 | Estimate |
| 76 | Garage Content | $5,000 | | | | | $5,000 | Estimate |
| 77 | John's Watches | $200,000 | | | | | $200,000 | Estimate |
| | | | | | | | | |
| | **VEHICLES** | | | | | | | |
| 78 | 2021 Bentley Bentega | | | | | X | | |
| 79 | Cadillac Escalade | BANKRUPTCY ASSET | | | | | | |
| 80 | Odom Racing Semi-Truck | | | | | X | | John's possession |
| 81 | Odom Racing Trailers | | | | | X | | John's possession |
| 82 | Nissan GTR 50th Anniversary Edition | | | | | X | | John's possession |
| 83 | 2019 GTR Nismo | $ 250,000.00 | | | | X | | John's possession |
| 84 | Ferrari 488 Pista | $ 700,000.00 | | | | X | | John's possession |
| 85 | 2019 GMC Yukon | | | | | X | | John's possession |
| 86 | 2020 GTR 40th Anniversary Edition | $ 150,000.00 | | | | X | | John's possession |
| 87 | 2009 GTR Drag | $ 700,000.00 | | | | X | | John's possession |
| 88 | 2022 Audi RS Q8 | REPOSSESSED | | | | | | |
| 89 | 2017 Focus RS | | | | | X | | John's possession |
| | | | | | | | | |
| | **Debts/Liabilities** | | | | | | | |
| 90 | Foreclosure of Mechanics lien- Steel National Lawsuit CV01-23-02958 | BANKRUPTCY | | | | | | |
| 91 | Current/Future IRS Tax debts- 2020, 2021, 2022 | All possible IRS tax debts unrelated to HMH Construction or the bankruptcy | | | | X | | |
| 92 | Default Judgment- ICCU against John Odom & HMH Construction | BANKRUPTCY | | | | | | |
| 93 | Lawsuit- Turbo Air against John individually | | $ 192,205.93 | | | X | | |
| 94 | Lawsuit- Washington Trust Bank | BANKRUPTCY | | | | | | |
| 95 | Lawsuit- Joel Mikasa | BANKRUPTCY | | | | | | |
| 96 | Lawsuit- Blue Elephant LLC | BANKRUPTCY | | | | | | |
| 97 | Lawsuit- Parkland USA Corporation & Conrad and Bischoff LLC | BANKRUPTCY | | | | | | |
| 98 | Idaho First Bank Lawsuit- filed 5.12.2023; CV01-23-07825 | | | | | X | | |
| | | | | | | | | |
| | **JOHN'S CREDIT CARDS** | | | | | | | |
| 99 | Amex Platinum | | | | | X | | |
| 100 | Amex Plum Credit Card- Trashelle & HMH Construction | BANKRUPTCY DEBT | | | | | | |
| 101 | Amex Hilton | | | | | X | | |
| 102 | Asperation Black Card | | | | | X | | |
| 103 | Discover Card | | | | | X | | |
| 104 | Bank of America | | | | | X | | |
| 105 | Apple Card | | | | | X | | |
| 106 | Black card Barclays | | | | | X | | |
| 107 | Capital One- 4706 | | | | | X | | |
| | | | | | | | X | |

Petitioner's PDS-FINAL 8.5.2023
h:\pds

Page 3

6/22/2023 5:15 PM

CASE TITLE: Odom v. Odom
CASE NO: CV01-22-05770
DATE OF MARRIAGE: July 7th, 2017

FILE NO.:

| ITEM NO. | PROPERTY DESCRIPTION | MARKET VALUE | LIENS | EQUITY | C/S | TO HUSBAND | TO WIFE | REMARKS |
|---|---|---|---|---|---|---|---|---|
| | **TRASHELLE'S CREDIT CARDS** | | | | | | | |
| 108 | Chase Sapphire | | $ 17,571.90 | | X | | | |
| 109 | Chase Freedom | | $ 20,142.69 | | X | | | |
| 110 | Citi Advantage | | | | | | | Paid off by Trashelle with her savings |
| 111 | Black Card | | | | | | | Paid off by Trashelle with her savings |
| | | | | | | | | |
| | **DISSIPATION OF THE COMMUNITY** | | | | | | | |
| 112 | Payments to/for other women | | | | | | $122,434.70 | See spreadsheet from Paypal; Pet Ex. 96. |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | **SEPARATE PROPERTY** | | | | | | | |
| 113 | Trashelle's dog | | | | | | X | Trashelle owned prior to marriage. |
| | | | | | | | | |
| | **TOTAL:** | | | | | | | |
| | **TOTAL ASSETS** | 42,948,600 | 52,280,608 | 415,313 | | 3,899 | 921,449 | |
| | **DIFFERENCE** | | | | | | | |
| | **AMOUNT TO EQUALIZE** | | | | | | | |
| | **EQUALIZED COM. PROPERTY** | | | | | | | |